UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

                           Chapter 11

| | |
|---|---|
| IT'SUGAR FL I LLC, | Case No. 20-20259-RAM |
| IT'SUGAR LLC, | Case No. 20-20261-RAM |
| IT'SUGAR ATLANTIC CITY LLC, | Case No. 20-20263-RAM |
| IT'SUGAR FLGC LLC, | Case No. 20-20264-RAM |
| | (Joint Administration *pending*) |

                Debtors.
_____/

## APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO (I) RETAIN ALGON CAPITAL, LLC D/B/A ALGON GROUP TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL AND (II) DESIGNATE TROY TAYLOR AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS, ON AN INTERIM BASIS, NUNC PRO TUNC TO SEPTEMBER 22, 2020

It'Sugar FL I LLC, It'Sugar LLC, It'Sugar Atlantic City LLC, and It'Sugar FLGC LLC, (collectively, "***It'Sugar***" or "***Debtors***"), by and through proposed undersigned counsel, pursuant to 11 U.S.C. 105(a) and 363(b), files this *Application to (I) Retain Algon Capital LLC d/b/a Algon Group to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Troy Taylor as Chief Restructuring Officer for the Debtors on an Interim Basis nunc pro tunc to September 22, 2020* (the "***Application***").

### JURISDICTION

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

## BACKGROUND AND BUSINESS OPERATIONS

4.      On September 22, 2020 (the "***Petition Date***"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtors operate as a single business and are known throughout the industry as It'Sugar. It'Sugar is a specialty candy retailer whose products include bulk candy, candy in giant packaging, and licensed and novelty items. It'Sugar's portfolio includes approximately 100 retail locations across 28 states.

## RELIEF REQUESTED

6.      By this Application, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request entry of an order, substantially in the form attached hereto as "**Exhibit C**," authorizing the Debtors to (I) retain Algon Capital, LLC d/b/a Algon Group ("***Algon***") to provide the Debtors with a Chief Restructuring Officer ("***CRO***") and certain Additional Personnel (as described below) and (II) designate Troy Taylor as the Debtors' CRO *nunc pro tunc* to September 22, 2020.

## QUALIFICATIONS OF TROY TAYLOR AND ALGON

7.      The Debtors have determined that obtaining the ongoing services of a CRO will substantially enhance their ability to (a) operate and meet their administrative obligations in these cases and (b) preserve and maximize the value of their assets. As such, prepetition, the Debtors engaged the services of Troy Taylor ("***Mr. Taylor***") of Algon to be their CRO as more fully set forth in the Engagement Letter (defined below), and also to utilize Algon personnel as appropriate

2

to support the CRO and provide advisory services as needed, subject in all events to the Court granting this Application.

8.      Mr. Taylor and Algon have extensive experience in providing extensive experience in providing restructuring services in and out of chapter 11 proceedings and have an excellent reputation for the services they have rendered on behalf of debtors and creditors throughout the United States.

9.      Mr. Taylor is the Founder and President of Algon, and has over 30 years of experience that combines investment banking, restructuring (both in Chapter 11 and out-of-court), and senior management. Mr. Taylor has served as the Lead Financial Advisor, Chief Restructuring Officer or Chief Executive Officer in a broad range of industries including real estate/hospitality, energy, manufacturing, and distribution. He recently led the restructuring/recapitalization of Hyperion Bank as Vice Chairman and acted as the sole Independent Director of the Dress Barn, Inc. in connection with the wind down of approximately 650 retail locations around the country. Mr. Taylor is also a founding investor and the Chairman of the Audit Committee for Big Rock Partners Acquisition Corp., a publicly traded company.

10.     Mr. Taylor has completed various real estate restructurings/sales for high-profile clients  including The Related Group, Four Season Peninsula Papagayo Resort, One Bal Harbour Resort, BlueGreen Vacation Corporation ("*Bluegreen*"), The Altman Companies, and Cabi Downtown LLC.

11.     Algon is a national, leading financial advisory firm. The following is a representative list of Algon's advisory engagements:

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

| | |
|---|---|
| The Dress Barn, Inc. | • Served as sole independent director in conjunction with wind-down of retail operations<br>• Wind-down included 650 stores and related lease obligations |
| Big Rock Partners, LLC | • Financial/Restructuring Advisor in senior housing chapter 11<br>• Advisor on $69 million acquisition of 500+ bed Tampa area CCRC |
| Tradition/Port St. Lucie | • Advised institutional lender on 8,200-acre master planned community<br>• Conducted nationwide M&A process to maximize value<br>• Sold 3,028 acres to Mattamy Homes; transferred 1,222 acres to the City |
| BrightSource Energy, Inc. | • International solar thermal developer with invested capital in excess of $800 million<br>• Appointed Vice Chairman and Board Member at the request of the senior lender<br>• Debt restructuring/international M&A process |
| Peninsula Papagayo | • Advised on a successful operational and debt restructuring<br>• Increased equity value by approximately $100 million<br>• Conducted worldwide M&A process resulting in the successful sale of the resort |
| The Related Group | • $2+ billion restructuring of senior and mezzanine debt across 21 separate loans<br>• Completed consensual restructuring with 40+ domestic and foreign financial institutions<br>• Restructured Company is once again a major successful real estate developer |
| Tradition/BFC Corp. | • Diversified NYSE holding company (NYSE: BBX)<br>• CRO for successful restructuring on over $370 million of subsidiary level debt |
| One Bal Harbour | • CRO in confirmed Chapter 11 of condo/hotel project with $700+ million in assets<br>• Managed sale process via section 363 sale |

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

| | |
|---|---|
| Hyperion Bank | • As Vice Chairman, led a management/financial restructuring<br>• Raised $18.3 million through Rights Offering and Common Stock Offering |
| Cabi Downtown, LLC | • Financial advisor on $256 million Chapter 11 Plan for major condominium project |
| Altman Companies | • Completed global restructuring for leading developer and operator of apartments with over $475 million of debt |
| Agway Liquidating Trust | • Advised $400 million trust on the disposition of 24 environmentally-tainted properties |
| Synovus Financial Corporation (NYSE: SNV) | • Advised in divestiture of 28% equity ownership in Aerosonics Corporation (AMEX: AIM) |
| BlueGreen Vacations Corporation (NYSE: BXG) | • Review of strategic alternatives resulting in $29 million sale of Developer/Operator of timeshare resorts and residential parcels |
| Advanced Lighting Technologies, Inc. (Nasdaq: ADLT) | • Advised the Official Equity Committee in obtaining substantial recovery in $175 million Chapter 11 |
| Speizman Industries, Inc. (SPZN.OB) | • Advised the Special Committee to the Board of Directors in connection with a chapter 11 petition |
| Mego Financial (Nasdaq: MEGO) | • Advisor to Chapter 11/7 trustee for $185 million publicly-traded timeshare company<br>• Developed strategy and negotiated substantial recovery for DIP lender |
| Village Homes | • Restructured approximately $140 million of senior debt |
| Diversified Family Investment Vehicle | • Advised on two CMBS debt restructurings of retail and office assets<br>• Successfully negotiated agreements with CW Capital and C3 |
| Investor group | • Advised investor group in purchase of PCX Corp., a division of NYSE-listed Integrated Electrical Services, Inc. |
| Southeastern Retirement Associates, LLC | • Advised an ad hoc committee of subordinated note holders in a $52.3 million restructuring |

