UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                          Case No.  20-20259-RAM
                                                (Jointly Administered)

It'Sugar FL I LLC, *et al,*

Chapter 11

        Debtors.

_____/

**EMERGENCY MOTION OF THE DEBTORS FOR INTERIM
AND FINAL ORDERS (I) AUTHORIZING DEBTOR (A) TO
OBTAIN POSTPETITION FINANCING FROM SHL HOLDINGS, INC.; AND
(B) TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE
PROTECTION, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

> The Debtors seek to continue to operate in the ordinary course, to preserve the value of the estate, to preserve jobs and to maintain operations. Without the immediate authorization to obtain financing, the Debtors will not be able to meet payroll, rent, tax, insurance and other obligations necessary for its day-to-day operations. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1(B) which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in the Motion, as the relief requested is urgent in nature and does not lend itself to advance resolution.

It'Sugar FL I LLC, It'Sugar LLC, It'Sugar Atlantic City LLC, and It'Sugar FLGC LLC

(collectively, ***"It'Sugar"*** or the ***"Debtors"***) as debtor in possession, moves this Court pursuant to

sections 105, 361, 362, 363, 364 and 507(b) of title 11 of the United States Code ("***Bankruptcy***

***Code***"), Rules 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure ("***Bankruptcy***

***Rules***"), Rules 4001-2 and 4001-3 of the Local Rules of United States Bankruptcy Court for the

Southern District of Florida ("***Local Rules***"), and this Court's *Guidelines for Motions Seeking*

*Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing*

("***Guidelines***"), on an emergency basis, for entry of interim and final orders: (a) authorizing the

Debtors to obtain senior secured postpetition financing; (b) authorizing the Debtors to use Cash Collateral (as defined below); (c) granting liens and providing superpriority claims with respect to such postpetition financing; (d) approving the form of adequate protection to be provided by the Debtors; (e) modifying the automatic stay to the extent necessary to effectuate the terms of the DIP Orders (as defined below); (f) scheduling a final hearing to consider entry of the Final Order (as defined below); and (g) granting related relief in connection with the DIP Financing (as defined below) ("***Motion***"). In support, the Debtors respectfully state as follows.

## DISCLOSURES UNDER BANKRUPTCY RULES, LOCAL RULES AND GUIDELINES

Pursuant to Bankruptcy Rule 4001(b), (c) and (d), Local Rules 4001-2, 4001-3, 9013-1(F) and (G), and the Guidelines, the Debtors submit the following list and summary of the material terms of its proposed secured financing and use of cash collateral pursuant to the proposed Interim Order attached as Exhibit A ("***Interim Order***"), setting forth the location of such material terms in the Interim Order.[1]

| **Material Provision** | **Location in Interim Order and/or Loan and Security Agreement** | **Summary Description** |
|---|---|---|
| Prepetition Lender | Interim Order ¶ D | SHL Holdings, Inc. |
| DIP Lender | Loan and Security Agreement, p. 1, ¶ 3 | SHL Holdings, Inc. |
| Principal balance due Prepetition Lender | Interim Order ¶¶ D.3 and 5.a.; Loan and Security Agreement p. 2 | $6,216,362.00 |
| DIP Loan Amount | Loan and Security Agreement ¶ 3 | $4,000,000.00 |

---

[1] The Loan and Security Agreement is attached as Exhibit B to this Motion. References to the Budget are to the 13-week cash Budget contemplated by this Motion and attached to the proposed Interim Order. References to the Interim Order is to the proposed Interim Order attached as Exhibit A. All capitalized terms not defined in this chart shall have the meanings ascribed to them in this Motion, the Loan and Security Agreement, and the Interim Order, as applicable.

2

| Material Provision | Location in Interim Order and/or Loan and Security Agreement | Summary Description |
|---|---|---|
| Interest Rate | Id. | LIBOR + 1.5% |
| Security Interest | Loan and Security Agreement ¶ 5 | Lien on and security interest in the Collateral (as defined in the Loan and Security Agreement) |
| Liens, Superpriority claim, and priming liens | Interim Order ¶¶ 3, 4, 6, 7; Loan and Security Agreement ¶¶ 4 and 5 | Senior lien and super priority administrative expense claim |
| Cash Collateral | Interim Order ¶¶ 2 and 5 | Subject to Interim Order and Loan and Security Agreement, Debtors are authorized to use Cash Collateral (as defined in Motion) |
| Proposed Use of DIP Loan Proceeds | Budget attached as Exhibit to Interim Order | Working capital and general corporate purposes; payment of certain administrative costs as set forth in the Budget, including professional fees contemplated by the Interim Order |
| Termination Date | | The Interim Period up to a final hearing on this Motion, and subject to termination provisions in the Interim Order |
| Termination Provisions | Interim Order ¶ 2; Loan and Security Agreement p. 4 and ¶ 9 | Upon Event of Default, Debtors' right to use Cash Collateral terminates, and SHL may declare all obligations immediately due and payable and charge interest, apply Collateral held or assigned to SHL toward monies due, or alternatively, file suit(s) to foreclose Loan and Security Agreement. SHL's remedies are cumulative and exercise of one remedy does not preclude exercise of another remedy. |
| Remedies Notice Period | Interim Order p. 5, ¶ 2; Loan and Security Agreement p. 9, ¶ 9; p. 10 ¶ 10 | Upon occurrence of Cash Collateral Termination Event, SHL must give 5-days written notice to Debtors prior to commencing a proceeding to determine Debtors' right to further use of Cash Collateral; SHL must give Debtors at least 10 days' notice before effectuating public sale or of time after which any |

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

| Material Provision | Location in Interim Order and/or Loan and Security Agreement | Summary Description |
|---|---|---|
| | | private sale or other disposition of Collateral is to be made |
| Adequate Protection | Interim Order p. 6-8, ¶ 5; Loan and Security Agreement p. 5; p. 11, ¶ 11(d) | SHL is entitled to adequate protection in an amount equal to the aggregate diminution in the value of its interest in the Collateral including Cash Collateral as provided for under Bankruptcy Code. |
| | | SHL is entitled to further adequate protection, including a stipulation of Prepetition Liens and Debt, the allowance of SHL's secured claim, the granting of Replacement Liens (subordinate to the DIP Liens) on the Collateral, the reaffirmation of the Prepetition Guaranty and other Prepetition Loan Documents, and the payment of Fees and Expenses pursuant to section 506(b) of the Bankruptcy Code. |
| Debtor's Acknowledgments and Agreement | Interim Order p. 2-3, ¶D(1)-(6); p. 5, ¶3; p.6, ¶4; p. 6, ¶5(a); Loan and Security Agreement p. 1-2, ¶¶ A-G; p. 2, ¶ 1; p. 10-11, ¶ 11(d) | Among other things, Debtors acknowledge the Prepetition Debt and the enforceability of the Prepetition Liens. No Avoidance Action shall lie regarding obligation, transfer or grant of security interests under the DIP Documents. |
| | | Stipulations of the Debtors are binding on any successor and third parties including chapter 7 or 11 trustee. |
| Waiver/modification of stay | Interim Order p.8, ¶6 | Entry of an order granting relief from stay to allow DIP Lender to exercise rights under the DIP Documents, including rights set forth in the Loan and Security Agreement, with the only issue to be raised by parties-in-interest, if any, being whether, in fact, an Event of Default has occurred and is continuing. |
| Limitation on use of proceeds | Interim Order p. 5-6, ¶2; p. 11, ¶ 11 | Debtors' estates' right to use Cash Collateral subject to terms and conditions of Interim Order and Loan |

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

| Material Provision | Location in Interim Order and/or Loan and Security Agreement | Summary Description |
|---|---|---|
| | | and Security Agreement as provided for in the Budget; such right shall be subject to a Cash Collateral Termination Event.<br><br>More specifically, proceeds of DIP Loan may not be used to, among other things, object to and or challenge the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to any amount due under the DIP Documents or Prepetition Loan Documents for lender liability or actions pursuant to Sections 105, 502(d), 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code. |
| Waiver of right to file a plan | | None |
| Deadlines for filing a plan | | None |
| Waiver/modification of non-bankruptcy law re perfection | Interim Order p. 6, ¶5.a.; p. 8-9, ¶¶7, 8; | Debtors acknowledge that SHL's Prepetition Liens were duly perfected; and perfection of the Replacement Liens and DIP Liens provided under the Interim Order and Loan and Security Agreement |
| Indemnification | | None |
| Release/Waiver of claims | | See comments to Debtors' acknowledgements and agreement, above. |
| Limitation of rights of parties under section 506(c) | Interim Order, ¶8 | Debtors waive the right to surcharge SHL's Collateral under Section 506(c) |
| Carve Out | Loan and Security Agreement p. 7, ¶ 4 | SHL's Postpetition Liens and Super-Priority Claim shall be subordinate to:<br><br>(i) the claims of retained professionals of the estates in this Case up to the amounts set forth in the Budget.<br><br>(ii) unpaid fees and expenses of the |

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

| Material Provision | Location in Interim Order and/or Loan and Security Agreement | Summary Description |
|---|---|---|
| | | United States Trustee and the Clerk of the Court. |
| Granting of lien on claims/causes of action | | None |
| Binding Effect | | See comments to Debtors' acknowledgements and agreement, above. |
| Interim Order | | Substantially in the form of the Interim Order attached to the Motion as Exhibit A. |

**Relief Requested**

1.      Pursuant to this Motion, the Debtors seek the scheduling of interim and final hearings, and the entry of the Orders providing the following relief:

a.      **DIP Financing**: authorizing the Debtors to obtain postpetition financing ("***DIP Financing***") pursuant to the terms and conditions of the DIP Documents (as defined herein), the Interim Order (as defined herein) and the Final Order (as defined herein), pursuant to section 364(c)(1), 364(d), and 364(e) of the Bankruptcy Code and Rule 4001(c) of the Bankruptcy Rules;

b.      **DIP Documents**: authorizing the Debtors to execute and enter into the Loan and Security Agreement attached as "**Exhibit B**" ("***Loan and Security Agreement***"), the promissory note, and all related or ancillary documents and agreements, including all security and pledge agreements contemplated thereby (collectively, as may be amended, supplemented or otherwise modified pursuant to their respective terms, the "***DIP Documents***"), and to perform all such other and further acts as may be required in connection with the DIP Documents;

c.      **DIP Loan**: authorizing the Debtors to borrow, on an interim basis, post-petition financing of up to $4,000,000.00 ("***Interim DIP Loan***") and seek other financial accommodations from SHL as part of the DIP Financing;

d.      **Cash Collateral**: authorizing the Debtors to continue to use cash in which SHL has an interest ("***Cash Collateral***"), including, but not limited to, the proceeds of all Collateral (as defined in the DIP Documents and Prepetition Loan Documents) in accordance with the Budget (as defined herein);

e.      **Adequate Protection**: granting SHL Replacement Liens and reaffirming the Debtors' obligations under the Prepetition Loan Documents.

