

**ORDERED in the Southern District of Florida on September 30, 2020.**

Robert A. Mark, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 20-20259-RAM |
| | (Jointly Administered) |
| It'Sugar FL I LLC, *et al.*, | |
| | Chapter 11 |
| Debtors. | |
| _____/ | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING FROM SHL HOLDINGS, INC.; AND (B) TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF *NUNC PRO TUNC* TO SEPTEMBER 22, 2020**

This matter came before this Court on September 25, 2020 at 1:30 p.m. ("*Interim Hearing*") upon the motion ("*Motion*") [ECF No. 34] of It'Sugar FL 1, LLC, IT'Sugar, LLC, IT'Sugar Atlantic City, LLC and IT'Sugar FLGC, LLC (collectively, "*IT'Sugar*" or the "*Debtors*") pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code ("*Bankruptcy Code*") and Rules 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure ("*Bankruptcy Rules*"), seeking entry of interim and final orders: (a) authorizing Debtors

1

to obtain senior secured postpetition financing, (b) authorizing the Debtors to use Cash Collateral, (c) granting liens and providing superpriority claims with respect to such postpetition financing, (d) approving the form of adequate protection to be provided by the Debtor, (e) modifying the automatic stay to the extent necessary to effectuate the terms of the Orders, (f) scheduling a final hearing to consider entry of the Final Order, and (g) granting related relief in connection with the DIP Financing.[1]

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of September 22, 2020 ("**Petition Date**").

Upon the record made by the Debtors in the Motion and at the Interim Hearing, and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED AS AMENDED BY THIS ORDER, ON AN INTERIM BASIS PENDING FINAL HEARING, AND THE COURT FINDS, ON AN INTERIM BASIS PENDING FINAL HEARING, THAT:**

    A.    On the Petition Date, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

    B.    The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

    C.    No Committee has been appointed in these Cases.

    D.    Debtors admit, stipulate and agree for purposes of this interim Order and pending the entry of a final order that:

        1.    the Prepetition Loan Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among IT'Sugar, LLC, IT'Sugar Atlantic City, LLC and IT'Sugar FLGC, LLC ("**Prepetition Obligors**") and SHL;

        2.    the Prepetition Debt constitutes the legal, valid, and binding obligation of the Prepetition Obligors, enforceable in accordance with the terms of the Prepetition Loan

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

Documents. Notwithstanding anything to the contrary in this Interim Order or the DIP Documents, following a Cash Collateral Termination Event, SHL may not enter, utilize or occupy any premises subject to a real property lease of the Debtors except in accordance with: (i) SHL's rights and remedies which may exist under applicable non-bankruptcy law, (ii) written consent of a landlord under a real property lease, or (iii) further Order of this Court upon notice to the applicable landlord(s) pursuant to the Local Rules of this Court and Federal Rules of Bankruptcy Procedure;

3. as of the Filing Date, the Prepetition Obligors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed joint and several secured claim in their respective estates in an amount not less than $6,216,362.00, exclusive of accrued and accruing amounts allowable under section 506(b) of the Bankruptcy Code;

4. no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination, or other claim, cause of action, or challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

5. upon the entry of this Order, SHL's interests in the Collateral will be adequately protected; and

6. Subject to the entry of a Final Order, Debtors do not have, and hereby release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses, or setoff rights relating to the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Debt, against SHL and its respective predecessors in interest.

E. Good cause has been shown for the entry of this Interim Order. The Debtors have an immediate need to obtain the DIP Financing, and for authorization to continue to use Cash Collateral to permit, among other things, the orderly continuation of the operation of its business; the maintenance of business relationships with subcontractors, suppliers, vendors, and customers; the payment of payroll and related employee related expenses; and the payment of rent, other working capital and operational needs. The access of the Debtors to sufficient working capital and

liquidity made available through the DIP Financing and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors and to the successful reorganization of the Debtors. The proposed DIP Financing is in the best interests of the Debtors, their estates and creditors.

F. The Debtors are unable to obtain financing on equal or more favorable terms from sources other than SHL. The terms of the DIP Financing have no material impact on the rights of existing lien holders because SHL is the only existing lienholder and consents to the relief granted herein.

