UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                                  Case No. 20-20259-RAM
                                                                        (Jointly Administered)
It'Sugar FL I LLC, *et al*.,
                                                                        Chapter 11
        Debtors.
_____/

**DEBTORS' EXPEDITED MOTION TO TREAT NASSAU
CANDY DISTRBUTORS, INC. AS CRITICAL VENDOR AND
AUTHORIZING PAYMENT OF PREPETITION CLAIM**

*(Hearing respectfully requested on March 10, 2021 along with other matters)*

The Debtors respectfully request that this Motion be heard on an expedited basis on March 10, 2021. Nassau is the Debtors' largest supplier by providing 50% of the products sold by the Debtors, including approximately 90% of the bulk candy it sells. While other suppliers exist, it would create a material hardship on the Debtors if they switched suppliers. There is no doubt that Nassau is a critical vendor of the Debtors. Post-petition, the Debtors have been unable to reach favorable purchasing terms with Nassau and have been forced to prepay for all product, which is no longer economically sustainable and putting at risk the employees, creditors and other stakeholders. As discussed herein, the Debtors, with the support of the Committee, have reached an agreement with Nassau, and request that this Motion be heard immediately so that, if approved, the Debtors can take immediate advantage of more favorable purchasing terms to prevent potential irreparable harm.

It'Sugar FL I LLC, It'Sugar LLC, It'Sugar Atlantic City LLC, and It'Sugar FLGC LLC (collectively, the "***Debtors***"), pursuant to 11 U.S.C. §§ 105(a) and 363, file this motion (the "***Motion***") seeking the entry of an Order authorizing the Debtors to pay a significant portion of the prepetition claim of Nassau Candy Distributors, Inc. ("***Nassau***"), as Nassau and its continued sales to the Debtors is critical to the continued operations of the Debtors' business and the Debtors' reorganization efforts.

1

## I. Jurisdiction

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are Sections 105(a) and 363 of the Bankruptcy Code, Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Local Rule 9013-1(I).

## II. Procedural Background

1. On September 22, 2020 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtors manage and operate their business as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

3. The Debtors operate as a single business and are known throughout the industry as It'Sugar. It'Sugar is a specialty candy retailer whose products include bulk candy, candy in giant packaging, and licensed and novelty items. It'Sugar's portfolio includes approximately 100 retail locations across 28 states.

4. On October 20, 2020, the joint committee of unsecured creditors (the "***Committee***") was formed. ECF No. 110.

5. Nassau is a scheduled creditor holding a $659,679.04 general unsecured claim against Debtor It'Sugar LLC (the "***Claim***").[1] Nassau is a member of the Committee.

---

[1] *See* ECF No. 15 in 20-20261-RAM.

### III. Relief Requested and Basis Therefor

A. **Pre-Petition Critical Vendor Claim**

6. The Debtors seek authority to pay a large portion of the Claim, as Nassau's services are critical to the Debtors' continued operations and accordingly must be paid immediately. Nassau provides the Debtors with bulk candy and other products for the Debtors' stores and is their largest vendor. Approximately 50% of the Debtors' sales are of products that Nassau provides to the Debtors. Nassau provides approximately 90% of the Debtors' bulk candy, plus substantial amounts of the Debtors' packaged assortments. Using its refrigerated trucking network, Nassau distributes product to the Debtors' stores on a weekly basis. Other distributors use FedEx or UPS to deliver product, and only if enough volume is ordered is it feasible for the product to be delivered via refrigerated truck. Nassau is the only distributor that is capable of providing enough of the Debtors' product to make delivery by refrigerated truck practical and affordable. If the Debtors sought to replace the volume of product supplied by Nassau, it would be very difficult and time consuming to find replacement vendors, negotiate with those vendors, and then receive the supply of the product amount and mix the Debtors' require. During such a delay, the Debtors would not receive most of their candy effectively causing its inventory levels to drop to a small fraction of what it needs to keep consumers coming to their stores. The Debtors believe (as does the Committee) that the lack of candy in the stores would put at serious risk the Debtors' reorganization efforts, and put at risk the livelihood of the Debtors' employees, and the recovery for the Debtors' creditors and other stakeholders.

7. Pre-petition, Nassau provided its services and products on favorable purchasing terms to the Debtors, which were and are extremely important to the operation of the Debtors' business. Since the Petition Date, Nassau has advised it will not provide It'Sugar with those

same or similar purchasing terms absent some pay down of the Claim, and that refusal has significantly impacted the Debtors' continued operations and availability of cash. Without purchasing terms, the Debtors have had to prepay Nassau for all product. Prepaying for product has had, and continues to have, a significant burden on the Debtors, and simply, is no longer sustainable.