5

| NY-based hedge fund | • Advised on valuation of $600 million of subordinated debt in a publicly-traded company |
| --- | --- |
| Arlington Ridge, LLC | • Advisor to Debtor in Chapter 11 proceedings  Held CRO position |
| PsychSolutions Inc. | • Financial advisor in sale to Youth & Family Centered Services, Inc., a portfolio company of TA Associates |
| Adama Holdings | • Advised major hedge fund investors on $500 million eastern European distressed investment |
| SolarReserve, Inc. | • Advising senior lender on maximizing recovery of $90 million loan<br>• Overseeing liquidation of assets located in US, South Africa, Chile and Australia |
| SELAF Waterfall Holding Company | • Advised a $175 million private equity firm on strategic alternatives for portfolio investment |
| Harmony Information Systems, Inc. | • Advised JMI Equity ($1.3+ billion) on the recapitalization of a portfolio company |

12.     Further, as a result of prepetition work performed on behalf of the Debtors, Mr. Taylor and Algon have acquired knowledge of the Debtors and their business and is familiar with the Debtors' financial affairs, operations and related matters.

13.     The Debtors believe that Taylor and Algon are well qualified and able to advise them in a cost-effective, efficient and timely manner. The Debtors have been advised by Taylor and Algon that they will endeavor to coordinate with the other professionals retained in these cases to eliminate unnecessary duplication of work. Therefore, the Debtors submit that the retention and employment of Taylor as its CRO, with the support of the professionals provided by Algon, is in the best interests of the estate.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

## SERVICES TO BE PROVIDED

14.    Subject to approval of the Court, the Debtors propose to retain Algon to provide Mr. Taylor as CRO and to provide additional employees of it and its professional service provider affiliates ("**Additional Personnel**," collectively with the CRO, the "**Engagement Personnel**") on the terms and conditions set forth in the engagement letter, dated September 22, 2020, attached hereto as "**Exhibit A**." (the "**Engagement Letter**")[1], except as otherwise explicitly set forth herein or in any order granting this Application.

15.    Among other things, the scope of services of the Engagement Personnel will include, but not be limited to, the following:

Subject to Board of Managers oversight, the CRO shall:

     i.    Perform a financial review of the Client, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Client to its creditors, including without limitation its short and long-term projected cash flows, and shall assist the Client in developing, refining and implementing its restructuring plans.

    ii.    Negotiate with the Client's senior lender and DIP lender as required.

   iii.    Direct negotiations with landlords and other key constituents regarding a restructuring of the Client.

   iv.    Lead negotiations with the Official Creditors Committee.

    v.    Serve as the Client's representative for all purposes in connection with any proceedings in the Bankruptcy Court.

   vi.    Have the authority to manage and execute (i) leases, contracts, settlements, third-party professionals, sale of the Asset, purchase of property or financing/re-financing of debt, and (ii) negotiate with Parties in Interest, other constituents and interested parties to develop

---

[1] The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

and effectuate the Approved Plan(s), and in executing such Approved Plan(s).

vii.  Engage attorneys, accountants, appraisers and other consultants and third-party professionals, at Client's expense to maximize value of the estate. Algon acknowledges that all such engagements are subject to approval of the Bankruptcy Court.

viii.  Assist in the preparation of the monthly operating reports required by the Bankruptcy Court and in otherwise complying with the reporting and information requirements imposed by the Office of the United States Trustee.

ix.  Cause the Client to take any other action which the CRO, in good faith, determines to be necessary, prudent, or appropriate under the circumstances.

x.  Assist the Client in developing various strategic alternatives, and in conjunction with legal counsel, a plan of reorganization (the "***Plan***").

xi.  Lead in the execution of the Plan.

16.  These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their restructuring.

## **ALGON'S DISINTERESTEDNESS**

17.  To the best of the Debtors' knowledge, information and belief, other than as set forth in the Declaration of Troy Taylor (the "***Taylor Declaration***"), attached hereto as "**Exhibit B**", Algon: (i) has no connection with the Debtors, their principals, their creditors, other parties in interest, or the attorneys or other professionals of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; and (ii) does not hold any interest adverse to the Debtors' estates.

18.  As disclosed in the Taylor Declaration:

a.  Mr. Taylor served as CRO for Core Communities Inc. with respect to an out-of-court debt restructuring. Core Communities was a subsidiary of Woodbridge

8

Holdings Corporation, an affiliate of BBX Capital Corp., which in turn is an affiliate of the Debtors. The representation ceased in 2014. The Debtors do not believe that this relationship affects Mr. Taylor's or Algon's disinterestedness in these cases.

    b.  Algon served as financial advisor to Bluegreen Vacation Corporation ("***Bluegreen***") with respect to the sale of a division of Bluegreen. The representation ceased in 2014. Bluegreen is a public company traded on the New York Stock Exchange. BBX is majority shareholder of Bluegreen. The Debtors refer to the Form 10-Q filed by BBX for the quarter ending June 30, 2020 for the details of a proposed spinoff transaction, previously announced in June 2020 related by BBX and Bluegreen. The Debtors do not believe that this relationship affects Algon's disinterestedness in these cases.

    c.  Algon served as financial advisor to the Altman Companies, an independently owned apartment developer for debt restructuring. The Altman Companies are currently 50% owned by BBX Capital Real Estate, an affiliate of the Debtors. The representation ceased more than 5 years prior to the Petition Date. The Debtors do not believe that this relationship affects Algon's disinterestedness in these cases.

    d.  Mr. Taylor is currently a passive investor, and has been a passive investor in numerous partnerships sponsored by Label & Co., a niche real estate developer/home builder. An affiliate of the Debtors, BBX Sky Cove LLC, a wholly owned subsidiary of BBX Capital Real Estate, is likewise a passive investor in many of the same projects. The Debtors do not believe that this relationship affects Algon's disinterestedness in these cases.