6

f.    **Debtor Stipulations**: approving of certain stipulations in paragraph D of the Interim Order by the Debtors with respect to the Prepetition Loan Documents and DIP Documents and the liens and security interests arising therefrom, and releasing certain claims;

g.    **Superpriority Administrative Claims**: allowing SHL a superpriority administrative expense claim under section 364(c)(1) of the Bankruptcy Code for all of the Debtors' obligations under the DIP Documents, the Interim Order and the Final Order;

h.    **Automatic Stay**: vacating or modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Documents, the Interim Order and the Final Order;

i.    **Interim Hearing**: pursuant to Bankruptcy Rule 4001, that an interim hearing ("***Interim Hearing***") on the Motion be held before this Court to consider entry of an order granting the Motion on an interim basis ("***Interim Order***"), thereby authorizing the Debtor, on an interim basis to borrow from SHL under or as permitted by the DIP Documents, and authorizing the Debtor's use of Cash Collateral;

j.    **Final Hearing**: scheduling a final hearing ("***Final Hearing***") to be held within 45 days of the entry of this Interim Order to consider entry of a final order authorizing the DIP Financing ("***Final Order***"); and

k.    **Other Related Relief**: granting the other relief set forth in the proposed Interim and Final Orders.

### Jurisdiction and Venue

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

4.    On September 22, 2020 ("***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

5.    The Debtors are operating their business and managing their affairs as a debtors-in- possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

6.    For a detailed description of the Debtors and operations, the Debtors respectfully refer the Court and parties in interest to the Consolidated Chapter 11 Case Management Summary ("***Case Management Summary***") [ECF No. 8].

7.    As disclosed in the Case Management Summary, SHL Holdings Inc. and It'Sugar share a common, ultimate parent entity.

## Basis for Relief Requested

### A.  The DIP Financing is a Sound Exercise of the Debtor's Business Judgment

8.    As described above, after appropriate investigation and analysis, the Debtors' management has concluded that the DIP Financing is the best option available under the circumstances of this case.

9.    Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. *See In re Farmland Indus., Inc*., 294 B.R. 855, 879 (Bankr. W.D. Mo. 2003) (articulating that approval of postpetition financing requires, inter alia, an exercise of "sound and reasonable business judgment"); *see also In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) (stating that "[c]ourts have generally deferred to a debtor's business judgment in granting section 364 financing"); *Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interest of TWA and its creditors"); *cf. In re Filene's Basement, LLC*, No. 11- 13511(KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) (stating "[t]ransactions under § 363 must be based upon the sound business judgment of the debtor or

8

trustee."). In fact, "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

10.    Courts have noted that the business judgment test is not an onerous standard. *See Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463–64 (B.A.P. 8th Cir. 2003). Moreover,

> [u]nder the 'business judgment' rule, the management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, inter alia, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code.

*In re Farmland Indus., Inc.*, 294 B.R. at 881 (internal citations omitted). Accordingly, courts have reasoned that, "[b]usiness judgments should be left to the board room and not to [the] Court." *In re Farmland Indus., Inc.*, 294 B.R. at 881 (citations omitted).

11.    Courts recognize that a debtor is entitled (if not required) to consider noneconomic benefits offered by a proposed postpetition facility when exercising its business judgment:

> Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including noneconomic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization.

*In re ION Media Networks, Inc.*, No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. Jul. 6, 2009).

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

12.     The Debtors' determination to enter into the DIP Financing represents an appropriate exercise of its sound business judgment and should be approved. The Debtors' ability to operate successfully and confirm a plan is contingent upon having the liquidity to meet its post-petition financial obligations. Absent a credit facility to provide cash for operations and to fund this case, the Debtors will be unable to achieve their restructuring goals to the detriment of its estate and creditors.

13.     The DIP Financing also demonstrates the support of SHL (the Debtors' prepetition and post-petition financier) for the broader restructuring process and will provide confidence to landlords, suppliers, vendors, customers, employees, other business partners that the Debtors can continue to meet their commitments during this chapter 11 case.

14.     In light of the Debtors' overall circumstances, the Debtors believe that they could not obtain postpetition financing from another lending source on terms equal or superior to the DIP Financing. As such, and as further described in the Case Management Summary [ECF No. 8], the Debtor's decision to enter into the DIP Financing is a sound exercise of the Debtor's business judgment. Accordingly, the Court should grant the Debtors authority to enter into the DIP Financing and obtain the funds from SHL on the secured, administrative superpriority basis described herein.

**B.  The Debtors Should be Authorized to Obtain DIP Financing Under Section 364 of the Bankruptcy Code**

15.     It is essential to the success of the Debtors' chapter 11 case that the Debtors obtain access to sufficient postpetition financing and use of Cash Collateral. The preservation of estate assets, the Debtors' continuing viability and its ability to reorganize successfully and

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

maximize value for stakeholders depends heavily upon the approval of the relief requested herein.

16.    Section 364(c) of the Bankruptcy Code authorizes a debtor to incur credit with priority over all administrative claims. To incur credit on this basis, a debtor need only demonstrate that, despite a good faith effort, credit was not available without the protections of sections 364(c) of the Bankruptcy Code. *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.; see also In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (holding that debtor made a reasonable effort to secure financing where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct . . . an exhaustive search for financing." *In re Sky Valley, Inc*., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

17.    The Debtors have satisfied the conditions under section 364(c) of the Bankruptcy Code to obtain financing in exchange for a superpriority administrative claim. The Debtors have determined that they are not able to secure sufficient funding on an unsecured or junior lien basis. SHL has existing liens on substantially all the Debtor's assets. Unencumbered assets, if any, are insufficient to support the Debtors' needs. Likewise, the Debtors have determined that sufficient capital could not be raised on an unsecured basis or on a junior lien basis, even in combination with the Debtors' unencumbered non-cash assets, if any.

11

18.    Section 364(d)(1) authorizes the Debtors to obtain postpetition credit secured by a senior lien on assets of the estate, if the Debtors are unable to obtain sufficient credit without granting such a lien and the interests of any nonconsenting lien holders are adequately protected. 11 U.S.C. § 364(d)(1).

19.    Courts have identified a number of factors that support a debtor's determination to obtain credit secured by a "priming" lien, including: (a) whether the party subject to a priming lien has consented to such treatment; (b) whether alternative financing is available on any other basis (i.e., whether any better offers, bids or timely proposals are before the court); (c) whether the proposed financing is necessary to preserve estate assets and is necessary, essential, and appropriate for continued operation of the debtor's business; (d) whether the terms of the proposed financing are reasonable and adequate given the circumstances of both the debtor and proposed lender(s); and (e) whether the proposed financing agreement was negotiated in good faith and at arm's length and entry therein is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and its creditors. *See, e.g., In re Ames Dep't Stores, Inc.*, 115 B.R. at 37-39; *Bland v. Farmworker Creditors*, 308 B.R. 109, 113-14 (S.D. Ga. 2003); *In re Barbara K. Enter. Inc.*, No. 08-11474, 2008 WL 2439649 at *13 (Bankr. S.D.N.Y. Jun. 16, 2008); *see also* 3 COLLIER ON BANKRUPTCY ¶ 364.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

20.    The Debtors respectfully submit that the DIP Financing, including the granting of Priming Liens is appropriate under this analysis and the facts of this chapter 11 case. First, the priming requested is consensual. The proposed financing in this case provides for a senior lien on the assets of the estate, except to the extent of "Permitted Liens." The Debtors are unaware of

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

any secured claims other than the claims of SHL. Consequently, the Debtors assert that adequate protection to existing lien-holders is not an issue in this case.

21.      Second, the Debtors and their advisors have determined that the DIP Financing is the only alternative readily available that can satisfy the Debtors' financing needs in this case and permit it to pursue a restructuring within chapter 11. The Debtors are only able to obtain these negotiated terms by agreement to provide first priority priming liens. The Debtors do not believe that the financing necessary to fund this chapter 11 case and pursue the Debtors' restructuring goals is available from other lenders on comparable terms.

22.      Third, the Debtors require immediate access to the DIP Financing, along with the use of Cash Collateral, to provide adequate liquidity for the operation and maintenance of the Debtors' estates and assets. The Debtors' access to the DIP Financing will benefit all stakeholders by facilitating the Debtors' efforts to preserve and enhance the value of the Debtor's assets.

23.      Fourth, the Debtors' entry into the DIP Financing is a sound exercise of business judgment and is in the best interests of its estate, creditors and other parties in interest.

### C.  The Debtor's Proposed Adequate Protection Should be Approved

24.      Parties with an interest in cash collateral or collateral that may be used to secure postpetition financing are entitled to adequate protection. 11 U.S.C. § 363(e). Although section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *See, e.g., Martin v. United States (In re Martin)*, 761 F.2d 472, 474-76 (8th Cir. 1985); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012).

13

25.    At the same time, it is well-recognized that "adequate protection" is not equivalent to "absolute protection." *In re Beker Indus., Inc.*, 58 B.R. 725, 741 (Bankr. S.D.N.Y. 1986) ("Adequate protection, not absolute protection, is the statutory standard."). Further, "[i]n order to encourage reorganization, the courts must be flexible in applying the adequate protection standard" as long as such flexibility does "not operate to the detriment of the secured creditor's interest." *In re Martin*, 761 F.2d at 476.

26.    The Interim Order provides for adequate protection for SHL. As discussed in greater detail in the summary chart of the DIP Financing terms above, these adequate protection provisions include the reaffirmation and stipulation to the Prepetition Debt and Prepetition Lien, the granting of replacement liens, and the payment of amounts allowable under Section 506 of the Bankruptcy Code.

**D.  The Parties have Proceeded in Good Faith**

27.    The terms and conditions of the DIP Financing and the use of Cash Collateral are fair and reasonable and were negotiated by the parties in good faith and at arms' length. Therefore, SHL should be accorded the benefits of section 364(e) of the Bankruptcy Code to the extent any or all of the provisions of the DIP Documents, or any Interim Order or Final Order of this Court pertaining thereto, are hereafter modified, vacated, stayed or terminated by subsequent order of this or any other court.

**E.  Request for Preliminary Hearing**

28.    Pursuant to Bankruptcy Rule 4001(c)(2), a final hearing on a motion to obtain post-petition financing may not be commenced earlier than 14 days after service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize post-petition financing to the extent "necessary to avoid immediate and

14

irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(c)(2). It is essential to the continued operation of the Debtors' business that it be authorized by this Court to obtain post-petition financing and use of Cash Collateral as set forth in the Interim Order pending the final hearing on the Motion. Unless this Motion is approved on an interim basis, the Debtors will be unable to pay its employees and other immediate obligations as set forth in the Budget, which would have a devastating effect on the Debtors' operations, customer base and revenues. Thus, funds are urgently needed to meet all of the Debtors' immediate working capital and other liquidity needs. Absent immediate relief, the Debtors' ability to operate its business in the ordinary course will be immediately and irreparably jeopardized.