G. SHL has acted in good faith regarding the DIP Financing and the Debtor's continued use of the Collateral, including Cash Collateral, in accordance with the terms hereof. SHL is entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. In light of the good faith of SHL, in accordance with section 364(e) of the Bankruptcy Code, the rights and priorities granted to SHL under this Interim Order and the DIP Documents will not be affected or avoided by any subsequent reversal or modification of this Interim Order or the Final Order. The terms of this Order have been negotiated at arm's length and in good faith.

H. Under the circumstances of these Cases, this Interim Order is a fair and reasonable response to Debtors' request for SHL's consent to the use of Cash Collateral, and the entry of this Interim Order is in the best interest of Debtors' estates and their creditors.

I. The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Bankruptcy Rules 2002, 4001(b),(c) and (d), and 9014 and Bankruptcy Code sections 102(1) 362, 363, and 364 and were otherwise sufficient and appropriate under the circumstances, for purposes of this Interim Order.

**WHEREFORE, IT IS ORDERED THAT THE MOTION IS GRANTED AS AMENDED BY THIS ORDER, AND THAT:**

1. <u>Authorization for the DIP Financing and DIP Documents</u>. Debtors are authorized to enter into and perform all obligations under the DIP Documents. Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Debtors, enforceable against the Debtors in accordance with the terms of the DIP Documents and this Interim Order. No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under

the Bankruptcy Code or under any applicable law (including without limitation, any claims and causes of action pursuant to sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code or under any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law (each, an "*Avoidance Action*")), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim or counterclaim.

2.	Authorization to Use Cash Collateral. Debtors are authorized to use Cash Collateral through the Termination Date solely (a) in accordance with the terms and provisions of this Interim Order; and (b) to the extent required to pay, when due, those expenses enumerated in the Budget, subject to permitted variances. The Debtors shall not exceed any line item on the Budget by an amount exceeding twelve and 1/2 percent (12.5%) of each such line item; *provided*, *however*, that the Debtors may make payments up to twelve and 1/2 percent (12.5%) in excess of the total budgeted expenses for that month in the Budget so long as actual disbursements do not exceed one hundred and twelve and 1/2 percent (112.5%) of the budgeted total expenses for the month (collectively, the "*Allowed Variance*"). In the event that an expense arises which is not within any of the approved line items in the Budget, or the Debtors anticipate that any line item will need to be exceeded by more than the Allowed Variance, the Debtors shall request approval from SHL, and SHL shall have three (3) business days from the date of Debtors' request within which to provide consent or object. In the event that SHL does not consent, the Debtors shall file a motion with the Court seeking amendment of the Budget and approval of the additional expense, which relief may be sought on an emergency basis.

3.	Each of the following events shall be deemed a "*Cash Collateral Termination Event*":

(a)	the Debtors use Cash Collateral in excess of the amounts set forth in the Budget, subject to a twelve 1/2 percent (12.5%) variance on any particular line item or total expenditure;

(b)	a sale of all or substantially all of the assets of the Debtors;

5

(c) the Debtors commence any action including the filing of any pleading, against SHL with respect to the Prepetition Loan Documents;

(d) the occurrence of an Event of Default under the DIP Documents; and

(e) the date of the Final Hearing, if this Order is modified at the Final Hearing in a manner unacceptable to SHL.

Upon the occurrence of a Cash Collateral Termination Event, SHL may upon five business days' written notice to the Debtors, commence a proceeding in the Court to determine the Debtors' right to any further use of the Cash Collateral, and the Debtors' authorization to use the Cash Collateral shall be deemed automatically terminated on the fifth business day following commencement of such proceeding unless the Court orders otherwise by such time, and no further consent to the use of Cash Collateral shall be implied by any other action, inaction, or acquiescence by SHL ("**Termination Date**").

4. <u>DIP Superpriority Claims</u>. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the obligations under the DIP Documents shall constitute allowed claims against the Debtors (without the need to file any proof of claim) with priority over any and all administrative expenses, diminution in value claims and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (collectively the "**DIP Superpriority Claims**"), regardless of whether such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and shall be payable from and have recourse to the Collateral and any proceeds of the Collateral; provided, however, that the DIP Superpriority Claims shall be subordinate to Administrative Expense Carveout, including fees payable to the U.S. Trustee under Section 1930(a) of title 28 of the United States Code. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or

otherwise. Notwithstanding anything in this Interim Order to the contrary, the DIP Superpriority Claims shall not have priority status with respect to proceeds of Avoidance Actions.