8. Given the above, Nassau is critical to the Debtors' ability to successfully reorganize and continue and maintain operations. As a result of substantial negotiations, and subject to the Court granting this Motion, the Debtors have agreed to pay $600,000 of the Claim immediately (the "***Critical Vendor Payment***"), and in return, Nassau has agreed that: (1) it will grant the Debtors the same favorable purchasing terms it provided pre-petition to purchase product for its stores; (2) it will support the Debtors' plan of reorganization; and (3) it will make a $200,000 payment as a vendor contribution in November 2021 for the Debtors' anticipated new store in Ala Moana, Hawaii. The remaining unpaid portion of the Claim, $59,679.04, will remain a general unsecured claim and be treated in accordance with the priorities of the Bankruptcy Code. The Debtors believe that payment of the Critical Vendor Payment is fair and reasonable for the services provided, which are essential to the Debtors' business.

### B.    Authority for Relief Requested

9. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code.

10. A bankruptcy court's use of its equitable powers to "authorize the payment of a prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). This equitable common law principle "was first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C. & SW R. Co.*, 106 U.S. 286 (1882) and is commonly referred to as either the 'doctrine of necessity' or the 'necessity of payment rule.'" *Ionosphere Clubs*, 98 B.R. at 175-76; *see also In re Just For Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("Certain prepetition claims by employees and trade creditors . . . may need to be paid to facilitate a successful reorganization.") (citing 11 U.S.C. § 105(a)).

11. Federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve the going-concern value of a Debtor's business, thereby facilitating reorganization. *See, e.g., Miltenberger v. Logansport, Crawfordsville and Southwestern Ry. Co.*, 106 U.S. 286, 311 (1882); *In re Lehigh & New England Ry. Co..*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 (3d Cir. 1972); *Just For Feet,* 242 B.R. 821 at 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the survival during Chapter 11.").

12. While the "necessity of payment" doctrine originally developed in the context of railroad reorganizations under the Bankruptcy Act, it has been applied in nonrailroad bankruptcies. *See In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a

prepetition unsecured creditor, debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

13. Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay certain critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. Such authority is derived from section 363(b)(1) of the Bankruptcy Code. "Satisfaction of a pre-petition debt in order to keep 'critical' supplies flowing is a use of property other than in the ordinary course of administering an estate in bankruptcy under section 363(b)(1) of the Bankruptcy Code." *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 (Bankr. M.D.Fla. 2005) (quoting *In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004)).[1]

14. Specifically, an order authorizing the payment of pre-petition amounts to critical vendors is appropriate if (a) the payments are necessary to the reorganization process; (b) a sound business justification exists in that the critical vendor(s) refuse to continue to do business with the debtor absent being afforded critical vendor status; and (c) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered. *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 (Bankr. M.D. Fla. 2005).

15. Payment of the Critical Vendor Payment is vital to the Debtors' continued operations. Nassau provides approximately 50% of the Debtors' product, and is the only distributor which can deliver product to the Debtors' stores on a weekly basis using refrigerated trucks. Currently, Nassau requires the Debtors to prepay for product, which results in a substantial cash burden on the Debtors and is no longer sustainable. Nassau has advised the

---

[1] The Seventh Circuit decision in *In re Kmart Corp.*, 359 F.3d. 866 (7th Cir. 2004) is not binding on this Court and is clearly distinguishable from this case. Here, the Debtors seek authority to pay a specific creditor a specific amount to allow the Debtors to purchase candy on terms, without having to prepay, which provides a substantial cash flow benefit to the Debtors particularly while in bankruptcy.

Debtors that it will not give the Debtors purchasing terms absent payment of the Critical Vendor Payment. No other distributors of the size and importance of Nassau will give the Debtors these favorable terms, and no other distributors similar to Nassau are able to provide the Debtors with all the various products it requires as well as weekly delivery to stores via refrigerated truck. For all these reasons, sound business justifications exist for the relief requested.

16. If the Critical Vendor Payment is approved, the Debtors' business will be stabilized preventing irreparable harm that could put all creditors, secured and unsecured, and the Debtors' employees, at substantial risk. The Debtors' entire business is selling candy, and obtaining that candy and other products on favorable purchasing terms is beneficial to all of its stakeholders.