9

19.     In 2014, Mark Meland, Esq. and Meland Budwick, P.A. represented Mr. Taylor in connection with an acquisition of a condominium unit in Miami Beach, Florida and ancillary real estate related services. That representation has concluded and that matter was unrelated to the Debtors.

20.     In the past Meland Budwick, P.A. has represented parties in interest in matters in which Algon Capital LLC and/or Troy Taylor have served as a financial advisor and/or chief restructuring officer. None of those matters were related to the Debtors.

21.     Over the last 10 years Mr. Taylor has discussed various business issues regarding real estate with senior BBX executives. These discussions included investment opportunities, restructuring of debt and/or leases and general real estate market conditions. These were all informal conversations and Mr. Taylor was not compensated.

22.     Although the Debtors submit that the retention of Algon is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Taylor Declaration, which discloses, among other things, any relationship that Algon, Taylor or any individual member of the Additional Personnel has with the Debtors, their significant creditors, or other significant parties in interest known to Algon. Based upon the Taylor Declaration, the Debtors submit that Algon is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

23.     In addition, as set forth in the Taylor Declaration, if any new material facts or relationships are discovered or arise, Algon will provide the Court with a supplemental declaration.

## <u>TERMS OF RETENTION</u>

### A.  <u>Compensation</u>

24.     In accordance with the terms of the Engagement Letter, Algon will be compensated

10

in pertinent part as follows:

A) <u>Expense Reimbursement.</u> On a monthly basis Algon will submit invoices for all reasonable out of pocket expenses incurred in connection with this engagement. Such expenses will consist primarily of, but are not limited to lodging, travel (coach class), delivery and data services as well as communications expenses.

B) <u>CRO FEE.</u> The Client shall pay Algon a fixed fee of $90,000 per month (prorated for partial months) for Troy Taylor's services as CRO through December 2020 and $60,000 per month thereafter.

C) <u>Additional Personnel Fee.</u> The client shall pay Algon a fee for providing Additional Personnel based on the following hourly rates:

- Paul Rubin – Managing Director                 $625 per hour
- Other professionals                                     Standard Rates

D) <u>Algon Fee Cap.</u> Algon's total monthly fees shall not exceed $150,000 per month through December 2020. Subsequent months shall not exceed $100,000 per month.

E) <u>Retainer.</u> Client shall pay Algon an initial retainer of $125,000.

F) Time Records.  The CRO and the Additional Personnel shall keep contemporaneous time records of their respective time and expenses. Time records shall contain descriptive narratives of the tasks performed. To the extent that the Additional Personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10 hour increments and the corresponding charge (time multiplied and hourly rate) per such task. To the extent that the CRO and any Additional Personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. The CRO will prepare reports of compensation earned and expenses incurred on a monthly basis and such monthly reports will be provided to the Client.

G) The compensation to be paid hereunder shall not include health insurance, unemployment compensation or federal tax withholding employer contributions, or other common "benefits".

H) It is acknowledged that the Client's payment obligations hereunder shall be subject to the approval of Algon's retention by the Bankruptcy Court. The Client agrees to use reasonable efforts to obtain approval of the Bankruptcy Court for this engagement and compensation and reimbursement of expenses as described herein in accordance with Section 363 of the United States Bankruptcy Code.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

I)    Other than the amounts due by the Client to Algon under the terms of this Agreement, Algon will collect no commissions, brokerage fees, consulting fees or other payments related to the Asset from any party.

**B.    <u>Indemnification</u>**

25.    As a material part of the consideration for which the Engagement Personnel have agreed to provide the services described herein, pursuant to the Engagement Letter (including the section titled "***Indemnification***," the "***Indemnification Provision***"), the Debtors have agreed to indemnify Algon and the Additional Employees to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Client's bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to Algon and the Additional Employees. The CRO shall be covered as an officer under the Client's existing director and officer liability insurance policies. The Client shall also maintain any such insurance coverage for the CRO for a period of not less than two years following the date of the termination of such officer's services hereunder.[2] The rights to indemnification shall survive the termination of these chapter 11 cases or any cases into which they may be converted.

26.    The Debtors believe the Indemnity Provision is a reasonable term and condition of Algon's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors (and other interested parties) and Algon at arm's-length and in good faith. Algon and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions

---

[2] In no event shall Algon and the Additional Employees be indemnified or receive contribution or other payment under the Indemnification Provision if the Debtors, their estates, or any statutory committee of unsecured creditors or other party, if any, assert a claim, to the extent that the Court determines by final order that such claim arose out of fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of fiduciary duty on the part of that or any other Indemnified Parties.

12

generally obtained by crisis management firms of similar stature to Algon and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Agreement, viewed in conjunction with the other terms of Algon's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors' require Algon's services to successfully reorganize.

## FEES AND REPORTING

27.     If the Court approves the relief requested herein, Algon will be retained to provide the Debtors with the Engagement Personnel and Taylor will be designated as the Debtors' Chief Restructuring Officer pursuant to section 363 of the Bankruptcy Code. Because Algon is not being employed as a professional under section 327 of the Code, Algon will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. However, the fees paid to Algon shall be subject to a final review and approval of the Court at the conclusion of these Chapter 11 Cases.

28.     Given the numerous issues which the Engagement Personnel may be required to address in the performance of their services, Algon's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

## DISPUTE RESOLUTION PROCEDURES

29.     The Debtors and Algon have agreed, subject to the Court's approval of this Application, that notwithstanding the Engagement Letter the parties submit to the jurisdiction of

13

this Court for any and all actions and disputes arising under the Engagement Letter or any action to enforce the terms thereof.

## **APPLICABLE AUTHORITY**

30.     The Debtors seek approval of the employment of Algon pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

31.     Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re Gulf States, Steel, Inc.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1983); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Mansville Corp.* (*In re Johns-Mansville Corp.*), 60 B.R. 612,

14

616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

32.     The retention of Algon and its professionals is a sound exercise of the Debtors' business judgment. Troy Taylor has extensive experience as a senior officer and as an advisor for many troubled companies. The Debtors believe that the Engagement Personnel will provide services that benefit the Debtors' estates and creditors. In light of the foregoing, the Debtors believe that the retention of Algon is appropriate and in the best interests of the Debtors and their estates and creditors.