29.     The Debtors have been informed that SHL is willing to provide the DIP Loan, subject to the conditions set forth in the Interim Order, including, without limitation, the provisions of the Interim Order assuring that the security interests and liens pursuant to section 364(c) of the Bankruptcy Code and the various claims, superpriority claims, and other protections granted pursuant to the Interim Order will not be affected by any subsequent reversal or modification of the Interim Order, or by any other order that is applicable to the DIP Loan, as provided in section 364(e) of the Bankruptcy Code.

30.     The Debtors submit that SHL has acted in good faith in consenting to and in agreeing to provide the financing, and the reliance of SHL on the assurances referred to above is in good faith. SHL and the Debtors have negotiated at arms' length and in good faith regarding the DIP Financing to fund the continued operations of the Debtors. SHL will not agree to provide the DIP Loan, absent the approval of the terms and conditions set forth in the Interim Order.

31.     Given the impact that the Coronavirus pandemic and the restrictions imposed by states and municipalities on the Debtors' business operations, as well as the uncertainty of the

15

Debtors' future resulting therefrom and the extreme time constraints facing the Debtors, the Debtors' range of realistic financing alternatives is extremely limited if not non-existent. The Debtors submit that the terms and conditions of the DIP Loan, taken as a whole, are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duty; and are supported by reasonably equivalent value and fair consideration.

32.    Accordingly, the Debtors request entry of an Interim Order in substantially the form attached as Exhibit A, together with such amendments and modifications as may be made by Debtors and SHL prior to, at or as a result of the Interim Hearing.

33.    Such interim relief is essential to enable the Debtors to fulfill their existing obligations, as specifically detailed in the Budget. These sums will be required to pay employees and other immediate operating expenses such as rent that are the very minimum necessary for the Debtors to continue as a going concern for the benefit of all of their creditors, employees and stakeholders. Accordingly, the Debtors respectfully request approval of the Motion, pending a final hearing on the Motion, on an emergency interim basis, on the terms and subject to the conditions set forth in the Interim Order and Budget, or on such other terms that the Court may deem appropriate.

**F.  Request for Final Hearing**

34.    Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date that is no longer than 45 days from the Petition Date as date for the Final Hearing.

35.    The Debtors request that they be authorized to serve a copy of the Interim Order, which fixes the time and date for filing objections, by first class mail on the notice parties listed

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

below. The Debtors further request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

### G. Request for Immediate Relief and Waiver of Stay

36.     Pursuant to Bankruptcy Rules 6003(b) and 6004(h), the Debtors seek entry of orders granting the relief requested by this Motion on an interim and final basis and, to the extent it applies, a waiver of any stay of the effectiveness of such orders.

37.     Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting … a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate including a motion to pay all or part of a claim that arose before the filing of the petition." Fed. R. Bankr. P. 6003(b). Therefore, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estate, the Court may authorize the relief prior to the twenty-second day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

### NOTICE

38.     Notice of this Motion has been given to: (a) Counsel for SHL; (b) the Office of the United States Trustee for the Southern District of Florida; and (c) the Debtors' 20 largest general unsecured creditors. In light of the nature of the relief requested, the Debtor submits that no further notice is necessary.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

## NO PRIOR REQUEST

39.     No prior request for the relief sought in this Motion has been made to this or any

other Court in connection with this chapter 11 case.

Dated: September 23, 2020.

s/ Michael S. Budwick
Michael S. Budwick, Esquire
Florida Bar No. 938777
mbudwick@melandbudwick.com
Joshua W. Dobin, Esquire
Florida Bar No. 93696
jdobin@melandbudwick.com
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandbudwick.com
MELAND BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Proposed Attorneys for Debtors*

18

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

                                         Chapter 11

| | |
|---|---|
| IT'SUGAR FL I LLC, | Case No. 20-20259-RAM |
| IT'SUGAR LLC, | Case No. 20-20261-RAM |
| IT'SUGAR ATLANTIC CITY LLC, | Case No. 20-20263-RAM |
| IT'SUGAR FLGC LLC, | Case No. 20-20264-RAM |
| | Jointly Administered |

                      Debtors.

_____/

**INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING FROM SHL HOLDINGS, INC.; AND  (B) TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF _NUNC PRO TUNC_ TO SEPTEMBER 22, 2020**

This matter came before this Court on September 25, 2020 at 1:30 p.m. ("**_Interim Hearing_**") upon the motion ("**_Motion_**") [ECF No. __] of It'Sugar FL 1, LLC, IT'Sugar, LLC, IT'Sugar Atlantic City, LLC and IT'Sugar FLGC, LLC (collectively, "**_IT'Sugar_**" or the "**_Debtors_**") pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code ("**_Bankruptcy Code_**") and Rules 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure ("**_Bankruptcy Rules_**"), seeking entry of interim and final orders: (a) authorizing Debtors

EXHIBIT A

to obtain senior secured postpetition financing, (b) authorizing the Debtors to use Cash Collateral, (c) granting liens and providing superpriority claims with respect to such postpetition financing, (d) approving the form of adequate protection to be provided by the Debtor, (e) modifying the automatic stay to the extent necessary to effectuate the terms of the Orders, (f) scheduling a final hearing to consider entry of the Final Order, and (g) granting related relief in connection with the DIP Financing.[1]

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of September 22, 2020 ("***Petition Date***").

Upon the record made by the Debtors in the Motion and at the Interim Hearing, and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED, ON AN INTERIM BASIS PENDING FINAL HEARING, AND THE COURT FINDS THAT:**

A.      On the Petition Date, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B.      The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.      No Committee has been appointed in these Cases.

D.      Debtors admit, stipulate and agree that:

1.      the Prepetition Loan Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among IT'Sugar, LLC, IT'Sugar Atlantic City, LLC and IT'Sugar FLGC, LLC ("***Prepetition Obligors***") and SHL;

2.      the Prepetition Debt constitutes the legal, valid, and binding obligation of the Prepetition Obligors, enforceable in accordance with the terms of the Prepetition Loan Documents;

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

3.      as of the Filing Date, the Prepetition Obligors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed joint and several secured claim in their respective estates in an amount not less than $6,216,362.00, exclusive of accrued and accruing amounts allowable under section 506(b) of the Bankruptcy Code;

4.      no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination, or other claim, cause of action, or challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

5.      upon the entry of this Order, SHL's interests in the Collateral will be adequately protected; and

6.      Debtors do not have, and hereby release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses, or setoff rights relating to the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against SHL and its respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors, and assigns.

E.      Good cause has been shown for the entry of this Interim Order. The Debtors have an immediate need to obtain the DIP Financing, and for authorization to continue to use Cash Collateral to permit, among other things, the orderly continuation of the operation of its business; the maintenance of business relationships with subcontractors, suppliers, vendors, and customers; the payment of payroll and related employee related expenses; and the payment of rent, other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity made available through the DIP Financing and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors and to the successful reorganization of the Debtors. The proposed DIP Financing is in the best interests of the Debtors, their estates and creditors.

F.      The Debtors are unable to obtain financing on equal or more favorable terms from sources other than SHL. The terms of the DIP Financing have no material impact on the rights of

3

existing lien holders because SHL is the only existing lienholder and consents to the relief granted herein.

G.     SHL has acted in good faith regarding the DIP Financing and the Debtor's continued use of the Collateral, including Cash Collateral, in accordance with the terms hereof. SHL is entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. In light of the good faith of SHL, in accordance with section 364(e) of the Bankruptcy Code, the rights and priorities granted to SHL under this Interim Order and the DIP Documents will not be affected or avoided by any subsequent reversal or modification of this Interim Order or the Final Order. The terms of this Order have been negotiated at arm's length and in good faith.

H.     Under the circumstances of these Cases, this Interim Order is a fair and reasonable response to Debtors' request for SHL's consent to the use of Cash Collateral, and the entry of this Interim Order is in the best interest of Debtors' estates and their creditors.

I.     The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Bankruptcy Rules 2002, 4001(b),(c) and (d), and 9014 and Bankruptcy Code sections 102(1) 362, 363, and 364 and were otherwise sufficient and appropriate under the circumstances, for purposes of this Interim Order.

**WHEREFORE, IT IS ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.     <u>Authorization for the DIP Financing and DIP Documents</u>. Debtors are authorized to enter into and perform all obligations under the DIP Documents. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Debtors, enforceable against the Debtors in accordance with the terms of the DIP Documents and this Interim Order. No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, any claims and causes of action pursuant to sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code or under any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law (each, an "***Avoidance Action***")), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim or counterclaim.

4

2.      <u>Authorization to Use Cash Collateral</u>.  Debtors are authorized to use Cash Collateral through the Termination Date solely (a) in accordance with the terms and provisions of this Interim Order; and (b) to the extent required to pay, when due, those expenses enumerated in the Budget, subject to permitted variances. Each of the following events shall be deemed a "***Cash Collateral Termination Event***":

(a)      the Debtors use Cash Collateral in excess of the amounts set forth in the Budget;

(b)      confirmation of a plan of reorganization other than a plan of reorganization that is reasonably acceptable to SHL (any such plan, an "***Acceptable Plan***") or if the Debtors file, propose, support, or fail to contest in good faith the filing or confirmation of a plan of reorganization that is not an Acceptable Plan;

(c)      a sale of all or substantially all of the assets of the Debtors;

(d)      the Debtors commence any action including the filing of any pleading, against SHL with respect to the Prepetition Loan Documents;

(e)      the occurrence of an Event of Default under the DIP Documents; and

(f)      the date of the Final Hearing, if this Order is modified at the Final Hearing in a manner unacceptable to SHL.

Upon the occurrence of a Cash Collateral Termination Event, SHL may upon five business days' written notice to the Debtors, commence a proceeding in the Court to determine the Debtors' right to any further use of the Cash Collateral, and the Debtors' authorization to use the Cash Collateral shall be deemed automatically terminated on the fifth business day following commencement of such proceeding unless the Court orders otherwise by such time, and no further consent to the use of Cash Collateral shall be implied by any other action, inaction, or acquiescence by SHL ("***Termination Date***").