5. <u>DIP Liens</u>. As security for the Debtors' obligations under the DIP Documents, effective and perfected upon the date of entry of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by SHL of, or over, any collateral, SHL is granted, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon the Collateral ("***Priming Liens***"), subject to the Permitted Liens.[2] The DIP Liens shall not be subject or subordinate to or made pari passu with any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code. The liens granted herein are collectively referred to as the "***DIP Liens***." Notwithstanding anything in this Interim Order to the contrary, the DIP Liens shall not attach to (a) Avoidance Actions or their proceeds, or (b) subject to the entry of the Final Order, any property of the Debtors that is not of the same nature and type as the collateral securing the Prepetition Debt. Notwithstanding anything in this Interim Order to the contrary, the DIP Liens shall not attach to the Debtors' real property leases.

6. <u>Adequate Protection of Interests of SHL</u>. SHL is entitled, pursuant to sections 361, 362, 363(e) and 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of its interests in the Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of its interests in the Collateral (including Cash Collateral) as provided in the Bankruptcy Code.

---

[2] "Permitted Liens" means: (a) Liens of governmental agencies for taxes, assessments, or governmental charges not yet past due or that are being contested in good faith by appropriate proceedings and for which adequate reserves have been established in accordance with GAAP; (b) inchoate non perfected mechanics', workmen's, and repairmen's Liens or other like Liens arising by operation of law in the ordinary course of business of Debtor and not past due unless contested in good faith by appropriate proceedings; and (c) Liens on individual specific pieces of equipment that are evidenced by UCC financing statements validly perfected prior to the Petition Date.

(a) <u>Priority of Prepetition Liens/Allowance of SHL's Claim</u>. Subject to the terms of this Interim Order, including the entry of a Final Order, and the Challenge Proceedings described in paragraphs 10 and 11: (1) the Prepetition Liens shall constitute liens, subordinate to the Dip Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of the Prepetition Obligors, enforceable in accordance with the terms of the Prepetition Loan Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (4) the Prepetition Loan Documents are valid and enforceable in all respects; and (5) SHL's claim with respect to the Prepetition Debt shall for all purposes constitute an allowed secured claim within the meaning of Bankruptcy Code section 506 in an amount not less than $6,216,362.00.

(b) <u>Replacement Liens</u>.  SHL is granted a replacement lien to the same extent, validity and priority of its prepetition lien (subordinate to the DIP Liens) in the Collateral ("***Replacement Liens***") as security for payment of the Prepetition Debt. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens, subordinate to the DIP Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or SHL and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the cases. Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to SHL such financing statements, mortgages, instruments, and other documents as SHL may request from time to time in respect of the Replacement Liens of SHL. Notwithstanding anything in this Interim Order to the contrary, the Replacement Liens shall not attach to the Debtors' real property leases.

(c) <u>Reaffirmation of Guaranty</u>.  The guaranty set forth in the Prepetition Guaranty and all other Prepetition Loan Documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by SHL pursuant to

Bankruptcy Code section 363. Guarantors are and shall remain liable for the guaranteed obligations under the Prepetition Security Agreement.

(d)     Payment of Fees and Expenses.  As additional adequate protection of the interests of SHL in the Collateral, Debtors will timely pay in cash all accrued and unpaid fees and expenses of SHL, within ten (10) days, after receipt by the Debtors of an invoice (which invoices may be redacted to protect privileged, confidential or proprietary information) without the necessity of any formal fee application. To the extent such fees and expenses are otherwise not allowable under 506(b), such payments will be deemed to reduce the Prepetition Debt on a dollar-for-dollar basis. Upon receipt of such invoices, the U.S. Trustee and any committee of unsecured creditors that may be appointed in these Cases shall have ten (10) days to notify the party submitting an invoice for payment of any objection to the reasonableness of such fees and costs. In the absence of such a timely objection, such parties shall be deemed to have irrevocably waived their right to object to such fees and costs.

7.     Perfection of DIP Liens. SHL is authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over assets, or take any other action, in each case, in order to validate and perfect the liens and security interests granted to them hereunder. Without any further consent of any party, SHL is authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable SHL to further validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed, as applicable, as of the Petition Date. A certified copy of this Interim Order may, in the discretion of SHL, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are authorized and directed to accept such certified copy of this Interim Order for filing and recording, as applicable. For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit SHL to take all actions, as applicable, referenced in this Interim Order.