17. The Committee supports the relief in this Motion.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order (i) granting the relief requested in this Motion; (ii) authorizing the Debtor to pay the Critical Vendor Payment, and (iii) granting such other relief as the Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on March 5, 2021, via the Court's Notice of Electronic Filing upon Registered Users set forth on the attached **Exhibit 1**.

        s/Joshua W. Dobin
        Joshua W. Dobin, Esquire
        Florida Bar No. 93696
        jdobin@melandbudwick.com
        Meaghan E. Murphy, Esquire
        Florida Bar No. 102770
        mmurphy@melandbudwick.com
        MELAND BUDWICK, P.A.
        3200 Southeast Financial Center
        200 South Biscayne Boulevard
        Miami, Florida 33131
        Telephone: (305) 358-6363
        Telecopy: (305) 358-1221
        *Attorneys for Debtors*

**Exhibit 1**

**Mailing Information for Case 20-20259-RAM**

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Joaquin J Alemany**   joaquin.alemany@hklaw.com, jose.casal@hklaw.com
- **Scott Andron**   sandron@broward.org, swulfekuhle@broward.org
- **Joseph H Baldiga**   bankrupt@mirickoconnell.com
- **Brian S Behar**   bsb@bgglaw.net
- **David M Blau**   dblau@clarkhill.com
- **Michael S Budwick**   mbudwick@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;mbudwick@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Andrew S Conway**   aconway@taubman.com
- **Ryan E Davis**   rdavis@whww.com, thiggens@whww.com;thiggens@ecf.courtdrive.com
- **Joshua W Dobin**   jdobin@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;ltannenbaum@ecf.courtdrive.com;jdobin@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Kate Foley**   kfoley@mirickoconnell.com
- **Robert C Furr**   ltitus@furrcohen.com, atty_furrcohen@bluestylus.com;cworkinger@furrcohen.com;staff1@furrcohen.com
- **Daniel Gielchinsky**   dan@dyglaw.com, tatiana@dyglaw.com
- **Ronald E Gold**   rgold@fbtlaw.com, eseverini@fbtlaw.com;khardison@fbtlaw.com
- **Eric S. Golden**   egolden@burr.com, jmorgan@burr.com
- **Ilyse M. Homer**   ihomer@bergersingerman.com, efile@bergersingerman.com;mdiaz@bergersingerman.com;efile@ecf.inforuptcy.com
- **Jeannie Kim**   jekim@sheppardmullin.com, dgatmen@sheppardmullin.com
- **Ian J Kukoff**   ian.kukoff@blaxgray.com, kukoff.assistant@blaxgray.com;isabel.colleran@blaxgray.com
- **David Kupetz**   dkupetz@sulmeyerlaw.com
- **Robert L LeHane**   kdwbankruptcydepartment@kelleydrye.com
- **Ilan Markus**   imarkus@barclaydamon.com, docketing@barclaydamon.com
- **James C. Moon**   jmoon@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;jmoon@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Kevin S Neiman**   kevin@ksnpc.com
- **Ari Newman**   newmanar@gtlaw.com, perezan@gtlaw.com;mialitdock@gtlaw.com;miaecfbky@gtlaw.com
- **Office of the US Trustee**   USTPRegion21.MM.ECF@usdoj.gov

- **Chad S Paiva**    trustee.paiva@gmail.com, michaelbollingpa@gmail.com,sramirez.fbp@gmail.com
- **Kristen N Pate**    bk@brookfieldpropertiesretail.com
- **Hampton Peterson**    legalservices@PBCTax.com
- **Michael S Provenzale**    michael.provenzale@lowndes-law.com, anne.fisher@lowndes-law.com
- **Heather L. Ries**    hries@foxrothschild.com, ralbert@foxrothschild.com
- **Grace E. Robson**    grobson@mrthlaw.com, mrthbkc@gmail.com,lgener@mrthlaw.com,grobson@ecf.courtdrive.com
- **Steven D Schneiderman**    Steven.D.Schneiderman@usdoj.gov
- **Eric J Silver**    esilver@stearnsweaver.com, jless@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com;Atty_arrazola@bluestylus.com
- **Steven J. Solomon**    steven.solomon@gray-robinson.com, Ana.Marmanillo@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com
- **Louis G Spencer**    louis@alexanderricks.com, dana@alexanderricks.com
- **Ronald M Tucker**    rtucker@simon.com, cmartin@simon.com;bankruptcy@simon.com
- **Michael S Waskiewicz**    mwaskiewicz@burr.com, sguest@burr.com
- **Gillian D Williston**    gillian.williston@troutman.com, fslecfintake@troutman.com;ethan.ostroff@troutman.com;richard.hagerty@troutman.com;carter.nichols@troutman.com
- **Stuart F Wilson-Patton**    stuart.wilson-patton@ag.tn.gov

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363