33.     The retention, including both pre- and post-petition, of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code. *See, e.g., In re Adinath Corp, et al.*, Case No. 15-16885- BKC-LMI (Bankr. S.D. Fla. May 8, 2015) (Isicoff, J.); *In re SMF Energy Corporation, et al.*, Case No. 12-19084-BKC-RBR (Bankr. S.D. Fla. May 21, 2012)(Ray, J.); *In re Ruden McClosky PA.* , Case No. 1 1-40603-BKC-RBR (Bankr. S.D. Fla. December 5, 2011) (Ray, J.); *In re Medical Staffing Network Holdings, Inc., et al.*, Case No. 10-291 01-BKC-EPK (Bankr. S.D. Fla. July 22, 2010) (Kimball, J.); *In re Zeiger Crane Rental, Inc.*, Case No. 11-14183 (Bankr. S.D. Fla. May 24, 2011) (Kimball, J.); *In re BankUnited Fin. Corp.*, Case No. 09-19940 (Bankr. S.D. Fla. June 30, 2009) (Isicoff, J.); *In re Pharmed Group Holdings, Inc.*, Case No. 07-19187 (Bankr. S.D. Fla. Nov. 20, 2007) (Mark, J.); *In re Puig, Inc.*, Case No. 07-14026 (Bankr. S.D. Fla. July 20, 2007) (Mark, J.); *In re Piccadilly Cafeterias*, Case No. 03-27976 (Bankr. S.D. Fla. Oct. 31, 2003) (Ray, J.); *In re AT&T Latin America Corp.*, Case No. 03-13538 (Bankr. S.D. Fla. June 11, 2003) (Mark, J.); *In re Lighthouse Imports, LLC*, Case

15

No. 6:12-bk-14459 (Bankr. M.D. Fla. Dec. 14, 2012); *In re Lehman Bros. Holdings, Inc.*, Ch. 11 Case No. 08-13555 (Bankr. S.D.N.Y. Dec. 17, 2008) [ECF. No. 2278]; *In re PRC, LLC*, Ch. 11 Case No. 08-10238 (Bankr. S.D.N.Y. Feb. 27, 2008) [ECF. No. 182]; *In re Bally Total Fitness of Greater N.Y., Inc.*, Ch. 11 Case No. 07- 12395 (Bankr. S.D.N.Y. Aug. 21, 2007) [ECF. No. 283]; *In re Dana Corp.*, Ch. 11 Case No. 06-10354 (Bankr. S.D.N.Y. Mar. 29, 2006) [ECF. No. 740]; *In re Penn Traffic Co.*, Ch. 11 Case No. 03-22945 (Bankr. S.D.N.Y. Aug. 1, 2003) [ECF. No. 260]; *In re Acterna Corp.*, Case No. 03-12837 (Bankr. S.D.N.Y. July 2, 2003); *In re Exide Technologies, Inc.*, Case No. 02-11125 (Bankr. D. Del. May 10, 2002); *In re Kmart Corp.*, Case No. 02-B02474 (Bankr. N.D. Ill. E.D. May 22, 2002); and *In re WorldCom Group*, Case No. 02-13533 (Bankr. S.D.N.Y. Sept. 17, 2002).

34.    Based upon the foregoing, the Debtors submit that the retention of Algon, and the designation of Troy Taylor as Chief Restructuring Officer on terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted in these Chapter 11 Cases.

## NUNC PRO TUNC RELIEF IS APPROPRIATE

35.    Pursuant to the Debtors' request, Mr. Taylor has agreed to continue to serve as CRO on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention *nunc pro tunc* to the Petition Date so that Algon may be compensated for its pre-Application services. The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this Application, because Mr. Taylor and Algon have provided, and continue to provide, valuable services to the Debtors' estates in the interim period.

16

WHEREFORE, the Debtor respectfully requests entry of an order in the form attached hereto as **Exhibit C** (i) approving this Application; (ii) authorizing the Debtors to employ Troy Taylor and the advisory firm of Algon Group on an interim basis *nunc pro tunc* to September 22, 2020; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: September 23, 2020
Miami, Florida

s/ Michael S. Budwick
Michael S. Budwick, Esquire
Florida Bar No. 938777
mbudwick@melandbudwick.com
Joshua W. Dobin, Esquire
Florida Bar No. 93696
jdobin@melandbudwick.com
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandbudwick.com
MELAND BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Proposed Attorneys for*
*Debtors in Possession*

17



*Financial Advisors for Complex Situations*

September 21, 2020

Board of Managers
IT'SUGAR, LLC
4960 CONFERENCE WAY NORTH, SUITE 100
BOCA RATON, FL 33431

Gentlemen:

This letter confirms our understanding and agreement ("**Agreement**") of the basis upon which Algon Capital, LLC d/b/a Algon Group ("**Algon**") is being engaged by IT'SUGAR LLC; IT'SUGAR ATLANTIC CITY LLC; IT'SUGAR FLGC LLC; and IT'SUGAR FL I LLC (collectively, the "**Company**" or the "**Client**"), in their capacities as debtors and debtors-in-possession in their (to be filed) Chapter 11 cases, (collectively, the "**Bankruptcy Cases**"), in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**"), including the description of services to be performed and the basis of compensation for those services.

I. **Description of Services**

   a. **Officers.** In connection with this engagement, Algon shall make available to the Client:

      i. Troy T. Taylor, president of Algon, to serve as Chief Restructuring Officer (the "**CRO**").

      ii. Mr. Taylor will report to the Client's Board of Managers.

   b. **Additional Personnel.**

      i. Upon mutual agreement, Algon may provide additional professionals who may be employees, regular associates, or independent contractors/strategic partners of Algon, as required ("**Additional Personnel**", and together with the CRO, collectively, the "**Engagement Personnel**") to assist the CRO in the execution of the specific duties set forth below.  The Client and Algon hereby agree that Paul F. Rubin shall be part of the Additional Personnel.

   c. Algon acknowledges that the day-to-day operation of the Client is currently performed by the Client's Senior Management.  As such, the duties of the CRO and any Additional Personnel will not include or duplicate the day-to-day management of the Client.

**EXHIBIT A**

Board of Managers
IT"SUGAR, LLC
September 21, 2020
Page 2

   d. **Duties.** Subject to Board of Managers oversight, the CRO shall:

      i. Perform a financial review of the Client, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Client to its creditors, including without limitation its short and long-term projected cash flows, and shall assist the Client in developing, refining and implementing its restructuring plans.

      ii. Negotiate with the Client's senior lender and DIP lender as required.

      iii. Direct negotiations with landlords and other key constituents regarding a restructuring of the Client.

      iv. Lead negotiations with the Official Creditors Committee.

      v. Serve as the Client's representative for all purposes in connection with any proceedings in the Bankruptcy Court.

      vi. Have the authority to manage and execute (i) leases, contracts, settlements, third-party professionals, sale of the Asset, purchase of property or financing/re-financing of debt, and (ii) negotiate with Parties in Interest, other constituents and interested parties to develop and effectuate the Approved Plan(s), and in executing such Approved Plan(s).

      vii. Engage attorneys, accountants, appraisers and other consultants and third-party professionals, at Client's expense to maximize value of the estate. Algon acknowledges that all such engagements are subject to approval of the Bankruptcy Court.

      viii. Assist in the preparation of the monthly operating reports required by the Bankruptcy Court and in otherwise complying with the reporting and information requirements imposed by the Office of the United States Trustee.

      ix. Cause the Client to take any other action which the CRO, in good faith, determines to be necessary, prudent, or appropriate under the circumstances.

      x. Assist the Client in developing various strategic alternatives, and in conjunction with legal counsel, a plan of reorganization (the "**Plan**").

      xi. Lead in the execution of the Plan.