3.      <u>DIP Superpriority Claims</u>. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the obligations under the DIP Documents shall constitute allowed claims against the Debtors (without the need to file any proof of claim) with priority over any and all administrative expenses,

diminution in value claims and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (collectively the "***DIP Superpriority Claims***"), regardless of whether such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and shall be payable from and have recourse to the Collateral and any proceeds of the Collateral; provided, however, that the DIP Superpriority Claims shall be subordinate to Administrative Expense Carveout, including fees payable to the U.S. Trustee under Section 1930(a) of title 28 of the United States Code. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

4.    <u>DIP Liens</u>. As security for the Debtors' obligations under the DIP Documents, effective and perfected upon the date of entry of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by SHL of, or over, any collateral, SHL is granted, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon the Collateral ("***Priming Liens***"), subject to the Permitted Liens. The DIP Liens shall not be subject or subordinate to or made pari passu with any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code. The Priming Liens shall not be subject to or subordinate to or made pari passu with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board, or court for any liability of the Debtors. The liens granted herein are collectively referred to as the "***DIP Liens***." Notwithstanding anything in this Interim Order, to the contrary, the DIP Liens shall not attach to (a) Avoidance Actions that are not prohibited by the DIP Loan Agreement or their proceeds, or (b) subject to the entry of the

Final Order, any property of the Debtors that is not of the same nature and type as the collateral securing the Prepetition Debt.

5.    <u>Adequate Protection of Interests of SHL</u>. SHL is entitled, pursuant to sections 361, 362, 363(e) and 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of its interests in the Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of its interests in the Collateral (including Cash Collateral) as provided in the Bankruptcy Code.

(a)    <u>Priority of Prepetition Liens/Allowance of SHL's Claim</u>. Subject to the terms of this Interim Order: (1) the Prepetition Liens shall constitute priority liens, subordinate only to the Dip Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of the Prepetition Obligors, enforceable in accordance with the terms of the Prepetition Loan Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (4) the Prepetition Loan Documents are valid and enforceable in all respects; and (5) SHL's claim with respect to the Prepetition Debt shall for all purposes constitute an allowed secured claim within the meaning of Bankruptcy Code section 506 in an amount not less than $6,216,362.00.

(b)    <u>Replacement Liens</u>.  SHL is granted (subordinate to the DIP Liens) first priority, properly perfected, valid and enforceable security interests in postpetition collateral, which are not subject to any claims, counterclaims, defenses, setoff, recoupment, or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Bankruptcy Code, any agreement, or applicable nonbankruptcy law, for the benefit of SHL, in the Collateral ("***Replacement Liens***") as security for payment of the Prepetition Debt. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens, subordinate only to the DIP Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or SHL and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3)

shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the cases. Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to SHL such financing statements, mortgages, instruments, and other documents as SHL may request from time to time in respect of the Replacement Liens of SHL.

(c)    Reaffirmation of Guaranty.  The guaranty set forth in the Prepetition Guaranty and all other Prepetition Loan Documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by SHL pursuant to Bankruptcy Code section 363. Guarantors are and shall remain liable for the guaranteed obligations under the Prepetition Security Agreement.

(d)    Payment of Fees and Expenses.  As additional adequate protection of the interests of SHL in the Collateral, Debtors will timely pay in cash all accrued and unpaid fees and expenses of SHL, within ten (10) days, after receipt by the Debtors of an invoice (which invoices may be redacted to protect privileged, confidential or proprietary information) without the necessity of any formal fee application. To the extent such fees and expenses are otherwise not allowable under 506(b), such payments will be deemed to reduce the Prepetition Debt on a dollar-for-dollar basis. Upon receipt of such invoices, the U.S. Trustee and any committee of unsecured creditors that may be appointed in these Cases shall have ten (10) days to notify the party submitting an invoice for payment of any objection to the reasonableness of such fees and costs. In the absence of such a timely objection, such parties shall be deemed to have irrevocably waived their right to object to such fees and costs.

6.    Perfection of DIP Liens. SHL is authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over assets, or take any other action, in each case, in order to validate and perfect the liens and security interests granted to them hereunder. Without any further consent of

8

any party, SHL is authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable SHL to further validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed, as applicable, as of the Petition Date. A certified copy of this Interim Order may, in the discretion of SHL, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are authorized and directed to accept such certified copy of this Interim Order for filing and recording, as applicable. For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit SHL to take all actions, as applicable, referenced in this Interim Order.

7.      <u>Survival of DIP Liens and Priorities</u>. In the event that any order is entered dismissing the Case under section 1112 of the Bankruptcy Code or otherwise, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Superpriority Claims and DIP Liens, security interests, replacement security interests and administrative claims granted to SHL pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all obligations of the Debtors shall have been paid and satisfied in full (and that such DIP Superpriority Claims, DIP Liens, security interests, replacement security interests and administrative claims, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (i) above. Except as expressly provided in this Interim Order, the DIP Liens, the DIP Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Cases to a case under chapter 7, dismissing the Cases, or by any other act or omission, (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code or (iii) the entry of an order confirming a chapter 11 plan in these Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in these Cases, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims and all other rights and remedies of SHL granted by the provisions of this Interim Order

shall continue in full force and effect until the obligations of the Debtors to SHL are indefeasibly paid in full in cash.

8.    No Surcharge. In the exercise of their business judgment, subject to entry of the Final Order, Debtors (or any Trustee) agree that there shall be no surcharge of the Collateral for any purpose, unless agreed to by SHL. Further, Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to SHL under Bankruptcy Code section 506(c). Therefore, effective upon entry of the Final Order, the Debtors (or any Trustee) shall be deemed to have waived any rights, benefits, or causes of action under Bankruptcy Code section 506(c), or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against SHL or the Collateral.

9.    Stipulations Binding on Successors of Debtors and Third Parties; Challenge Period. Subject to the entry of the Final Order, the Debtors' stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding upon the Debtors and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtors) in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, any committee appointed in this Case and any other person or entity acting on behalf of the Debtors' estates in all circumstances for all purposes; provided, however, that the United States Trustee and any committee appointed in this case shall have sixty (60) days after the entry of this Interim Order ("**Challenge Period**") to file an adversary proceeding or contested matter challenging the amount, validity, perfection, enforceability, priority or extent of SHL's interest in the Collateral or otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Challenge Proceedings**") against SHL, its respective predecessors, successors and assigns, affiliates, subsidiaries, funds, portfolio companies, management companies, and, with respect to each of the foregoing entities, each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives,

principals, Professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (each of the foregoing entities a "***Representative***" and, collectively, the "***Representatives***") in connection with matters related to the Prepetition Loan Documents and the Collateral; provided that any pleadings filed in any Challenge Proceedings shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.

10.     <u>Challenge Proceeding</u>. If no such Challenge Proceeding matter is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest, including, without limitation, any committee of unsecured creditors appointed in these Cases; (b) notwithstanding any reservations of rights contained in this Interim Order, the obligations of the Prepetition Obligors under the Prepetition Loan Documents shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in this Case, and any subsequent chapter 7 case; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Debtors' obligations to SHL shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in this Case or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in this Case, or any other party acting or seeking to act on behalf of the Debtors' estate, whether arising under the Bankruptcy Code or otherwise, against SHL or its Representatives arising out of or relating to the Prepetition Loan Documents shall be deemed forever waived, released and barred. If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on all other persons and entities, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.

11.     <u>No Challenge</u>. Subject to the entry of the Final Order, no borrowings under the DIP Financing may be used, in the Case or any other proceeding of any kind, or in any jurisdiction, to (a) object and/or challenge the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, any amount due under the DIP Documents or the Prepetition Loan Documents, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Prepetition Liens or the liens or claims granted under this Interim Order, the DIP Documents or the Prepetition Loan Documents, including, in each case, without limitation, for lender liability or pursuant to section 105, 502(d), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, (b) investigate, assert or prosecute any claims and defenses or causes of action against the SHL or its respective representatives, (c) prevent, hinder or otherwise delay the SHL's assertion, enforcement or realization against or upon the Cash Collateral or the Collateral in accordance with the DIP Documents, the Prepetition Loan Documents, or this Interim Order, (d) seek to modify any of the rights granted to the SHL, hereunder or under the DIP Documents or the Prepetition Loan Documents without the SHL's prior written consent, (e) attempt to directly or indirectly modify any of the rights granted to SHL, (f) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) in accordance with the DIP Documents.

12.     <u>No Marshaling</u>. Neither SHL nor any of the Collateral shall be subject to the doctrine of marshaling. Without limiting the generality of the foregoing, subject to the entry of the Final Order, no party other than SHL shall be entitled, directly or indirectly, to direct the exercise of rights or remedies or to seek (whether by order of this Court or otherwise) to marshal or otherwise control the enforcement of the DIP Liens, Prepetition Liens or Replacement Liens.

13.     <u>Equities-of-the-Case Waiver</u>. SHL shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against SHL with respect to any proceeds, product, offspring, or profits of any of the Collateral, or otherwise.

14.     <u>No Waiver</u>.  SHL shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the DIP Documents, the Prepetition Loan Documents, or

applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of SHL, as applicable, and directed to Debtors. No failure of SHL to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of SHL thereafter to demand strict compliance and performance therewith, and no delay on the part of SHL in the exercise of any right or remedy under this Order, the DIP Documents, the Prepetition Loan Documents or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by SHL of any of their rights under the DIP Documents, the Prepetition Loan Documents, the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Collateral lack adequate protection within the meaning of Bankruptcy Code sections 362(d) or 363(e) or any other provision thereof; or (2) a claim under Bankruptcy Code section 507(b).

15.     "Responsible Person." By taking any actions pursuant to this Order, SHL shall not: (a) be deemed to be in control of the operations or liquidation of Debtors; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or reorganization of Debtors.

16.     Release.  Upon the earlier of the Termination Date and any release of the DIP Liens and Prepetition Liens, Debtors shall execute and deliver to SHL a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the DIP Documents and Prepetition Loan Documents or any acts or omissions after the Filing Date.

17.     Amendments.  Debtors and SHL may enter into amendments or modifications of the DIP Documents and Prepetition Loan Documents or the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

18.     Proof of Claim.  SHL shall not be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof.

13

19.     <u>Binding Effect</u>.  Except as provided herein, this Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any trustee, except that any trustee shall have the right to terminate this Order after notice and a hearing.  If this Order does not become a final nonappealable order, if the Debtors or a trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to of the other provisions of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order.  All such liens, security interests, claims, and other benefits shall be governed in all respects by the original provisions of this Order, and SHL shall be entitled to all the rights, remedies, privileges, and benefits granted hereto, including the liens and priorities granted herein.  Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

20.     <u>Notice of Final Hearing</u>.  The Final Hearing is scheduled for [_____], 2020, and may be continued from time to time without further notice other than that given in open court.  Debtors are directed to immediately serve a copy of this Order and the proposed Final Order by first class mail, postage prepaid, on counsel for SHL, Debtors' twenty (20) largest unsecured creditors, and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing.  Any objection to the Order must be filed with the Court and received by counsel for the Debtors, SHL, and the United States Trustee no later than seventy-two (72) hours prior to the commencement of the Final Hearing.  Any timely and properly filed and served objection will be heard at the Final Hearing. To participate through CourtSolutions, you must make a reservation in advance no later than 3:00 p.m., one business day before the date of the hearing.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Reservations should be arranged online at https://www.court-solutions.com/. If a party is unable to register online, a reservation may also be made by telephone at (917) 746−7476.