8. <u>Survival of DIP Liens and Priorities</u>. In the event that any order is entered dismissing the Case under section 1112 of the Bankruptcy Code or otherwise, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Superpriority Claims and DIP Liens, security interests, replacement security interests and administrative claims granted to SHL pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all obligations of the Debtors shall have been paid and satisfied in full (and that such DIP Superpriority Claims, DIP Liens, security interests, replacement security interests and administrative claims, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (i) above. The terms and provisions of this Interim Order and the DIP Documents shall continue in these Cases, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims and all other rights and remedies of SHL granted by the provisions of this Interim Order shall continue in full force and effect until the obligations of the Debtors to SHL are indefeasibly paid in full in cash.

9. <u>No Surcharge</u>. In the exercise of their business judgment, subject to entry of the Final Order, Debtors (or any Trustee) agree that there shall be no surcharge of the Collateral for any purpose, unless agreed to by SHL. Further, Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to SHL under Bankruptcy Code section 506(c). Therefore, effective upon entry of the Final Order, the Debtors (or any Trustee) shall be deemed to have waived any rights, benefits, or causes of action under Bankruptcy Code section 506(c), or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against SHL or the Collateral.

10. <u>Stipulations Binding on Successors of Debtors and Third Parties; Challenge Period</u>. Subject to the entry of the Final Order, the Debtors' stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding upon the Debtors and any successors thereto in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon all other parties in

interest, including, without limitation, any committee appointed in this Case and any other person or entity acting on behalf of the Debtors' estates in all circumstances for all purposes; provided, however, that any committee(s) appointed in this case (and if no committee is appointed, any creditor that seeks and obtains derivative standing) shall have ninety (90) days after the entry of the Final Order ("**Challenge Period**") to file an adversary proceeding or contested matter challenging the amount, validity, perfection, enforceability, priority or extent of SHL's interest in the Collateral (collectively, "**Challenge Proceedings**") against SHL or its respective predecessors (each of the foregoing entities a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Loan Documents and the Collateral; provided that any pleadings filed in any Challenge Proceedings shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.

11. <u>Challenge Proceeding</u>. If no such Challenge Proceeding matter is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest, including, without limitation, any committee of unsecured creditors appointed in these Cases; (b) notwithstanding any reservations of rights contained in this Interim Order, the obligations of the Prepetition Obligors under the Prepetition Loan Documents shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in this Case, and any subsequent chapter 7 case; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Debtors' obligations to SHL shall not be subject to any other or further claim or challenge by any committee of unsecured creditors appointed in these Cases, any non-statutory committees appointed or formed in this Case or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by any committee of unsecured creditors appointed in these Case, any non-statutory committees appointed or formed in these Case, or any other party acting or seeking to act on behalf of the Debtors' estate, whether arising under the Bankruptcy Code or otherwise, against SHL or its Representatives arising out of or relating to the Prepetition Loan Documents shall be deemed forever waived, released and barred.

If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on all other persons and entities, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.

12. <u>No Marshaling</u>. Neither SHL nor any of the Collateral shall be subject to the doctrine of marshaling. Without limiting the generality of the foregoing, subject to the entry of the Final Order, no party other than SHL shall be entitled, directly or indirectly, to direct the exercise of rights or remedies or to seek (whether by order of this Court or otherwise) to marshal or otherwise control the enforcement of the DIP Liens, Prepetition Liens or Replacement Liens.

13. <u>Equities-of-the-Case Waiver</u>. Subject to a Final Order, SHL shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against SHL with respect to any proceeds, product, offspring, or profits of any of the Collateral, or otherwise.

14. <u>No Waiver</u>. SHL shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the DIP Documents, the Prepetition Loan Documents, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of SHL, as applicable, and directed to Debtors. No failure of SHL to require strict performance by Debtors of any provision of this Order shall waive, affect or diminish any right of SHL thereafter to demand strict compliance and performance therewith, and no delay on the part of SHL in the exercise of any right or remedy under this Order, the DIP Documents, the Prepetition Loan Documents or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by SHL of any of their rights under the DIP Documents, the Prepetition Loan Documents, the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Collateral lack adequate protection within the meaning of Bankruptcy Code sections 362(d) or 363(e) or any other provision thereof; or (2) a claim under Bankruptcy Code section 507(b).