It is understood that the CRO will rely solely upon information supplied by the Client without assuming any responsibility for independent verification. The Client represents and warrants that any financial projections provided to the CRO have been, or will be, prepared on bases reflecting the best currently

Board of Managers
IT"SUGAR, LLC
September 21, 2020
Page 3

available information and reasonable judgments of the future cash flows of the
Client.

Projections; Reliance; Limitation of Duties.  The Client understands that the
services to be rendered by the CRO and Additional Personnel may include the
preparation of projections and other forward-looking statements, and that
numerous factors can affect the actual results of the Client's operations, which
may materially and adversely differ from those projections and other forward-
looking statements.  In addition, the CRO will be relying on information
provided by other members of the Client's management in the preparation of
those projections and other forward-looking statements.  Neither the CRO nor
Algon makes any representation or guarantee that a restructuring plan can be
formulated for the Client, that any proposal or plan selected by Algon and the
CRO will be more successful than all other possible plans or strategic
alternatives or, if formulated, that any proposed plan or strategic alternative will
be accepted by any of the Client's creditors and other constituents.

The CRO and Mr. Rubin will continue to be a member of Algon and while
rendering services to the Client continue to work at Algon in connection with
other unrelated matters, which will not unduly interfere with services pursuant
to this Agreement.


II.    **Compensation for Services**

        In consideration of services performed, during the term of this Agreement, the
Client agrees to compensate Algon as set forth below:

    A) Expense Reimbursement. On a monthly basis Algon will submit
       invoices for all reasonable out of pocket expenses incurred in
       connection with this engagement.   Such expenses will consist
       primarily of, but are not limited to lodging, travel (coach class),
       delivery and data services as well as communications expenses.

    B) CRO FEE. The Client shall pay Algon a fixed fee of $90,000 per
       month (prorated for partial months) for Troy Taylor's services as CRO
       through December 2020 and $60,000 per month thereafter.

    C) Additional Personnel Fee. The client shall pay Algon a fee for
       providing Additional Personnel based on the following hourly rates:

       - Paul Rubin -- Managing Director              $625 per hour
       - Other professionals                          Standard
         Rates

Board of Managers
IT"SUGAR, LLC
September 21, 2020
Page 4

D) <u>Algon Fee Cap.</u> Algon's total monthly fees shall not exceed $150,000 per month through December 2020. Subsequent months shall not exceed $100,000 per month.

E) <u>Retainer.</u> Client shall pay Algon an initial retainer of $125,000.

F) <u>Wire Instructions</u>.
Wells Fargo Bank
420 Montgomery Street San Francisco, CA 94104
ABA# 121000248
Beneficiary: Algon Group A/C # 2000050530421

G) <u>Time Records</u>.  The CRO and the Additional Personnel shall keep contemporaneous time records of their respective time and expenses. Time records shall contain descriptive narratives of the tasks performed.  To the extent that the Additional Personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10 hour increments and the corresponding charge (time multiplied and hourly rate) per such task.  To the extent that the CRO and any Additional Personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments.  The CRO will prepare reports of compensation earned and expenses incurred on a monthly basis and such monthly reports will be provided to the Client.

H) The compensation to be paid hereunder shall not include health insurance, unemployment compensation or federal tax withholding employer contributions, or other common "benefits".

I) It is acknowledged that the Client's payment obligations hereunder shall be subject to the approval of Algon's retention by the Bankruptcy Court.  The Client agrees to use reasonable efforts to obtain approval of the Bankruptcy Court for this engagement and compensation and reimbursement of expenses as described herein in accordance with Section 363 of the United States Bankruptcy Code.

J) Other than the amounts due by the Client to Algon under the terms of this Agreement, Algon will collect no commissions, brokerage fees, consulting fees or other payments related to the Asset from any party.

IV.    **Indemnification**

The Client shall indemnify Algon and the Additional Employees to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Client's bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under

Board of Managers
IT"SUGAR, LLC
September 21, 2020
Page 5

any such indemnities shall affect the benefits provided to Algon and the Additional Employees. The CRO shall be covered as an officer under the Client's existing director and officer liability insurance policies. The Client shall also maintain any such insurance coverage for the CRO for a period of not less than two years following the date of the termination of such officer's services hereunder. The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Client's charter, bylaws, or other organizational documents or policies shall affect the CRO's or Algon's rights hereunder.

V.    **Term**

   a.  <u>Term/Termination Provisions</u>:  This Agreement will be effective, subject to approval by the Bankruptcy Court, upon execution of this letter, and may be terminated with immediate effect by either party by written notice to the other party; provided, however that, notwithstanding the foregoing, (i) either party must provide at least ten days prior written notice of its intention to terminate this Agreement (the "**Termination Notice Period**") to the Client, CRO, Bankruptcy Court, and all other interested parties in the Bankruptcy Cases, (ii) Algon shall continue to provide the services hereunder during the Termination Notice Period, and (iii) the Client, CRO, or other interested party in the Bankruptcy Cases, as the case may be, may seek relief on an expedited basis during or after the Notice Period (together, the procedures and terms contained in this entire sub-paragraph "V.a." are, collectively, the "**Termination Provisions**").

   b.  On termination of this Agreement, any fees and expenses due Algon shall be remitted promptly, including those fee and expenses earned or accrued before termination and invoiced after termination. Algon acknowledges and agrees that Algon will have no lien rights against the Asset.

   c.  The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

VI.   **Entire Agreement, Governing Law and Other Provisions**

   This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements. This Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement executed by both parties hereto, subject to the approval of the parties to the Stipulation, the US Trustee and the Bankruptcy Court.

Board of Managers
IT"SUGAR, LLC
September 21, 2020
Page 6

If any term, agreement, covenant or restriction contained in this Agreement is held by the Bankruptcy Court to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, agreements, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

The laws of the State of Florida shall govern this Agreement. The parties hereto submit to the jurisdiction of the United States Bankruptcy Court, Southern District of Florida, for any and all actions and disputes arising under this Agreement or any action to enforce the terms hereof.