###

**Submitted By:**
Joshua W. Dobin, Esquire
Florida Bar No. 93696
jdobin@melandbudwick.com
MELAND BUDWICK, P.A.
Counsel for Debtors
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone:     (305) 358-6363
Telefax:       (305) 358-1221

**Copies Furnished To:**
Joshua W. Dobin, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.

## EXHIBIT 1

**BUDGET**

**[attached]**

## IT'SUGAR, LLC
### 13 Week Cash Budget

| | Week # 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Sep | Oct | Oct | Oct | Oct | Nov | Nov | Nov | Nov | Dec | Dec | Dec | Dec |
| | Week 5 | Week 1 | Week 2 | Week 3 | Week 4 | Week 1 | Week 2 | Week 3 | Week 4 | Week 1 | Week 2 | Week 3 | Week 4 |
| Week ended | 9/26/20 | 10/3/20 | 10/10/20 | 10/17/20 | 10/24/20 | 10/31/20 | 11/7/20 | 11/14/20 | 11/21/20 | 11/28/20 | 12/5/20 | 12/12/20 | 12/19/20 |
| **Receipts:** | | | | | | | | | | | | | |
| Projected Store Sales | 377,457 | 870,741 | 870,741 | 870,741 | 870,741 | 810,667 | 810,667 | 810,667 | 810,667 | 1,008,831 | 1,008,831 | 1,008,831 | 1,160,156 |
| Projected Wholesale Sales | 19,000 | 17,936 | 17,936 | 17,936 | 17,936 | 27,363 | 27,363 | 27,363 | 27,363 | 8,530 | 8,530 | 8,530 | 9,809 |
| Projected e-commerce & Partnering | 17,120 | 74,575 | 74,575 | 74,575 | 74,575 | 125,949 | 125,949 | 125,949 | 125,949 | 98,546 | 98,546 | 98,546 | 110,185 |
| Projected New Temp Store Sales | | | | | | 66,832 | 66,832 | 66,832 | 66,832 | 76,261 | 76,261 | 76,261 | 87,701 |
| Sales Tax Collected | 18,873 | 43,537 | 43,537 | 43,537 | 43,537 | 40,533 | 40,533 | 40,533 | 40,533 | 50,442 | 50,442 | 50,442 | 58,008 |
| DIP Financing | | 2,000,000 | | | | 2,000,000 | | | | | | | |
| **Total Receipts** | 432,450 | 3,006,789 | 1,006,789 | 1,006,789 | 1,006,789 | 3,071,344 | 1,071,344 | 1,071,344 | 1,071,344 | 1,242,609 | 1,242,609 | 1,242,609 | 1,425,858 |
| **Disbursements:** | | | | | | | | | | | | | |
| Sales Taxes Paid | | | | | (188,728) | | | | (174,148) | | | | (162,133) |
| Inventory Purchases | | (342,529) | (342,529) | (342,529) | (342,529) | (393,618) | (393,618) | (393,618) | (393,618) | (514,113) | (514,113) | (514,113) | (514,113) |
| Store Payroll | | (476,391) | | (476,391) | | (495,656) | | (495,656) | | (495,656) | | (495,656) | |
| Corporate Payroll | | (210,623) | | (210,623) | | (210,623) | | (210,623) | | (210,623) | | (210,623) | |
| Severances | | (12,981) | | (12,981) | | (15,331) | | (7,692) | | (7,692) | | (7,692) | |
| Shared Services Allocation | | | (35,000) | | | | (35,000) | | | | (35,000) | | |
| Store Controllables | | (40,755) | (40,755) | (40,755) | (40,755) | (41,354) | (41,354) | (41,354) | (41,354) | (59,575) | (59,575) | (59,575) | (59,575) |
| Corporate Controllables | | (33,874) | (33,874) | (33,874) | (33,874) | (37,789) | (37,789) | (37,789) | (37,789) | (31,684) | (31,684) | (31,684) | (31,684) |
| Capex Funding - Temp Stores | | (95,000) | (95,000) | (95,000) | (95,000) | (158,525) | (158,525) | (158,525) | (158,525) | (117,049) | (117,049) | | |
| Occupancy[1] | | | | (1,567,727) | | (1,626,058) | | | | | (1,746,900) | | |
| **Subtotal Operating Costs** | - | (1,212,154) | (547,158) | (2,779,881) | (700,887) | (2,978,954) | (666,286) | (1,345,257) | (805,434) | (1,436,393) | (2,504,321) | (1,319,344) | (767,505) |
| **Filing Fees & Expenses:** | | | | | | | | | | | | | |
| Legal - M&B | | | | | | (80,000) | | | | (80,000) | | | |
| US Trustee | | | | (4,750) | | | | | | | | | |
| Financial Advisor - Algon | | | | | | (120,000) | | | | (120,000) | | | |
| Creditor's Committee Counsel[2] | | | | | | | | | | (16,000) | | | |
| **Subtotal Filing Fees** | - | - | - | (4,750) | - | (200,000) | - | - | - | (216,000) | - | - | - |
| **Total Disbursements** | - | (1,212,154) | (547,158) | (2,784,630) | (700,887) | (3,178,954) | (666,286) | (1,345,257) | (805,434) | (1,652,393) | (2,504,321) | (1,319,344) | (767,505) |
| **Operating Cash Recap** | | | | | | | | | | | | | |
| Beginning Cash Balance | 500,000 | 932,450 | 2,727,085 | 3,186,716 | 1,408,874 | 1,714,776 | 1,607,166 | 2,012,224 | 1,738,310 | 2,004,220 | 1,594,437 | 332,725 | 255,991 |
| Change in Cash | 432,450 | 1,794,635 | 459,631 | (1,777,842) | 305,902 | (107,611) | 405,058 | (273,914) | 265,910 | (409,783) | (1,261,712) | (76,734) | 658,353 |
| **Cash Balance - End of Week** | 932,450 | 2,727,085 | 3,186,716 | 1,408,874 | 1,714,776 | 1,607,166 | 2,012,224 | 1,738,310 | 2,004,220 | 1,594,437 | 332,725 | 255,991 | 914,344 |

(1) Occupancy payments are subject to rejections and modifications of leases.
(2) To be determined, if applicable.

EXHIBIT 1

## LOAN AND SECURITY AGREEMENT

LOAN AND SECURITY AGREEMENT (this "Amendment"), dated as of September __, 2020, by and among IT'SUGAR LLC, a Delaware limited liability company ("IT'Sugar"), IT'SUGAR ATLANTIC CITY LLC, a Delaware limited liability company ("Atlantic City"), IT'SUGAR FLGC LLC, a Florida limited liability company ("FLGC," and collectively with IT'Sugar and Atlantic City, the "Prepetition Obligors"), IT'SUGAR FL I, LLC, a Delaware limited liability company ("FLI" and collectively with the Prepetition Obligors, the "Debtors") and SHL HOLDINGS, INC., a Florida corporation ("SHL").

R E C I T A L S:

A.      It'Sugar was indebted to Bank of America N.A. ("Bank") as evidenced by that certain Credit Agreement dated August 24, 2018, and First Amendment thereto dated February 28, 2020, by and between It'Sugar and Bank (as so amended, the "Prepetition Credit Agreement"), evidencing a revolving line of credit in the principal amount of $4,000,000.00 (the "Prepetition Line of Credit"), which could be increased to $6,000,000.00 upon the request of It'Sugar.

B.      It'Sugar's obligations under the Prepetition Line of Credit were guaranteed by Atlantic City and FLGC pursuant to the terms of that certain Continuing and Unconditional Guaranty dated August 24, 2018, made by Atlantic City and FLGC in favor of the Bank (the "Guaranty").

C.      The Prepetition Obligors' respective obligations under the Credit Agreement and Guaranty are secured by, among other things, that certain Security Agreement dated August 24, 2018, by and among the Prepetition Obligors and the Bank (the "Prepetition Security Agreement"), granting the Bank a security interest in the personal property assets of the Prepetition Obligors described therein. The Bank's security interest was perfected pursuant to UCC-1 Financing Statements filed (i) with respect to It'Sugar and Atlantic City, with the Delaware Department of State on August 24, 2018 under filing #20185865726, and (ii) with respect to FLGC, with the Florida Secured Transactions Registry on August 24, 2018 under filing #201806304765 (the "UCC-1s").

D.      The Prepetition Credit Agreement, the Guaranty, the Prepetition Security Agreement, the UCC-1s and all other written documents executed in connection with the Prepetition Line of Credit, together with any and all written renewals, modifications and/or extensions thereof are collectively referred to as the "Prepetition Loan Documents".

E.      The Bank's rights under the Prepetition Loan Documents were assigned without recourse to the SHL pursuant to a Loan Sale and Assignment Agreement, dated April 7, 2020, and the other assignment documents and instruments executed in connection with the Assignment, and by reason thereof SHL is now the holder of such Prepetition Loan Documents and has all the rights and obligations of the Bank thereunder.

F.      The Prepetition Credit Agreement has been amended from time to time, including an increase of the principal balance advanced on the Prepetition Line of Credit to $6,000,000.00.

EXHIBIT B

G.      As of the Petition Date, the Prepetition Obligors are liable for payment of the Prepetition Debt (defined below) in an amount not less than $6,216,362.00.

H.      On September 22, 2020, each of the Prepetition Obligors, along with the their affiliate IT'Sugar FL I, LLC ("FL I," collectively with the Prepetition Obligors, the "Debtors") filed petitions for relief under Chapter 11of the Bankruptcy Code in the United States Bankruptcy Court, Southern District of Florida (the "Bankruptcy Court") styled as follows: (1) In re IT'Sugar FI I, LLC, Case No. 20-20259-RAM (2) IT'Sugar, LLC, Case No. 20-20261-RAM, (3) IT'Sugar Atlantic City, LLC, Case No. 20-20263-RAM and (4) IT'Sugar FLGC, LLC, Case No. 20-20264-RAM (collectively, the "Bankruptcy Cases").

I.      The Debtors have requested that SHL extend financing to the Debtors in connection with the Bankruptcy Cases to facilitate its reorganization.

J.      SHL is willing to make loans and extend credit to the Debtors, subject to the terms and conditions set out herein and subject to the terms and conditions set forth in the Financing Order and any other orders of the Bankruptcy Court approving the proposed financing by SHL.

K.      The parties desire to enter into this Agreement and to memorialize their agreements with respect to the matters set forth.

<u>A G R E E M E N T</u>:

FOR AND IN CONSIDERATION of the mutual covenants herein and good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors and SHL agree as follows:

1.      <u>Recitals</u>.  The foregoing recitals are confirmed by the parties as true and correct and are incorporated herein by reference. The recitals are a substantive part of this Agreement. Specifically, the Debtors acknowledge the Prepetition Debt.