15. "<u>Responsible Person</u>." By taking any actions pursuant to this Order, SHL shall not: (a) be deemed to be in control of the operations or liquidation of Debtors; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or reorganization of Debtors.

16. <u>Amendments</u>. Debtors and SHL may enter into amendments or modifications of the DIP Documents and Prepetition Loan Documents or the Budget without further notice and hearing or order of this Court; <u>provided</u>, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

17. <u>Proof of Claim</u>. Subject to a Final Order, SHL shall not be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof.

18. Notice of Final Hearing. The Court shall conduct a final hearing ("***Final Hearing***") on the Motion by Zoom on October 23, 2020 at 9:30 a.m. The hearing will be conducted by video conference using the services of Zoom Video Communications, Inc.

19. For instructions regarding the video conference, please refer to the General Procedures for Hearings By Video Conference on Judge Mark's web page on the Court's website, https://www.flsb.uscourts.gov/judges/judge-robert-mark.

20. To register for the video conference, click on the following link or manually enter the following link in a browser:

https://us02web.zoom.us/meeting/register/tZMtce2pqTkiGtaVtQGCtOlhoURuvTMG5ZDG

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

21. Any objection to the Order must be filed with the Court and received by counsel for the Debtors, SHL, and the United States Trustee no later than seventy-two (72) hours prior to the commencement of the Final Hearing. Any timely and properly filed and served objection will be heard at the Final Hearing.

###

**Submitted By:**
Joshua W. Dobin, Esquire
Florida Bar No. 93696
jdobin@melandbudwick.com
MELAND BUDWICK, P.A.
Counsel for Debtors
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telefax: (305) 358-1221