Subject to the reporting requirements contained in the Stipulation, Algon agrees to treat all information provided by the Client or the Client's representatives as confidential and to use such information only in connection with its services as outlined in the Agreement, and Algon agrees that it will not use such information for any other purpose.

Algon does not warrant or predict results in this matter and its fees are not contingent upon any outcome arising out of the provision of the related services. The Engagement Personnel shall rely, without further independent verification, on the accuracy and completeness of all information furnished by or on behalf of the Client and the Client acknowledges that Algon and Engagement Personnel shall not be responsible for any inaccuracies or omissions in such information. Notwithstanding the foregoing,

The Client acknowledges that Algon and Engagement Personnel are not performing or being requested to perform any auditing or financial reporting services nor are they being engaged to provide a fairness opinion or solvency opinion on any financial information presented or generated; any reports and opinions prepared by Algon should not be utilized as such. The Client acknowledges that Algon and Engagement Personnel may prepare projections and numerous factors can affect actual results of the Client's operations which can vary materially from the projections.

Algon's relationships with Parties in Interest have been disclosed on the attached affidavit, which will be filed with the Bankruptcy Court. If Algon becomes aware of any potential conflict of interest it will immediately inform the Client.

Signature Page Follows

Board of Managers
IT"SUGAR, LLC
September 21, 2020
Page 7

## VI.    Acceptance

Please confirm your acceptance of the foregoing terms of the Agreement by
signing and returning an executed original of the Agreement to Algon.

Sincerely,                                        Accepted by:

**Algon Group, LLC.**                            **IT'SUGAR, LLC,** and affiliates
                                                 **by,**

By: _____                            By: _____
Troy T. Taylor, President                        Anson Gladuikov, CFO

Date: ____9/22/20____                            Date: __09-21-2020__

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11

IT'SUGAR FL I LLC,                                  Case No. 20-20259-RAM
IT'SUGAR LLC,                                       Case No. 20-20261-RAM
IT'SUGAR ATLANTIC CITY LLC,                         Case No. 20-20263-RAM
IT'SUGAR FLGC LLC,                                  Case No. 20-20264-RAM
                                                    (Joint Administration *pending*)
                  Debtors.
_____/

**DECLARATION OF TROY TAYLOR IN SUPPORT OF APPLICATION OF
DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO (I) RETAIN ALGON
CAPITAL, LLC D/B/A ALGON GROUP TO PROVIDE THE DEBTORS A CHIEF
RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL AND (II)
DESIGNATE TROY TAYLOR AS CHIEF RESTRUCTURING OFFICER FOR THE
DEBTORS ON AN INTERIM BASIS NUNC PRO TUNC TO SEPTEMBER 22, 2020**

Troy Taylor submits this Declaration pursuant to 28 U.S.C. §1746, states as follows:[1]

1.      I am the president of Algon Capital, LLC d/b/a Algon Group ("*Algon*"), a restructuring and investment banking firm with completed assignments throughout the United States and internationally.

2.      I submit this declaration on behalf of Algon (the "*Declaration*") in support of the *Application of Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to (I) Retain Algon Capital, LLC d/b/a Algon Group to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Troy Taylor as Chief Restructuring Officer for the Debtors on an Interim Basis nunc pro tunc to September 22, 2020* (the "*Application*") on the terms and conditions set forth in the Application and the engagement letter, dated September 22, 2020,

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Application.

1

**EXHIBIT B**

entered into between the Debtors and Algon and attached to the Application as Exhibit A (the "***Engagement Letter***"), *nunc pro tunc* to the Petition Date. Except as otherwise noted, I have personal knowledge of the matters set forth herein.[2]

3.      On September 22, 2020, the Debtors engaged Algon to provide restructuring management services, including my services as Chief Restructuring Officer as set forth in the Engagement Letter. I believe that my and Algon's experience and expertise will be valuable to the Debtors' efforts to reorganize.

## QUALIFICATIONS

4.      Both Algon and myself personally have extensive experience in providing restructuring services in and out of chapter 11 proceedings and have an excellent reputation for the services they have rendered on behalf of debtors and creditors throughout the United States.

5.      I am the Founder and President of Algon, and I have over 30 years of experience that combines investment banking, restructuring (both in Chapter 11 and out-of-court), and senior management. I have served as the Lead Financial Advisor, Chief Restructuring Officer or Chief Executive Officer in a broad range of industries including real estate/hospitality, energy, manufacturing, and distribution. I recently led the restructuring/recapitalization of Hyperion Bank in my capacity as Vice Chairman and acted as the sole Independent Director of the Dress Barn, Inc. in connection with the wind down of approximately 650 retail locations around the country. I am also a founding investor and the Chairman of the Audit Committee for Big Rock Partners Acquisition Corp., a publicly traded company.

---

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Algon and are based on information provided by such professionals.

6.     I have completed various real estate restructurings/sales for high-profile clients including The Related Group, Four Season Peninsula Papagayo Resort, One Bal Harbour Resort, BlueGreen Vacations Corporation, The Altman Companies, and Cabi Downtown LLC.

7.     Algon is a national, leading financial advisory firm. The following is a representative list of Algon's advisory engagements:

| | |
|---|---|
| The Dress Barn, Inc. | • Served as sole independent director in conjunction with wind-down of retail operations<br>• Wind-down included 650 stores and related lease obligations |
| Big Rock Partners, LLC | • Financial/Restructuring Advisor in senior housing chapter 11<br>• Advisor on $69 million acquisition of 500+ bed Tampa area CCRC |
| Tradition/Port St. Lucie | • Advised institutional lender on 8,200-acre master planned community<br>• Conducted nationwide M&A process to maximize value<br>• Sold 3,028 acres to Mattamy Homes; transferred 1,222 acres to the City |
| BrightSource Energy, Inc. | • International solar thermal developer with invested capital in excess of $800 million<br>• Appointed Vice Chairman and Board Member at the request of the senior lender<br>• Debt restructuring/international M&A process |
| Peninsula Papagayo | • Advised on a successful operational and debt restructuring<br>• Increased equity value by approximately $100 million<br>• Conducted worldwide M&A process resulting in the successful sale of the resort |
| The Related Group | • $2+ billion restructuring of senior and mezzanine debt across 21 separate loans<br>• Completed consensual restructuring with 40+ domestic and foreign financial institutions<br>• Restructured Company is once again a major successful real estate developer |