2.      Definitions. Unless the context otherwise requires, the following terms when used in this Agreement will have the meanings set forth below:

"Administrative Expense Advance" means the portion of the DIP Facility advance for the payment of (i) fees and expenses incurred by professionals retained by Debtors and the Committee (if any), all up to the amount set forth in the Budget; (ii) fees due to the United States Trustee pursuant to 28 U.S.C. Section 1930(a)(6); and (iii) fees due the Clerk of the Court.

"Administrative Expense Carve Out" means the carve out from SHL's super-priority administrative expense claim in order to allow the Administrative Expense Advance to be used as set forth in the Budget.

"Bankruptcy Code" means Title 11 of the United States Code entitled "Bankruptcy," as now and hereafter in effect, or any successor statute.

"Budget" means Debtors' budget attached as "**Exhibit A**".

"Business Day" means any day excluding Saturday, Sunday, and any day which is a legal holiday under the laws of the State of Florida or is a day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"Collateral" means the following property now owned or hereafter acquired by the Debtors:

      (a) All accounts, and all chattel paper, instruments, deposit accounts, letter of credit rights, and general intangibles related thereto; and all returned or repossessed goods which, on sale or lease, resulted in an account.

      (b) All inventory.

      (c) All equipment and fixtures now owned or hereafter acquired by the Debtors.

      (d) All of the Debtors' deposit accounts wherever located. The Collateral shall include any renewals or rollovers of the deposit accounts, any successor accounts, and any general intangibles and choses in action arising therefrom or related thereto.

      (e) All instruments, chattel paper, documents, certificates of deposit, securities and investment property of every type.

      (f) All general intangibles. The Collateral shall include all good will connected with or symbolized by any of such general intangibles.

      (g) All negotiable and nonnegotiable documents of title covering any Collateral.

      (h) All accessions, attachments and other additions to the Collateral, and all tools, parts and equipment used in connection with the Collateral.

      (i) All substitutes or replacements for any Collateral, all cash or non-cash proceeds (including insurance proceeds), products, rents and profits of the Collateral, and all income, benefits and property receivable on account of the Collateral, and all supporting obligations covering any Collateral.

      (j) All books, data and records pertaining to any Collateral, whether in the form of a writing, photograph, microfilm or electronic media, including but not limited to any computer readable memory and any computer software necessary to process such memory.

"Committee" means any creditors or equity security holders committee appointed in any Chapter 11 case by the U.S. Trustee.

"Debt" means, as of any applicable date of determination and as to any Person, all items of indebtedness, obligation, or liability of such Person, whether matured or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, that should be classified and presented as a liability on a balance sheet prepared in accordance with GAAP, including

without limitation any billings in excess of costs and estimated earnings on Work that has not been completed.

"Event of Default" means any one or more of the following occurring after the date of this Agreement that is determined by SHL to constitute an Event of Default on or after its occurrence:

(a) Debtors have failed or refused to comply with any provisions of the Financing Order or have failed or refused to perform any obligation under this Agreement; or

(b) the occurrence of a default under any document relating to any Debt of Debtors; or the foreclosure or notice of foreclosure by any lender or holder of any Debt of Debtors on any collateral that secures any Debt of Debtors; or

(c) Debtors allow a judgment creditor to obtain possession of any of the Collateral by any means, including, but without limitation, levy, distraint, replevin, or self-help; or

(d) if Debtors violate, breach, or fail to adhere to any of the terms, conditions, or covenants of any of the Loan Documents or the Prepetition Loan Documents; or

(e) if the Bankruptcy Cases are dismissed, suspended, or converted to cases under Chapter 7 of the Bankruptcy Code or a trustee will be appointed in the Bankruptcy Cases; or an application will be filed by Debtors for the approval of, or there will arise, any other claim not contemplated by this Agreement having priority senior to or pari passu with the claims of SHL under this Agreement or any other claim having priority over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code; or

(f) if the Bankruptcy Court enters an order (granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to any holder (other than SHL) of any security interest in the Collateral; or

(g) any Person (including any Committee) will successfully prosecute any action, suit, or other proceeding or contested matter challenging the validity, perfection, or priority of any Liens of SHL, or the validity or enforceable of any of the Loan Documents or the Prepetition Loan Documents, or asserting any avoidance claims against SHL or seeking to recover any monetary damages from SHL; or

(h) the determination of Debtors, whether by vote of its managers, members, or otherwise, to suspend the operation of Debtors' business in the ordinary course, liquidate all or substantially all of Debtors' assets, or the filing of a motion or other application in the Bankruptcy Cases, seeking authority to do any of the foregoing; and

(i) this Agreement or any related document will be terminated, revoked, or declared void or unenforceable or challenged by Debtors.

Notwithstanding anything in the Prepetition Loan Documents to the contrary, no Event of Default will be deemed to have occurred as a result of the filing of the Bankruptcy Cases.

"Financing Order" means an interim order and/or a financing order that is entered by the Bankruptcy Court, following proper notice and a hearing thereon, which is in all respects satisfactory to SHL and which, among other things, authorizes the incurrence by Debtors of post-petition secured and super administrative priority Debt as contemplated by this Agreement and affords adequate protection of Liens in favor of SHL.

"GAAP" means generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board.

"Laws" means all ordinances, statutes, rules, regulations, orders, injunctions, writs, or decrees of any government or political subdivision or agency thereof, or any court or similar entity established by any thereof.

"LIBOR Daily Floating Rate" is a fluctuating rate of interest which can change on each Banking Day. The rate will be adjusted on each Banking Day to equal the London Interbank Offered Rate (or a comparable or successor rate which is approved by SHL) for U.S. Dollar deposits for delivery on the date in question for a one month term beginning on that date. SHL will use the London Interbank Offered Rate as published by Bloomberg (or other commercially available source providing quotations of such rate as selected by the SHL from time to time) as determined at approximately 11:00 a.m. London time two (2) London Banking Days prior to the date in question, as adjusted from time to time in the SHL's sole discretion for reserve requirements, deposit insurance assessment rates and other regulatory costs. If such rate is not available at such time for any reason, then the rate will be determined by such alternate method as reasonably selected by SHL. A "Banking Day" is a day on which banks in London are open for business and dealing in offshore dollars. If at any time the LIBOR Daily Floating Rate is less than zero, such rate shall be deemed to be zero for the purposes of this Agreement.

"Lien" means any mortgage, security interest, lien, pledge, charge, proxy, voting trust or arrangement, encumbrance, lease, sublease, license, or other rights of use by another or other interest of any character whatsoever.

"Loan Documents" means this Agreement, the promissory note, and any other instruments, agreements or other documents entered into in connection herewith

"Material Adverse Effect" means, relative to any occurrence of whatever nature (including the adverse determination in any litigation, arbitration, or governmental investigation or proceeding), (i) a material adverse effect on the financial condition, business, or business operations of Debtors taken as a whole, or (ii) a material impairment of the ability of Debtors to satisfy its

obligations to SHL under the Loan Documents or the Prepetition Loan Documents, or (iii) a material adverse impact on SHL's security interest in the Collateral.

"Obligations" means and includes the punctual payment and performance of parties' obligations under this Agreement and the other Loan Documents, and all loans, advances (including, without limitation, interest payments to prior secured parties, mortgagees, or lienors, or for Taxes, levies, insurance, rent, repairs to, or maintenance or storage of any of the Collateral (provided, however, nothing herein will be construed as a requirement or commitment that SHL will make any advances).

"Permitted Liens" means: (a) Liens of governmental agencies for taxes, assessments, or governmental charges not yet past due or that are being contested in good faith by appropriate proceedings and for which adequate reserves have been established in accordance with GAAP; (b) inchoate non perfected mechanics', workmen's, and repairmen's Liens or other like Liens arising by operation of law in the ordinary course of business of Debtor and not past due unless contested in good faith by appropriate proceedings; and (c) Liens on individual specific pieces of equipment that are evidenced by UCC financing statements validly perfected prior to the Petition Date.

"Person" means any entity, whether an individual, trustee, corporation, partner, joint stock company, unincorporated organization, business association or firm, joint venture, a government or any agent or instrumentality or political subdivision thereof.

"Petition Date" means September 22, 2020 (the date on which Debtors filed for bankruptcy pursuant to the Bankruptcy Code).

"Prepetition Debt" means (a) All indebtedness or obligations under the Prepetition Loan Documents as of the Petition Date, including all "Indebtedness" (as defined in the Prepetition Security Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Loan Documents, plus (b) all amounts allowable under Section 506(b) of the Bankruptcy Code.

"Prepetition Liens" means SHL's asserted security interests in the Collateral under the Prepetition Loan Documents.

"Proceeds" means whatever is receivable or received when Collateral or proceeds are sold, collected, exchanged, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, all rights to payment, including returned or rebate of premiums, with respect to any insurance relating thereto.

"Records" means correspondence, memoranda, tapes, books, discs, paper, magnetic storage, and other documents or information of any type, whether expressed in ordinary or machine language.

"Replacement Liens" means SHL's Liens in the Collateral granted pursuant to the Financing Order.

"Tax" means any present or future tax, levy, impost, duty, charge, fee, deduction, or withholding of any nature and whatever called, by whomsoever, on whomsoever and wherever imposed, levied, collected, withheld, or assessed.

"UCC" means the Uniform Commercial Code as in effect on the date hereof in the State of Florida as it may be amended from time-to-time; provided that if by reason of mandatory provisions of law, the perfection or the effect of perfection or non-perfection or priority of a security interest in any Collateral is governed by any state other than Florida, "UCC" means the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such perfection or effect of perfection or non-perfection.

3.    <u>DIP Facility</u>. Subject to the terms and conditions of this Agreement and the Financing Order (including SHL's right to cease making loans to the Debtors), and subject to the satisfaction of the conditions precedent contained in this Agreement and the Financing Order, SHL agrees to make loans and advances (each, an "Advance" and collectively, the "<u>Advances</u>") to or on behalf of Debtors in the aggregate principal amount of four million dollars ($4,000,000.00) to the extent required to pay, when due, those expenses enumerated in the Budget. Debtors will execute a promissory note to evidence the advances and loans to be made under this Agreement. Said loans and advances will be repaid to SHL as set forth in this Agreement and in the promissory note. So long as there exists no Event of Default and subject to the terms of this Agreement the Advances shall be made to the Debtors, as appropriate, in the amounts and in accordance with the schedule set forth in the Budget. Interest shall accrue on the outstanding principal amount of each Advance at a rate per annum equal to LIBOR Daily Floating Rate plus one and one-half percent (1.50%).  Upon the occurrence of any Event of Default, interest on all amounts not paid when due shall accrue and be payable at a rate per annum equal to the highest rate permitted by applicable law. Any imposition of default interest shall be made retroactive to the date of the occurrence of the applicable Event of Default. All interest on the Advances will be computed on the basis of the actual number of days elapsed over a 360-day year.