**Copies Furnished To:**
Joshua W. Dobin, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.

**EXHIBIT 1**

**BUDGET**

**[attached]**

#8861496 v1

**IT'SUGAR, LLC**
**13 Week Cash Budget**

| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Sep | Oct | Oct | Oct | Oct | Nov | Nov | Nov | Nov | Dec | Dec | Dec | Dec |
| | Week 5 | Week 1 | Week 2 | Week 3 | Week 4 | Week 1 | Week 2 | Week 3 | Week 4 | Week 1 | Week 2 | Week 3 | Week 4 |
| Week ended | 9/26/20 | 10/3/20 | 10/10/20 | 10/17/20 | 10/24/20 | 10/31/20 | 11/7/20 | 11/14/20 | 11/21/20 | 11/28/20 | 12/5/20 | 12/12/20 | 12/19/20 |
| **Receipts:** | | | | | | | | | | | | | |
| Projected Store Sales | $ 377,457 | $ 870,741 | $ 870,741 | $ 870,741 | $ 870,741 | $ 810,667 | $ 810,667 | $ 810,667 | $ 810,667 | $ 1,008,831 | $ 1,008,831 | $ 1,008,831 | $ 1,160,156 |
| Projected Wholesale Sales | 19,000 | 17,936 | 17,936 | 17,936 | 17,936 | 27,363 | 27,363 | 27,363 | 27,363 | 8,530 | 8,530 | 8,530 | 9,809 |
| Projected e-commerce & Partnering | 17,120 | 74,575 | 74,575 | 74,575 | 74,575 | 125,949 | 125,949 | 125,949 | 125,949 | 98,546 | 98,546 | 98,546 | 110,185 |
| Projected New Temp Store Sales | - | - | - | - | - | 66,832 | 66,832 | 66,832 | 66,832 | 76,261 | 76,261 | 76,261 | 87,701 |
| Sales Tax Collected | 18,873 | 43,537 | 43,537 | 43,537 | 43,537 | 40,533 | 40,533 | 40,533 | 40,533 | 50,442 | 50,442 | 50,442 | 58,008 |
| DIP Financing | | 2,000,000 | | | | 2,000,000 | | | | | | | |
| **Total Receipts** | $ 432,450 | $ 3,006,789 | $ 1,006,789 | $ 1,006,789 | $ 1,006,789 | $ 3,071,344 | $ 1,071,344 | $ 1,071,344 | $ 1,071,344 | $ 1,242,609 | $ 1,242,609 | $ 1,242,609 | $ 1,425,858 |
| **Disbursements:** | | | | | | | | | | | | | |
| Sales Taxes Paid | | | | | | $ (188,728) | | | $ (174,148) | | | | $ (162,133) |
| Inventory Purchases | | $ (342,529) | $ (342,529) | $ (342,529) | $ (342,529) | $ (393,618) | $ (393,618) | $ (393,618) | $ (393,618) | $ (514,113) | $ (514,113) | $ (514,113) | $ (514,113) |
| Store Payroll | | (476,391) | | (476,391) | | (495,656) | | (495,656) | | (495,656) | | (495,656) | |
| Corporate Payroll | | (210,623) | | (210,623) | | (210,623) | | (210,623) | | (210,623) | | (210,623) | |
| Severances | | (12,981) | | (12,981) | | (15,331) | | (7,692) | | (7,692) | | (7,692) | |
| Shared Services Allocation | | | $ (35,000) | | | | $ (35,000) | | | | $ (35,000) | | |
| Store Controllables | | (40,755) | (40,755) | (40,755) | (40,755) | (41,354) | (41,354) | (41,354) | (41,354) | (59,575) | (59,575) | (59,575) | (59,575) |
| Corporate Controllables | | (33,874) | (33,874) | (33,874) | (33,874) | (37,789) | (37,789) | (37,789) | (37,789) | (31,684) | (31,684) | (31,684) | (31,684) |
| Capex Funding - Temp Stores | | (95,000) | (95,000) | (95,000) | (95,000) | (158,525) | (158,525) | (158,525) | (158,525) | (117,049) | (117,049) | | |
| Occupancy [1] | | | | (1,567,727) | | (1,626,058) | | | | | (1,746,900) | | |
| **Subtotal Operating Costs** | $ - | $ (1,212,154) | $ (547,158) | $ (2,779,881) | $ (700,887) | $ (2,978,954) | $ (666,286) | $ (1,345,257) | $ (805,434) | $ (1,436,393) | $ (2,504,321) | $ (1,319,344) | $ (767,505) |
| **Filing Fees & Expenses:** | | | | | | | | | | | | | |
| Legal - M&B | | | | | | (80,000) | | | | (80,000) | | | |
| US Trustee | | | | (4,750) | | | | | | | | | |
| Financial Advisor - Algon | | | | | | (120,000) | | | | (120,000) | | | |
| Creditor's Committee Counsel [2] | | | | | | | | | | (16,000) | | | |
| **Subtotal Filing Fees** | $ - | $ - | $ - | $ (4,750) | $ - | $ (200,000) | $ - | $ - | $ - | $ (216,000) | $ - | $ - | $ - |
| **Total Disbursements** | $ - | $ (1,212,154) | $ (547,158) | $ (2,784,630) | $ (700,887) | $ (3,178,954) | $ (666,286) | $ (1,345,257) | $ (805,434) | $ (1,652,393) | $ (2,504,321) | $ (1,319,344) | $ (767,505) |
| **Operating Cash Recap** | 9/26/20 | 10/3/20 | 10/10/20 | 10/17/20 | 10/24/20 | 10/31/20 | 11/7/20 | 11/14/20 | 11/21/20 | 11/28/20 | 12/5/20 | 12/12/20 | 12/19/20 |
| Beginning Cash Balance | $ 500,000 | $ 932,450 | $ 2,727,085 | $ 3,186,716 | $ 1,408,874 | $ 1,714,776 | $ 1,607,166 | $ 2,012,224 | $ 1,738,310 | $ 2,004,220 | $ 1,594,437 | $ 332,725 | $ 255,991 |
| Change in Cash | $ 432,450 | $ 1,794,635 | $ 459,631 | $ (1,777,842) | $ 305,902 | $ (107,611) | $ 405,058 | $ (273,914) | $ 265,910 | $ (409,783) | $ (1,261,712) | $ (76,734) | $ 658,353 |
| **Cash Balance - End of Week** | $ 932,450 | $ 2,727,085 | $ 3,186,716 | $ 1,408,874 | $ 1,714,776 | $ 1,607,166 | $ 2,012,224 | $ 1,738,310 | $ 2,004,220 | $ 1,594,437 | $ 332,725 | $ 255,991 | $ 914,344 |

(1) Occupancy payments are subject to rejections and modifications of leases.
(2) To be determined, if applicable.

EXHIBIT 1