3

| | |
|---|---|
| Tradition/BFC Corp. | • Diversified NYSE holding company (NYSE: BBX)<br>• CRO for successful restructuring on over $370 million of subsidiary level debt |
| One Bal Harbour | • CRO in confirmed Chapter 11 of condo/hotel project with $700+ million in assets<br>• Managed sale process via section 363 sale |
| Hyperion Bank | • As Vice Chairman, led a management/financial restructuring<br>• Raised $18.3 million through Rights Offering and Common Stock Offering |
| Cabi Downtown, LLC | • Financial advisor on $256 million Chapter 11 Plan for major condominium project |
| Altman Companies | • Completed global restructuring for leading developer and operator of apartments with over $475 million of debt |
| Agway Liquidating Trust | • Advised $400 million trust on the disposition of 24 environmentally-tainted properties |
| Synovus Financial Corporation (NYSE: SNV) | • Advised in divestiture of 28% equity ownership in Aerosonics Corporation (AMEX: AIM) |
| BlueGreen Vacations Corporation (NYSE: BXG) | • Review of strategic alternatives resulting in $29 million sale of Developer/Operator of timeshare resorts and residential parcels |
| Advanced Lighting Technologies, Inc. (Nasdaq: ADLT) | • Advised the Official Equity Committee in obtaining substantial recovery in $175 million Chapter 11 |
| Speizman Industries, Inc. (SPZN.OB) | • Advised the Special Committee to the Board of Directors in connection with a chapter 11 petition |
| Mego Financial (Nasdaq: MEGO) | • Advisor to Chapter 11/7 trustee for $185 million publicly-traded timeshare company<br>• Developed strategy and negotiated substantial recovery for DIP lender |
| Village Homes | • Restructured approximately $140 million of senior debt |
| Diversified Family Investment Vehicle | • Advised on two CMBS debt restructurings of retail and office assets<br>• Successfully negotiated agreements with CW Capital and C3 |

| | |
|---|---|
| Investor group | • Advised investor group in purchase of PCX Corp., a division of NYSE-listed Integrated Electrical Services, Inc. |
| Southeastern Retirement Associates, LLC | • Advised an ad hoc committee of subordinated note holders in a $52.3 million restructuring |
| NY-based hedge fund | • Advised on valuation of $600 million of subordinated debt in a publicly-traded company |
| Arlington Ridge, LLC | • Advisor to Debtor in Chapter 11 proceedings  Held CRO position |
| PsychSolutions Inc. | • Financial advisor in sale to Youth & Family Centered Services, Inc., a portfolio company of TA Associates |
| Adama Holdings | • Advised major hedge fund investors on $500 million eastern European distressed investment |
| SolarReserve, Inc. | • Advising senior lender on maximizing recovery of $90 million loan <br> • Overseeing liquidation of assets located in US, South Africa, Chile and Australia |
| SELAF Waterfall Holding Company | • Advised a $175 million private equity firm on strategic alternatives for portfolio investment |
| Harmony Information Systems, Inc. | • Advised JMI Equity ($1.3+ billion) on the recapitalization of a portfolio company |

8.    Further, as a result of prepetition work performed on behalf of the Debtors, Algon and I personally have acquired knowledge of the Debtors and their business and we are familiar with the Debtors' financial affairs, operations and related matters.

9.    Algon will endeavor to coordinate with the other professionals retained in these cases to eliminate unnecessary duplication of work.

## DISINTERESTEDNESS AND ELIGIBILITY

10.    Prior to prepetition work performed in preparation for the filing, neither Algon nor myself had any connection with the Debtors. However, we have connections with the Debtors'

affiliates as follows:

a)      I served as CRO for Core Communities Inc. with respect to an out-of-court debt restructuring. Core Communities was a subsidiary of Woodbridge Holdings Corporation, an affiliate of BBX Capital Corp., which in turn is an affiliate of the Debtors. The representation ceased in 2014. I do not believe that this relationship affects Algon's or my disinterestedness in these cases.

b)      Algon served as financial advisor to Bluegreen Vacation Corporation ("*Bluegreen*") with respect to the sale of a division of Bluegreen. The representation ceased in 2014. Bluegreen is a public company traded on the New York Stock Exchange. BBX is majority shareholder of Bluegreen. Algon refers to the Form 10-Q filed by BBX for the quarter ending June 30, 2020 for the details of a proposed spinoff transaction, previously announced in June 2020 related by BBX and Bluegreen. I do not believe that this relationship affects Algon's or my disinterestedness in these cases.

c)      Algon served as financial advisor to the Altman Companies, an independently owned apartment developer for debt restructuring. The Altman Companies are currently 50% owned by BBX Capital Real Estate, an affiliate of the Debtors. The representation ceased more than 5 years prior to the Petition Date. I do not believe that this relationship affects Algon's or my disinterestedness in these cases.

d)      I am currently a passive investor, and have been a passive investor in numerous partnerships sponsored by Label & Co., a niche real estate developer/home builder. An affiliate of the Debtors, BBX Sky Cove LLC, a wholly owned subsidiary of BBX Capital Real Estate, is likewise a passive investor in many of the same projects. I do not believe that this relationship affects Algon's or my disinterestedness in these cases.

e) Over the last 10 years Mr. Taylor has discussed various business issues regarding real estate with senior BBX executives. These discussions included investment opportunities, restructuring of debt and/or leases and general real estate market conditions. These were all informal conversations and Mr. Taylor was not compensated.

11. In connection with the preparation of this Declaration, Algon's professionals conducted a review of their contacts with the Debtors, their affiliates, the Debtors' principals, and certain entities and individuals holding large claims against or interests in the Debtors that were reasonably known to Algon, and other interested parties that were reasonably known to Algon (collectively, the "*Conflict Parties*").

12. Based on the results of Algon's review, it was determined that, other than set forth herein, Algon does not have relationships with any of the Conflict Parties.

13. In 2014, Mark Meland, Esq. and Meland Budwick, P.A. represented Mr. Taylor in connection with an acquisition of a condominium unit in Miami Beach, Florida and ancillary real estate related services. That representation has concluded and that matter was unrelated to the Debtors.

14. In the past Meland Budwick, P.A. has represented parties in interest in matters in which Algon Capital LLC and/or Troy Taylor have served as a financial advisor and/or chief restructuring officer. None of those matters were related to the Debtors.

15. As part of its diverse practice, Algon appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and restructuring consultants, who may represent claimants and parties-in-interest in these cases. Also, Algon has performed in the past, and may perform in the future, consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of

whom may be involved in these proceedings. In addition, Algon has in the past, may currently and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors herein in matters upon which Algon is to be employed, and none are in connection with these cases.