4.    <u>Superpriority Administrative Expense Claim</u>. Advances occurring from and after the Petition Date will constitute a super priority administrative expense in accordance with Sections 507(a)(1) and 503(b) of the Bankruptcy Code, which will have priority and payment over all other administrative expenses and unsecured claims of any kind or nature, whether now or hereafter arising including all administrative expenses of the kind specified in or arising or ordered under Sections 105, 326, 328, 503(b), 506(e), 507 (b), 546(c), and 1114 of the Bankruptcy Code. Notwithstanding the foregoing, the super priority administrative expense claims of SHL will be subordinate to the Administrative Expense Carve Out. Debtors will not incur, create, assume, suffer to exist or permit or make any application or motion for any other super priority claim or Lien which is pari passu with or senior to the claims of SHL under the Loan Documents, other than as expressly contemplated and permitted under this Agreement.

5.    <u>Security Interest</u>. As security for the payment and performance of all Obligations, now existing or hereafter incurred, matured or unmatured, direct or contingent, including all extensions and renewals thereof, Debtors, jointly and severally, hereby assign to SHL and grants to SHL a Lien upon and security interest in the Collateral. The Collateral, together with all of Debtor's other property of any kind, both real and personal, held by, assigned to, mortgaged to,

or conveyed in favor of SHL, whether prior to or after the Petition Date, will stand as one general, continuing collateral security for all Obligations and may be retained by SHL until all Obligations have been paid and satisfied in full.

The foregoing Liens will be first and prior Liens except for any Permitted Liens which have priority or would have priority by the operation of Law. SHL reserves the right to challenge the priority of any Lien of any other Person. For the avoidance of doubt, SHL's Prepetition Liens and Replacement Liens will be subordinate to the foregoing Liens.

At the request of SHL, Debtors will execute and deliver to SHL documentation satisfactory to SHL evidencing the security interests and Liens and providing for the perfection of such Liens. The automatic stay provisions of Section 362 of the Bankruptcy Code are modified to permit the execution, delivery, and filing of such documentation; provided, however, that no such documentation will be required as a condition to the validity, priority, or perfection of Liens created pursuant to this Agreement, which Liens will be deemed valid and properly perfected upon entry of the Financing Order approving this Agreement. Each Debtor irrevocably makes, constitutes, and appoints SHL (and all other Persons designated by SHL for the purpose) as Debtors' true and lawful agent and attorney in fact to sign Debtors' names on any such agreements, instruments, and documents referred to in this section and to deliver such agreements, instruments, and documents to such Persons as SHL in its sole and absolute discretion may elect. Debtors agree to pay on demand any recording tax, filing fees, or other costs incurred by SHL in connection with recording or filing any documentation requested in this section, provided, that, SHL advances the amount of such recording or filing fee.

6.    <u>Existence and Authority; Enforceability of this Agreement</u>. Debtors are a registered entity duly organized, validly existing, and in good standing under the laws of the State of Delaware and the State of Florida, as applicable. Debtors will maintain their limited liability existence or registered status (in good standing where appropriate under state law) and remain or become duly qualified or licensed (and in good standing where appropriate under state law) as a foreign limited liability company in each jurisdiction in which the conduct of its businesses requires such qualification or license except where the failure to be so qualified could not reasonably be expected to have a Material Adverse Effect.

The execution and performance of this Agreement will not violate the governing document provisions of the Debtors, or violate any laws or result in a default under any contract, agreement, or instrument to which Debtors are a party or by which Debtors or their property is bound, except for such violations or defaults that would not have a Material Adverse Effect. Debtors have the power and authority to enter into and perform this Agreement and the Loan Documents, and to incur the obligations herein and therein provided for, and have taken all corporate or other action necessary to authorize the execution, delivery, and performance of this Agreement and the Loan Documents. Upon the execution of this Agreement and the other Loan Documents by Debtors, this Agreement and the Loan Documents will be valid and binding against Debtors, enforceable against such parties in accordance with the terms thereof.

7.    <u>Termination of Automatic Stay</u>. Any Order entered approving this Agreement will provide that the automatic stay, including specifically, but not limited to, the stay imposed by Section 362 of the Bankruptcy Code, is immediately and absolutely lifted and terminated

without the need of further order by Court as to the exercise by SHL of any and all of its rights under the terms of this Agreement.

8. <u>Books and Records</u>. Debtors will permit SHL at all times during regular business hours to free access, with twenty four (24) hours advance notice, to the Records and similar items of Debtors including, without limitation, its Records, computer software, and other computer stored information, and all plans, specifications, drawings, surveys, and related materials, and computer software, licenses, copyrights, patents, and other intellectual property, for the purpose of using, examining, copying, or reproducing same for the purpose of examining, copying, or reproducing the same. Debtors authorize and requests any and all depositories in which funds of Debtors may be deposited to furnish to SHL statements of account and any other documents reflecting receipts and disbursements and any Person doing business with Debtors is authorized to furnish any information requested by SHL concerning any transaction. SHL may furnish copies of any and all statements, agreements, and financial statements and any information which it now has or may obtain concerning Indemnitors to other Persons or companies during the investigation of claims that may be, or have been, asserted against SHL.

9. <u>Acceleration; Deposit of Collateral; Remedies</u>. Upon the occurrence of any Event of Default, SHL may, at its option, immediately declare all Obligations to be immediately due and payable, whereupon the same will become forthwith due and payable, without presentment, demand, protest, or any notice of any kind.

Upon the occurrence of any Event of Default, all Collateral held by or assigned to SHL by Debtors may be used by SHL at any time in payment of any Obligations; SHL will have, in addition to the rights and remedies given by the Loan Documents, all those allowed by all applicable Laws, including, but without limitation, the UCC as enacted in any jurisdiction in which any Collateral may be located. After deducting from the Proceeds of sale or other disposition of the Collateral all expenses, including all expenses for legal services (including allocated costs of in-house counsel), such Proceeds will be applied toward the satisfaction of the Obligations. Any remainder of the Proceeds after satisfaction in full of the Obligations will be distributed as required by applicable Laws.

Notice of any sale or other disposition will be given to Debtors at least ten (10) days before the time of any intended public sale or of the time after which any intended private sale or other disposition of the Collateral is to be made which Debtors hereby agree will be reasonable notice of such sale or other disposition. At any such sale, the Collateral, or portions thereof, to be sold may be sold in one lot as an entirety or in separate lots, as SHL may, in its sole and absolute discretion, determine. Debtors agree to assemble, or to cause to be assembled, at their own expense, the Collateral under its control or ownership at such place or places as SHL will designate. At any such sale or other disposition, SHL may to the extent permissible under applicable Laws, purchase the whole or any part of the Collateral, free from any right of redemption on the part of the Debtors, which right is hereby expressly waived and released.

SHL will not be liable and Debtors agree to make no claim against SHL for decrease in value lost to any Collateral, however caused, other than for willful reckless misconduct or gross negligence. SHL will not be obligated to make any sale of the Collateral if it will determine not to do so, regardless of the fact that notice of sale of the Collateral may have been given. SHL

may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned. In case sale of all or any part of the Collateral is made on credit or for future delivery, the Collateral so sold may be retained by SHL until the sale price is paid by the purchaser or purchasers thereof, but SHL will not incur any liability in case any such purchaser or purchasers will fail to take up and pay for the Collateral so sold and, in case of any such failure, such Collateral may be sold again upon like notice.

As an alternative to exercising the power of sale herein conferred, SHL may proceed by a suit or suits at law or in equity to foreclose this Agreement and to sell the Collateral, or any portion thereof, pursuant to a judgment or decree of a court or courts of competent jurisdiction. The costs, including reasonable legal fees of SHL, will be added to any outstanding indebtedness and paid by Debtors.

Without limiting the generality of any of the rights and remedies conferred upon SHL, SHL may upon the occurrence of an Event of Default, to the full extent permitted by applicable Laws (including without limitation seeking relief from the automatic stay, if applicable):

(a) Enter upon the premises of Debtors, exclude therefrom Debtors, and take immediate possession of the Collateral, either personally or by means of a receiver appointed by a court of competent jurisdiction, using all necessary and lawful self-help to do so;

(b) at SHL's option, use, operate, manage, and control the Collateral in any lawful manner;

(c) collect and receive all rents, income, revenue, earnings, issues, and profits therefrom; and

(d) maintain, repair, renovate, alter, or remove the Collateral as SHL may determine in its discretion.

10.    <u>Authority of SHL to Elect Remedies</u>. Each right, remedy, and power of SHL provided in this Agreement, the Loan Documents, or by law, equity, or statute will be cumulative, and the exercise by SHL of any right, remedy, or power will not preclude SHL's simultaneous or subsequent exercise of any or all other rights, powers, or remedies. The failure or delay by SHL to exercise any right, power, or remedy will not waive any right, power, or remedy. Except as required herein, no notice or demand upon SHL by Debtors will limit or impair SHL's right to take any action under this Agreement or to exercise any right, power, or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

11.    <u>Condition Precedent to Effectiveness of this Agreement</u>. The effectiveness of this Agreement is subject to the condition precedent that SHL will have received on or before the day hereof each of the following, in form and substance satisfactory to SHL and its counsel:

(a) This Agreement and each of the other Loan Documents duly executed by Debtors.

(b) no orders will have been entered by the Bankruptcy Court which SHL reasonably determines are likely to have a Material Adverse Effect;

(c) all of the "first day orders" presented to the Bankruptcy Court at or about the time of the commencement of the Bankruptcy Cases will be satisfactory in form and substance to SHL; and

(d) receipt of a copy of the duly executed Financing Order (an interim order to be followed in due course by a final order) entered by the Bankruptcy Court, in form acceptable to SHL;without limiting the generality of the foregoing, the Financing Order will (i) ratify the Prepetition Obligors' obligations under the Prepetition Loan Documents; (ii) authorize Debtors to enter into this Agreement, and all other documents contemplated by this Agreement; (iii) confirms the waivers and releases contained *infra*.; and (iv) provide SHL adequate protection.

SHL may waive compliance with any of the foregoing, with or without notice to Debtors.

12.   <u>Notices</u>. Any notice, request, demand, or other communications required, permitted or otherwise contemplated by this Agreement will be in writing and either delivered personally, sent by regularly scheduled overnight air courier service, or postage prepaid certified United States mail, return receipt requested, to the following addresses:

SHL:                        SHL Holdings, Inc.
                            401 East Las Olas Boulevard, Suite 800
                            Fort Lauderdale, Florida 33301

With a copy to:            Stearns Weaver Miller
                            150 West Flagler Street, Suite 2200
                            Miami, Florida 33130
                            Attn.: Eric J. Silver, Esq.