16.    Algon is not a "creditor" of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.

17.    Based on the results of the relationship search conducted to date as described above, Algon appears to have no connection with the Debtors, their creditors, other parties-in-interest (as reasonably known to Algon) or their respective attorneys, except as disclosed in this Declaration. Further, no one involved in these cases or in Algon's business generally has any connection to the United States Trustee for the Southern District of Florida (the "*U.S. Trustee*") or any person employed in the Office of the U.S. Trustee in this District.

18.    Other than as set forth in this Declaration, Algon neither holds nor represents any interest adverse to the Debtors and is a "disinterested person" within the scope and meaning of section 101(14) of the Bankruptcy Code.

19.    It is Algon's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new relevant facts or relationships are discovered or arise, Algon will promptly file a supplemental disclosure in the same manner as an estate professional employed pursuant to section 327 of the Bankruptcy Code would file under Bankruptcy Rule 2014(a).

## COMPENSATION

20.     Subject to Court approval of the Application and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines, and the Local Rules for the United States Bankruptcy Court for the Southern District of Florida, Algon will seek from the Debtors payment for compensation on a monthly flat fee for myself as Chief Restructuring Officer and on an hourly basis for all other Additional Personnel, and reimbursement of actual and necessary expenses incurred by Algon, as described in the Application. Algon's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application.

21.     To the best of my knowledge, (i) no commitments have been made or received by Algon with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (ii) Algon has no agreement with any other entity to share with such entity any compensation received by Algon in connection with these chapter 11 cases.

22.     By reason of the foregoing, I believe Algon will be eligible for retention by the Debtors pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

23.     I am authorized to submit this Declaration on behalf of Algon, and if called upon to testify, I would testify competently as to the facts set forth herein.

[Remainder of page intentionally left blank. Next page is signature page.]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This Declaration is executed by me on this 22nd day of September, 2020.

_____
Troy Taylor
President

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

Chapter 11

IT'SUGAR FL I LLC,                          Case No. 20-20259-RAM
IT'SUGAR LLC,                               Case No. 20-20261-RAM
IT'SUGAR ATLANTIC CITY LLC,                 Case No. 20-20263-RAM
IT'SUGAR FLGC LLC,                          Case No. 20-20264-RAM
                                            (Joint Administration *pending*)

          Debtors.

_____/

**INTERIM ORDER AUTHORIZING (I) THE RETENTION OF ALGON CAPITAL, LLC
D/B/A ALGON GROUP TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING
OFFICER AND (II) THE DESIGNATION OF TROY TAYLOR AS CHIEF
RESTRUCTURING OFFICER FOR THE CHAPTER 11 DEBTORS-IN-POSSESSION
ON AN INTERIM BASIS *NUNC PRO TUNC* TO THE PETITION DATE AND SETTING
<u>FINAL HEARING</u>**

THIS MATTER came before the Court on ____, 2020 at ___ ___.m. upon the

*Application of the Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to (I) Retain Algon*

*Capital, LLC d/b/a Algon Group to Provide the Debtors a Chief Restructuring Officer and*

*Certain Additional Peronnel and (II) Designate Troy Taylor as Chief Restructuring Officer for*

1

*the Debtors, on an Interim Basis, Nunc Pro Tunc to September 22, 2020* [ECF No. ___] (the **"Application"**), pursuant to § 363(b)) of Title 11 of the United States Code (the **"Bankruptcy Code"**), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (the **"Local Rules"**); the Court having reviewed the Application, the declaration of Troy Taylor in support of the Application, (the **"Taylor Declaration"**); the Court being satisfied based upon the representations made in the Application and the Taylor Declaration that Troy Taylor and Algon Capital, LLC d/b/a Algon Group ("Algon") do not hold any interest adverse to the Debtors or to the estates, due and proper notice of the Application having been provided, and after due deliberation and sufficient cause appearing therefore, it is accordingly

> **ORDERED AND ADJUDGED** as follows:

1. The Application is **GRANTED** on an interim basis, *nunc pro tunc* to the Petition Date.

2. It'Sugar FL I LLC, It'Sugar LLC, It'Sugar Atlantic City LLC, and It'Sugar FLGC LLC (the "**Debtors**") are authorized to retain Algon and designate Troy Taylor of Algon as Chief Restructuring Officer of the Debtors in these Chapter 11 cases in accordance with the terms and conditions set forth in the Application and this Interim Order.

3. Algon and Mr. Taylor shall not be required to submit fee applications. However, fees paid to Algon shall be subject to final review and approval by this Court at the conclusion of these Chapter 11 cases.

4. The Court shall conduct a final hearing (the "**Final Hearing**") on the Application on _____, at _____, prevailing Eastern Time, by telephone through CourtSolutions. To participate through CourtSolutions, you must make a reservation in advance

no later than 3:00 p.m., one business day before the date of the hearing.  Reservations should be arranged online at https://www.court-solutions.com/.  If a party is unable to register online, a reservation may also be made by telephone at (917) 746−7476.

5.      Any party in interest objecting to the relief sought in the Application shall serve and file written objections, which objections shall be served upon (a) the Debtors; (b) Debtor's Counsel; (c) the Office of the United States Trustee for the Southern District of Florida; (d) the entities listed on the Master Service List, if any, filed pursuant to Local Bankruptcy Rule 2002-1(K); and (e) counsel to any Official Committee of Unsecured Creditors Committee, to the extent one is appointed prior to the Final Hearing (collectively, the "***Notice Parties***") and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of Florida, to allow actual receipt by the foregoing no later than _____ at 4:30 p.m., prevailing Eastern Time.

6.      Notice will be provided to all parties by mailing a copy of this Interim Order setting the Final Hearing upon all parties on the Master Service List pursuant to Local Rule 2002-1(H), Designation of Master Service List in Chapter 11 Cases.

7.      In the event the Application is not granted on a final basis, Algon shall be permitted to receive compensation for services rendered in the period between the Petition Date and the Final Hearing, subject to final review and approval by this Court at the conclusion of these Chapter 11 cases.

8.      The requirements for emergency motions set forth in Local Rule 9075-1 and for entry of the relief requested earlier than the period set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Application.

9.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Application and the record.

10.    Entry of this Interim Order is without prejudice to the rights of any party-in-interest to interpose an objection to the Application, and any such objection will be considered on a *de novo* basis at the Final Hearing.

11.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Interim Order.

###

**Submitted By:**
Joshua W. Dobin, Esquire
Florida Bar No. 93696
jdobin@melandbudwick.com
MELAND BUDWICK, P.A.
Counsel for Debtors
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone:      (305) 358-6363
Telefax:          (305) 358-1221

**Copies Furnished To:**
Joshua W. Dobin, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.