Debtors:                    It'Sugar LLC

With a copy to:            Meland Budwick, P.A.
                            3200 Southeast Financial Center
                            200 South Biscayne Boulevard
                            Miami, Florida 33131
                            Attn: Michael S. Budwick, Esq.

13.   <u>Reaffirmation of Validity and Enforceability of the Prepetition Loan Documents</u>. Prepetition Obligors reaffirm each for themselves that the Prepetition Loan Documents are valid and binding obligations of the Prepetition Obligors, that all terms, covenants, conditions, representations, warranties and agreements contained in the Prepetition Loan Documents are hereby ratified and confirmed in all respects. Debtors acknowledge and agree that there are no claims, offsets, or other actions against SHL, and that there are no set-offs, counterclaims or

defenses to the payment of the Prepetition Debt. Atlantic City and FLGC reaffirm their obligations under the Guaranty.

14. <u>Waiver and Release</u>. To the maximum extent permitted by applicable Laws, Debtors:

(a) Waive: (i) protest of all commercial paper at any time held by SHL on which Debtors are in any way liable; and (ii) notice and opportunity to be heard before exercise by SHL of the remedies of self-help, setoff, or of other summary procedures permitted by any applicable Laws or by any agreement with Debtors, and, except where required hereby or by any applicable Laws, notice of any other action taken by SHL;

(b) release SHL, its officers, directors, attorneys, employees, and agents from all claims for loss or damage caused by any act or omission on the part of any of them, except for their willful misconduct or gross negligence;

(c) waive any defense arising by reason of, and agree that the rights of SHL and the Obligations will be absolute and unconditional irrespective of, (i) any disability or other defense of any other Person; (ii) the unenforceability or cessation from any cause whatsoever, other than the indefeasible payment in full, of all Obligations; (iii) the application by Debtors of the Proceeds of any Collateral for purposes other than the purposes represented by Debtors to SHL; (iv) any modification of the Obligations in any form whatsoever, including without limitation the renewal, extension, acceleration, or other changes in the time for payment, or other change in the terms of the Obligations or any part thereof; and (vi) any other circumstance that might otherwise constitute a defense available to, or a discharge of, any other Person in respect to the Obligations;

(d) waive all claims, direct or indirect, absolute or contingent, against any other borrower, guarantor, endorser, or surety arising from or relating to this Agreement, any of the other Loan Documents, and/or the Obligations. Without limiting the foregoing, each Debtor waives all rights of reimbursement, exoneration, indemnification, and/or contribution from any other borrower, guarantor, endorser, or surety under or relating to this Agreement, any of the other Loan Documents, and or the Obligations. SHL may proceed against any Collateral securing the Obligations and against parties liable therefor in such order as it may elect, and neither Debtors nor, to the extent allowable by law, any creditor of Debtors will be entitled to require SHL to marshal assets. The benefit of any rule of law or equity to the contrary is hereby expressly waived; and

(e) release, waive, discharge, covenant not to sue, acquit, satisfy and forever discharge SHL, its officers, directors, employees, agents and its affiliates and assigns from any and all liability, claims, counterclaims, defenses, actions, causes of action, suits, controversies, agreements, promises and demands whatsoever in law or in equity which the Debtors ever had, now have or may have, or which any personal representative, successor, heir or assign of obligor's hereafter can, shall or may have against lender and yellow leaf, their officers, directors, employees, agents, and their affiliates and assigns, for, upon or by reason of any matter, cause or thing whatsoever including all actions of SHL taken or to be taken in connection with the Prepetition Loan Documents and the

Loan Documents. In addition to, and without limiting the generality of the foregoing, and in consideration of SHL's execution of this Agreement, the Debtors each covenant with and warrant unto SHL, and its affiliates and assigns, that there exist no claims, counterclaims, defenses, objections, offsets or claims of offsets against SHL or the obligation of the Debtors to pay the Prepetition Debt and the DIP Loan to SHL when and as they become due and payable..

15.   <u>Further Assurances</u>. The parties will cooperate reasonably with each other and with their respective representatives in connection with any steps required to be taken as part of their respective obligations under this Agreement, and the parties agree (i) to furnish upon request to each other such further information, (ii) to execute and deliver to each other such other documents, and (iii) to do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of this Agreement and the transactions contemplated hereby

16.   <u>Governing Law and Jurisdiction</u>. This Agreement will be deemed to be a contract under the laws of the State of Florida and for all purposes will be governed by and construed and enforced in accordance with the laws of such State. Unless the jurisdictional prerequisites are not met, the parties hereto irrevocably consent to the exclusive jurisdiction of the United States District Courts of Florida and of all state courts without waiver of right or removal, for the purpose of any litigation concerning this Agreement. No party hereto will object to or contest Florida as the proper venue for any action or proceeding to enforce terms hereof. Notwithstanding the foregoing, all disputes regarding this Agreement involving Debtors arising during the pendency of the Bankruptcy Cases will be heard and determined by the Bankruptcy Court.

17.   <u>Jury Waiver</u>. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW WHICH CANNOT BE WAIVED, EACH PARTY HERETO HEREBY WAIVES, AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT, OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS AGREEMENT, ANY OTHER OF THE LOAN DOCUMENTS, OR THE SUBJECT MATTER HEREOF, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR TORT OR OTHERWISE. EACH PARTY HERETO ACKNOWLEDGES THAT IT HAS BEEN INFORMED THAT THE PROVISIONS OF THIS SECTION CONSTITUTE A MATERIAL INDUCEMENT UPON WHICH THE OTHER PARTIES HAVE RELIED, ARE RELYING, AND WILL RELY IN ENTERING INTO THIS AGREEMENT. THE PARTIES HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT A WRITTEN EVIDENCE OF THE CONSENT OF SUCH OTHER PARTY TO THE WAIVER OF ITS RIGHTS TO TRIAL BY JURY.

18.   <u>Binding Effect, Assignment, Amendment and Negotiation</u>. This Agreement will inure to the benefit of, and will be binding upon, the respective successors and permitted assigns of the parties hereto. Debtors have no right to assign any of their rights or obligations hereunder without the prior written consent of SHL. This Agreement may be amended only by a writing

signed on behalf of each party. This Agreement has been negotiated by the parties and each party has had the benefit of counsel. This Agreement will not be construed against any party.

19.    <u>Severability</u>. The provisions of this Agreement are intended to be severable. If any provision of this Agreement is held invalid or unenforceable in whole or in part in any jurisdiction such provision will, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or the remaining provisions of this Agreement in any jurisdiction.

20.    <u>Survival</u>. All of the representations and warranties set forth in this Agreement, the other Loan Documents will survive until all Obligations are paid and satisfied in full.

21.    <u>Counterparts</u>. This Agreement may be executed in counterparts (including by means of facsimile or pdf signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together will constitute one and the same agreement. This Agreement and each other agreement or instrument entered into in connection herewith or therewith or contemplated hereby or thereby, and any amendments hereto or thereto, to the extent signed and delivered by means of a facsimile machine or other electronic transmission (including .pdf files), will be treated in all manner and respects and for all purposes as an original agreement or instrument and will be considered to have the same binding legal effect as if it were to the original signed version thereof delivered in person. At the request of any party hereto or to any such agreement or instrument, each other party hereto or thereto will re-execute original forms thereof and deliver them to all other parties, except that the failure of any party to comply with such a request will not render this Agreement invalid or unenforceable. No party hereto or to any such agreement or instrument will raise the use of a facsimile machine or other electronic transmission to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or other electronic transmission as a defense to the formation or enforceability of a contract and each party forever waives any such defense.

22.    <u>Section Headings</u>. The section headings in this Agreement are for convenience only and do not limit, define, or construe the contents of the sections.

23.    <u>Seal</u>. This Agreement is intended to take effect as an instrument under seal.

24.    <u>No Contrary Action</u>. Debtors will not apply to the Bankruptcy Court for the authority to take any action that is prohibited by the terms of this Agreement or any of the other Loan Documents or refrain from taking any action that is required to be taken by the terms of this Agreement or any of the other Loan Documents. The parties acknowledge that the foregoing will not preclude the entry of any order of the Bankruptcy Court approving or authorizing an amendment or modification to this Agreement or the other Loan Documents permitted by this Agreement, which order will be acceptable to SHL whose consent is required to approve such amendment or modification.

| | |
|---|---|
| SHL HOLDINGS, INC.<br><br>By: _____<br><br>Its: _____ | IT'SUGAR LLC<br><br>By: _____<br><br>Its: _____ |
| IT'SUGAR ATLANTIC CITY LLC<br><br>By: _____<br><br>Its: _____ | IT'SUGAR FLGC LLC<br><br>By: _____<br><br>Its: _____ |
| | IT'SUGAR FL I, LLC<br><br>By: _____<br><br>Its: _____ |

**IT'SUGAR, LLC**

**DIP Loan - For the Period 9/23/20 to 12/12/20**

**Receipts:**

| | | |
|---|---|---|
| Projected Store Sales | $ | 10,129,585 |
| Projected Wholesale Sales | $ | 225,783 |
| Projected e-commerce & Partnering | $ | 1,114,851 |
| Projected New Temp Store Sales | $ | 496,111 |
| Sales Tax Collected | $ | 506,479 |
| **Total Receipts** | **$** | **12,472,808** |

**Disbursements:**

| | | |
|---|---|---|
| Sales Taxes Paid | $ | (362,877) |
| Inventory Purchases | $ | (4,486,928) |
| Store Payroll Disbursement | $ | (2,935,408) |
| Corporate Payroll Disbursement | $ | (1,263,740) |
| Severances | $ | (64,369) |
| Shared Services Allocation | $ | (105,000) |
| Store Controllables | $ | (507,160) |
| Corporate Controllables | $ | (381,703) |
| Capex Funding - Temp Stores | $ | (1,248,198) |
| Occupancy | $ | (4,940,685) |
| **Subtotal Operating Costs** | **$** | **(16,296,068)** |

**Filing Fees & Expenses:**

| | |
|---|---|
| Legal - M&B | (160,000) |
| US Trustee | (4,750) |
| Financial Advisor - Algon | (240,000) |
| Creditor's Committee Counsel | (16,000) |
| **Subtotal Filing Fees** | **(420,750)** |

| | | |
|---|---|---|
| **Total Disbursements** | **$** | **(16,716,817)** |

| | | |
|---|---|---|
| **Net Change in Cash** | **$** | **(4,244,009)** |

**Recap of Cash Activity**

| | | |
|---|---|---|
| **Beginning Cash - 9/23/20** | **$** | **500,000** |
| **Net Change in Cash** | **$** | **(4,244,009)** |
| **DIP Financing Requested** | **$** | **4,000,000** |
| **Projected Cash - 12/12/20** | **$** | **255,991** |

| | | |
|---|---|---|
| **DIP Financing Requested** | **$** | **4,000,000** |