UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

It'Sugar FL I LLC, *et al.*,

      Debtors.

_____/

Case No. 20-20259-RAM
(Jointly Administered)

Chapter 11

**NOTICE OF FILING PLAN SUPPLEMENT RELATED TO THE PLAN OF REORGANIZATION FOR IT'SUGAR FL I LLC, IT'SUGAR LLC, IT'SUGAR ATLANTIC CITY LLC AND IT'SUGAR FLGC LLC**

PLEASE TAKE NOTICE that It'Sugar FL I LLC, It'Sugar LLC, It'Sugar Atlantic City LLC, and It'Sugar FLGC LLC (collectively, the "***Debtors***"), file the Plan Supplement in connection with, and as defined in, the Plan of Reorganization for It'Sugar FL I LLC, It'Sugar LLC, It'Sugar Atlantic City LLC and It'Sugar FLGC LLC [ECF No. 301] (together with all exhibits and schedules thereto and as it may be amended, modified, or supplemented from time to time, the "***Plan***").

The Plan Supplement contains the following documents:

- Exhibit A – the First Amended Schedule of Assumed Executed Contracts and Unexpired Leases, which amends and supersedes the Schedule of Assumed Executory Contracts and Unexpired Leases attached to the Plan as Exhibit A; and

- Exhibit B – Exit Facility Documents, consisting of (1) the Term Loan Agreement and (2) the Security Agreement.

PLEASE TAKE FURTHER NOTICE that the Plan Supplement documents attached hereto remain subject to (a) further review, negotiation, and modification, and (b) final documentation in a manner consistent with the Plan.

1

PLEASE TAKE FURTHER NOTICE that a hearing to consider confirmation of the Plan is scheduled to be held on June 11, 2021, at 10:00 a.m. (Prevailing Eastern Time), before the Honorable Robert A. Mark. The hearing will take place via video conference using the services of Zoom Video Communications, Inc. To participate in the hearing, you must register in advance no later than 3:00 p.m. (Prevailing Eastern Time) one business date before the date of the hearing. To register, click on the following link or manually enter the following link in a browser: https://www.zoomgov.com/meeting/register/vJIsceyuqT4tE-yVagBR9KvKjNeqpKnWfbQ. For instructions regarding the video conference, please refer to the General Procedures for Hearings by Video Conference on Judge Mark's web page on the Court's website, https://www.flsb.uscourts.gov/judges/judge-robert-mark.

Dated: June 1, 2021.

 s/ Meaghan E. Murphy
Michael S. Budwick, Esquire
Florida Bar No. 938777
mbudwick@melandbudwick.com
Joshua W. Dobin, Esquire
Florida Bar No. 93696
jdobin@melandbudwick.com
Meaghan E. Murphy, Esquire
Florida Bar No. 102770
mmurphy@melandbudwick.com
MELAND BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Debtor-in-Possession*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served June 1, 2021, via the Court's Notice of Electronic Filing upon Registered Users listed on the attached **Exhibit 1**, and via U.S. Mail upon the parties listed on the attached **Composite Exhibit 2**.

s/ Meaghan E. Murphy
Meaghan E. Murphy, Esquire

3

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Joaquin J Alemany**    joaquin.alemany@hklaw.com, jose.casal@hklaw.com
- **Scott Andron**    sandron@broward.org, swulfekuhle@broward.org
- **Joseph H Baldiga**    bankrupt@mirickoconnell.com
- **Brian S Behar**    bsb@bgglaw.net
- **David M Blau**    dblau@clarkhill.com
- **Michael S Budwick**    mbudwick@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;mbudwick@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Isabel V Colleran**    isabel.colleran@blaxgray.com, legalassistB@blaxgray.com
- **Andrew S Conway**    aconway@taubman.com
- **Ryan E Davis**    rdavis@whww.com, thiggens@whww.com;thiggens@ecf.courtdrive.com
- **Joshua W Dobin**    jdobin@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;ltannenbaum@ecf.courtdrive.com;jdobin@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Kate Foley**    kfoley@mirickoconnell.com
- **Robert C Furr**    ltitus@furrcohen.com, atty_furrcohen@bluestylus.com;cworkinger@furrcohen.com;staff1@furrcohen.com
- **Daniel Gielchinsky**    dan@dyglaw.com, tatiana@dyglaw.com;dan_1836@ecf.courtdrive.com
- **Ronald E Gold**    rgold@fbtlaw.com, eseverini@fbtlaw.com;khardison@fbtlaw.com
- **Eric S. Golden**    egolden@burr.com, jmorgan@burr.com
- **Ilyse M. Homer**    ihomer@bergersingerman.com, efile@bergersingerman.com;mdiaz@bergersingerman.com;efile@ecf.inforuptcy.com
- **Jeannie Kim**    jekim@sheppardmullin.com, dgatmen@sheppardmullin.com
- **Ian J Kukoff**    ian.kukoff@blaxgray.com, kukoff.assistant@blaxgray.com;isabel.colleran@blaxgray.com
- **David Kupetz**    dkupetz@sulmeyerlaw.com
- **Robert L LeHane**    kdwbankruptcydepartment@kelleydrye.com
- **Ilan Markus**    imarkus@barclaydamon.com, docketing@barclaydamon.com
- **James C. Moon**    jmoon@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;jmoon@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Kevin S Neiman**    kevin@ksnpc.com
- **Ari Newman**    newmanar@gtlaw.com, perezan@gtlaw.com;mialitdock@gtlaw.com;miaecfbky@gtlaw.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Chad S Paiva**    trustee.paiva@gmail.com, michaelbollingpa@gmail.com,sramirez.fbp@gmail.com
- **Kristen N Pate**    bk@brookfieldpropertiesretail.com

EXHIBIT 1

- **Hampton Peterson**    legalservices@PBCTax.com
- **Michael S Provenzale**    michael.provenzale@lowndes-law.com, anne.fisher@lowndes-law.com
- **Heather L. Ries**    hries@foxrothschild.com, ralbert@foxrothschild.com
- **Grace E. Robson**    grobson@mrthlaw.com, mrthbkc@gmail.com,lgener@mrthlaw.com,grobson@ecf.courtdrive.com
- **Maria A. Santos**    maria.santos@ct.gov
- **Steven D Schneiderman**    Steven.D.Schneiderman@usdoj.gov
- **Eric J Silver**    esilver@stearnsweaver.com, jless@stearnsweaver.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com;Atty_arrazola@bluestylus.com
- **Steven J. Solomon**    steven.solomon@gray-robinson.com, Ana.Marmanillo@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com
- **Louis G Spencer**    louis@alexanderricks.com, dana@alexanderricks.com
- **Ronald M Tucker**    rtucker@simon.com, cmartin@simon.com;bankruptcy@simon.com
- **Michael S Waskiewicz**    mwaskiewicz@burr.com, sguest@burr.com
- **Gillian D Williston**    gillian.williston@troutman.com, fslecfintake@troutman.com;ethan.ostroff@troutman.com;richard.hagerty@troutman.com;carter.nichols@troutman.com;christina.lesko@troutman.com
- **Stuart F Wilson-Patton**    stuart.wilson-patton@ag.tn.gov

Label Matrix for local noticing
113C-1
Case 20-20263-RAM
Southern District of Florida
Miami
Wed May 26 15:42:08 EDT 2021

It'Sugar Atlantic City LLC
4960 Conference Way N #100
Boca Raton, FL 33431-3311

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Arundel Mills Ltd Partnership
c/o M.S. Management Assoc, Inc.
225 W Washington St
Indianapolis, IN 46204-3438

Colorado Dept of Revenue
1375 Sherman St
Denver, CO 80261-2200

Colorado Mills Malls Ltd Partnership
c/o M.S. Management Assoc, Inc.
225 W Washington St
Indianapolis, IN 46204-3438

Franchise Tax Board
Bankruptcy Section MS A340
PO BOX 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

It'Sugar FLGC LLC
4960 Conference Way N
Ste 100
Boca Raton, FL 33431-3311

It'Sugar LLC
4960 Conference Way N
Ste 100
Boca Raton, FL 33431-3311

Karen Worman, Regional VP Finance
2100 Pacific Ave
Atlantic City, NJ 08401-6612

Maryland Dept of Revenue
310 W Preston St
Baltimore, MD 21201

(p)STATE OF NEW JERSEY
DIVISION OF TAXATION BANKRUPTCY UNIT
PO BOX 245
TRENTON NJ 08646-0245

New Jersey Dept of Revenue
125 W State St
Trenton, NJ 08608-1101

Pier at Caesars LLC
Karen Worman, Regional VP Finance
2100 Pacific Avenue
Atlantic City, NJ 08401-6612

SHL Holdings, Inc.
401 E Las Olas Blvd
Ste 800
Fort Lauderdale, FL 33301-4284

Joshua W Dobin
200 S Biscayne Blvd # 3200
Miami, FL 33131-5323

Michael S Budwick Esq
200 S Biscayne Blvd #3200
Miami, FL 33131-5323

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

NJ Division of Taxation
PO Box 245
Trenton, NJ 08695-0245

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

End of Label Matrix
Mailable recipients    17
Bypassed recipients     1
Total                  18

COMPOSITE
EXHIBIT 2

```
Label Matrix for local noticing      It'Sugar FLGC LLC                Office of the US Trustee
113C-1                               4960 Conference Way N #100       51 S.W. 1st Ave.
Case 20-20264-RAM                    Boca Raton, FL 33431-3311        Suite 1204
Southern District of Florida                                         Miami, FL 33130-1614
Miami
Wed May 26 15:40:18 EDT 2021

Internal Revenue Service             It'Sugar Atlantic City LLC       It'Sugar LLC
PO Box 7346                          4960 Conference Way N            4960 Conference Way N
Philadelphia, PA 19101-7346          Ste 100                          Ste 100
                                     Boca Raton, FL 33431-3311        Boca Raton, FL 33431-3311


SHL Holdings, Inc.                   Joshua W Dobin                   Michael S Budwick Esq
401 E Las Olas Blvd                  200 S Biscayne Blvd # 3200       200 S Biscayne Blvd #3200
Ste 800                              Miami, FL 33131-5323             Miami, FL 33131-5323
Fort Lauderdale, FL 33301-4284
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Miami                             End of Label Matrix
                                     Mailable recipients     8
                                     Bypassed recipients     1
                                     Total                   9
```

Label Matrix for local noticing
113C-1
Case 20-20261-RAM
Southern District of Florida
Miami
Wed May 26 15:38:19 EDT 2021

Broward County
c/o Records, Taxes & Treasury
Attn: Bankruptcy Section
115 S. Andrews Ave. A-100
Ft. Lauderdale, FL 33301-1888

Irvine Company LLC
c/o Ernie Zachary Park
13215 E Penn Street #510
Whittier, CA 90602-1776

It'Sugar LLC
4960 Conference Way N #100
Boca Raton, FL 33431-3311

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Palm Beach County Tax Collector
c/o Orfelia M Mayor Esq
POB 3715
West Palm Beach, FL 33402-3715

Texas Comptroller of Public Accounts
Office of the Attorney General
Collections Div/Bankruptcy Sect
POB 12548 Capitol Station
Austin, TX 78711-2548

Victory Retail I, L.P.
c/o Alexander Ricks PLLC
1420 E 7th Street, Ste 100
Charlotte, NC 28204-2408

117 Duval, LLC
Attn: Charles Ittah
7820 Peters Road
Unit E-104
Plantation, FL 33324-4019

1185 Gotham L.L.C.
c/o Malkin Properties, L.L.C.
60 East 42nd Street
New York, NY 10165-0006

1515 N. Halsted, LLC
c/o Bucksbaum Retail Properties
71 S. Wacker Drive
Ste 2130
Chicago, IL 60606-4666

1880 Broadway Retail, LLC
c/o Global Holdings Management (Us) Inc
1250 Broadway, 38 FL
New York, NY 10001

210 Muni, LLC
430 West Broadway, Third Floor
New York, NY 10012

3000 Ocean Front LLC
Attn: Jason S. Klein, Esq.
1500 Lawrence Avenue
Ocean, NJ 07712-7627

A Safe Keeping Self Storage CMCH, Inc.
1025 Beach Drive
Cape May, NJ 08204-1613

A to Z Scales and Calibration LLC
3515 North 34th Place
Phoenix, AZ 85018-5754

A&G Realty Partners, LLC
445 Broadhollow Rd
Ste 410
Attn: Andy Graiser
Melville, NY 11747-3601

AAC HP Realty, LLC
c/o Joshua Bradley
Rosenberg Martin Greenberg
25 S. Charles, 21st Floor
Baltimore, MD 21201-3322

ARIZONA DEPARTMENT OF REVENUE
Office of the Arizona Attorney General
c/o Tax, Bankruptcy and Collection Sct
2005 N Central Ave, Suite 100
Phoenix, AZ 85004-1546

Aah's Enterprises, Inc. dba Aah's
6600 Telegraph Road
Commerce, CA 90040-3210

About Face Designs
1510 Old Deerfield Rd
Ste 211
Highland Park, IL 60035-3070

Ace Endico
80 International Blvd
Brewster, NY 10509-2344

Akerman Senterfitt LLP
666 Fifth Avenue
19 FL
New York, NY 10103

(p)STATE OF ALABAMA DEPARTMENT OF REVENUE
P O BOX 320001
MONTGOMERY AL 36132-0001

Albanese Confectionary Group, Inc.
PO Box 71885
Chicago, IL 60694-1885

Ameream LLC
c/o Ameream Mgmt LLC
One Meadowlands Plaza
6 FL
East Rutherford, NJ 07073

American Multi Trade Inc.
20700 Dearborn St
Chatsworth, CA 91311-5912

Ameriworks Solutions LLC
2787 S Evergreen Cir
Boyton Beach, FL 33426-8657

(p)ANASTASIA CONFECTIONS  INC
ATTN ACCOUNTING
1815 CYPRESS LAKE DRIVE
ORLANDO FL 32837-8457

Anchorage Holdings, L.P.
c/o CBRE Global Investors,
800 Boylston Street
Ste 2800
Boston, MA 02199-8144

Ansell Grimm & Aaron, P.C.
Attn: Jason S. Klein, Esq.
1500 Lawrence Avenue
Ocean, NJ 07712-7629

Archytecx Design and Architecture PLLC
1 Tiffany Place
Apt 3A
Brooklyn, NY 11231-2938

Arizona Dept of Revenue
1600 West Monroe St
Phoenix, AZ 85007-2650

Arlington Scale
38 Davey St.
Bloomfield, NJ 07003-5118

Armada Hoffler Block 8 Associates, L.L.C
c/o Divaris Property Management
One Columbus Center
Ste 700
Virginia Beachva, VA 23462-6761

Arnall Golden Gregory, LLP
Attn: Abe J. Schear, Esq.
171 17th Street, Suite 2100
Ste 2100
Atlanta, GA 30363-1031

Arundel Mills Limited Partnership
c/o M.S. Management Associates Inc.,
225 West Washington Street
Indianapolis, IN 46204-3438

Ashkenazy Acquisition Corp.
Attention: General Counsel,
150 East 58th Street
39 FL
New York, NY 10155

Asian Food Grocer
50 W Ohio Ave
Richmond, CA 94804-2039

Astor Chocolate Corporation
651 New Hampshire Ave
Lakewood, NJ 08701-5452

Atlantic Moving And Storage
2549 W Broward Blvd
Fort Lauderdale, FL 33312-1396

Avalara, Inc.
225 S King St
Ste 1800
Seattle, WA 98104

Avanti Press
PO Box 67000
Detroit, MI 48267-2104

Aventura Mall Venture
Legal Dept, c/o Turnberry Aventura Mall
19501 Biscayne Boulevard, Suite 400
Aventura, FL 33180-2337

AvidXchange, Inc.
PO Box 36862
Charlotte, NC 28236-6862

Avon Brothers, Inc. dba Avon Contractors
5021 Industrial Rd
Farmingdale, NJ 07727-3651

B.A. Sweetie Candy Company Inc
6770 Brookpark Road
Cleveland, OH 44129-1225

BBMK Contracting, LLC
6400 Park Of Commerce Blvd
Ste 1B
Boca Raton, FL 33487-8226

BBX Capital Inc.
401 E. Las Olas Blvd.
Suite 800
Fort Lauderdale, FL 33301-4284

BROADWAY AT THE BEACH, INC.
Attention: General Manager,
1325 Celebrity Circle
Myrtle Beach, SC 29577-7445

Baker Donelson
420 20th Street North
Ste 1400
Birmingham, AL 35203-3221

Bank Direct Capital Finance
150 North Field Drive
Ste 190
Lake Forest, IL 60045-2594

Barefoot Landing Commercial, LLC
Attn: Lease Administration
P.O. Box 7577
Myrtle Beach, SC 29572-0014

Barrios Building Maintenance
4844 W. 104th St.
Inglewood, CA 90304-1702

Basic Fun, Inc.
301 Yamato Road
Ste 2112
Boca Raton, FL 33431-4901

Basic Promotions II, Inc.
4848 NW 97 Drive
Coral Springs, FL 33076-2453

Bay Street Emeryville
Attention: General Manager,
5616 Bay Street
Emeryville, CA 94608-2408

Baybrook Mall GGP MGMT Office
500 Baybrook Mall
Friendswood, TX 77546-2796

Baybrook Mall, LLC
500 Baybrook Mall
General Growth Mgmt Office
Friendswood, TX 77546-2796

Bayside Marketplace LLC
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036-5600

Bayside Marketplace, LLC
2681 Solution Center
Chicago, IL 60677-0001

Best Buy Co., Inc.
7601 Penn Avenue South
Attn: Emily Davidson, Mgt Prop Risk
Richfield, MN 55423-3683

Blue Q
103 Hawthorne Ave
Pittsfield, MA 01201-6009

Bobbleheads.Com / Royal Bobbles
5885 Shiloh Road
Suite 101
Alpharetta, GA 30005-2217

Boston America
55 Sixth Road
Ste 8
Woburn, MA 01801-1746

Boston America Corp.
Coface North America Insurance Company
650 College Road East, Suite 2005
Princeton, NJ 08540-6779

Brian J. LaFlamme
Summers Compton Wells LLC
8909 Ladue Road
St. Louis, MO 63124-2075

Brink's Incorporated
PO Box 101031
Atlanta, GA 30392-1031

Broadway Mercer Associates
351 East 83rd Street
New York, NY 10028-4221

Broadway Mercer Associates, a New York Partn
c/o K&L Gates LLP
Daniel M. Eliades, Esq.
One Newark Center, 10th Floor
Newark, NJ 07102-5237

C2 Imaging LLC
4537 Solution Center
Chicago, IL 60677-4005

CPG Tinton Falls Urban Renewal, LLC
Attn: Lease Administration
105 Eisenhower Parkway
Roseland, NJ 07068-1640

California Department of Tax and
Fee Administration
POB 942879
Sacramento CA 94279-0001

California Dept of Revenue
250 S 2nd St
San Jose, CA 95113-2706

CandyRific, LLC
PO Box 638952
Cincinnati, OH 45263-8953

Chelsea Orlando Development Limited Part
c/o Simon Property Group, Inc.
225 West Washington St.
Indianapolis, IN 46204-3435

Chelsea Property Group
Attn: Lease Administration
105 Eisenhower Parkway
Roseland, NJ 07068-1640

Christiana Mall, LLC
132 Christiana Mall
General Growth Mgmt Office
Newark, DE 19702-3202

Christmas Light Decorators
PO Box 21141
Mesa, AZ 85277-1141

Classis Imports
PO Box 75359
Chicago, IL 60675-5359

Colorado Dept of Revenue
1375 Sherman St
Denver, CO 80261-2200

Colorado Mills Mall Limited Partnership
c/o M.S. Management Associates Inc.,
225 West Washington St
Indianapolis, IN 46204-3438

Commercial Fire Inc.
2465 St. Johns Bluff Rd S
Jacksonville, FL 32246-2329

Commercial Fire, LLC
2465 ST. JOHNS BLUFF RD
JACKSONVILLE, FL 32246-2329

Complete Business Solutions
4755 Technology Way
Suite 109
Boca Raton, FL 33431-3338

Compliance HR
60 East 42nd
Suite 1810
New York, NY 10165-6237

(p)CONNECTICUT DEPARTMENT OF REVENUE SERVICES
ATTN COLLECTIONS UNIT - BANKRUPTCY TEAM
450 COLUMBUS BLVD STE 1
HARTFORD CT 06103-1837

Consolidated Service Distributors dba Jack&#
c/o David Kupetz
SulmeyerKupetz, APC
333 S. Grand Ave, Suite 3400
Los Angeles, CA 90071-1538

Continuum Games, Inc.
1240 Brookville Way
Suite J
Indianapolis, IN  46239-1099

Contract Datascan, LP
2941 Trade Center Dr
Ste 100
Carrollton, TX 75007-4602

Cookie Do, Inc.
51 Schermerhorn St
Unit 1L
Brookyn, NY 11201-5096

Cooper House LLC
c/o Jay Paul Company
Attn: Asset Manager
Four Embarcadero Center, Ste 3620
San Francisco CA 94111-4112

Country Club Plaza JV LLC
c/o The Taubman Company LLC, Attn: Gener
200 East Long Lake Road
Ste 300
Bloomfield Hills, MO 48304-2324

Crazy Aaron Enterprises
700 E Main St
Norristown, PA 19401-4122

Crocker Downtown Development Assoc
Crocker Downtown Dev Assoc
c/o Mizner Park
110 N. Wacker Drive
Chicago, FL 60606-1511

Crocker Downtown Development Associates
110 N. Wacker Drive
Chicago, FL 60606-1511

Crystal Temptations
67 Porete Avenue
North Arlington, NJ 07031-6734

Culture Fly
PO Box 88926
Chicago, IL 60695-1926

DM Merchandising Inc
835 N Church Court
ATTN:  David Redman
Elmhurst, IL 60126-1036

DM Merchandising, Inc.
835 N. Church Court
Elmhurst, IL 60126-1036

Daspin & Aument, LLP
227 West Monroe Street
Ste 3500
Chicago, IL 60606-5018

Daytona Beach Property Holdings Retail,
c/o International Speedway Corporation
One Daytona Blvd
Daytona Beach, GA 32114-1212

Daytona Beach Property Holdings Retail, LLC
c/o Kelsey Pincket, Corporate Counsel
International Motorsports Center
One Daytona Blvd.
Daytona Beach, FL 32114-1212

Delaware Moving and Storage
214 Bear Christiana Rd
Bear, DE 19701-1041

Design Master Assoc
3005 John Deere Road
Toano, VA 23168-9332

Destin Commons, c/o Berkadia Comm. Mortg
PO Box 865292
Orlando, FL 32886-5292

Destiny USA Holdings LLC
The Clinton Exchange,
4 Clinton Square
Syracuse, NY 13202-1078

Destiny USA Holdings, LLC
c/o Barclay Damon LLP
Attn:  Kevin M. Newman
Barclay Damon Tower, 125 E Jefferson St.
Syracuse, NY 13202-2515

Dickinson Wright
1850 North Central Avenue
Ste 1400
Phoenix, AZ 85004-4568

District of Columbia DOR
1101 4th SW
Ste 270
Washington, DC 20024-4457

(p)DIVERSIFIED LICENSING
750 KAPPOCK ST
APT 105
BRONX NY 10463-4616

Domain Northside Retail Property Owner LP
c/o Kevin S. Neiman, Esq.
Law Offices of Kevin S. Neiman, pc
999 18th Street, Suite 1230 S
Denver, CO 80202-2414

Domain Retail Property Owner, LP c/o End
Attn: General Manager
500 West 5th Street
Ste 700
Austin, TX 78701-3833

Donald K. Ludman
Brown & Connery, LLP
6 North Broad Street, Suite 100
Woodbury, NJ 08096-4635

Downtown At The Gardens Associates, Ltd.
c/o Downtown Gardens Mgmt Company LLC
5410 Edson Lane
Ste 220
Rockville, MD 20852-3195

Downtown Delray Holdings, LLC
9634 LaBelle Court
Delray Beach, FL 33446-3683

Durham Coca Cola Bottling Co.
3214 Hillsborough Rd.
Durham, NC 27705-3005

E&M Ice Cream I
701 Zerega Avenue
Bronx, NY 10473-1107

ESRT 1542 Third Avenue, LLC
c/o ESRT Management LLC
111 West 33rd St., 12 FL
New York, NY 10120-1220

EULER HERMES N.A as Agent for SUPER IMPULSE
800 Red Brook Blvd, #400C
Owings Mills, MD 21117-5173

Easton Town Center II, LLC
Lease Admin, c/o Steiner RE Services
4016 Townsfair Way
Ste 201
Columbus, OH 43219-6083

Ecolab Inc.
PO Box 100512
Pasadena, CA 91189-0512

EklecCo NewCo LLC
c/o Barclay Damon LLP
Attn:  Kevin M. Newman
Barclay Damon Tower, 125 E Jefferson St.
Syracuse, NY 13202-2515

Eklecco Newo LLC
The Clinton Exchange,
Four Clinbton Square
Syracuse, NY 13202-1078

Emie Zachary Park
13215 E Penn St #510
Whittier, CA 90602-1776

Empire A/C
22521 Sea Bass Dr
Boca Raton, FL 33428-4619

Ephemera Inc.
PO Box 490
Phoenix, OR 97535-0490

Euler Hermes N.A. Insurance Co
Agent of CTC Food International Inc
800 Red Brook Blvd
Owings Mills, MD 21117-5173

Euler Hermes N.A. Insurance Co.
Agent of Gadge USA, Inc
800 Red Brook Blvd
Owings Mills, MD 21117-5173

Euler Hermes, N.A. Insurance Co
Agent of Jelly Belly Candy Co
800 Red Brook Blvd
Owings Mills, MD 21117-5173

FAO Schwarz
Attn: General Counsel
15 Cushing
Irvine, CA 92618-4220

FEDEX (4970-6136-9)
PO Box 660481
Dallas, TX 75266-0481

Faggert & Frieden, P.C.
222 Central Park Avenue
Ste 1300
Virginia Beach, VA 23462-3031

Fashion Outlets II LLC
c/o Macerich Niagara LLC
401 Wilshire Blvd. #700
Attn: Legal Dept.
Santa Monica, CA 90401-1452

Fashion Outlets at Foxwoods, LLC
Legal Dept, c/o Tanger Properties LLC
3200 Northline Avenue
Ste 360
Greensboro, NC 27408-7612

FedEx Corporate Services Inc
3965 Airways Blvd
Module G, 3rd Floor
Memphis,, TN 38116-5017

Fedex
PO Box 660481
Dallas, TX 75266-0481

Flex Beauty Labs LLC
7512 Dr Phillips Blvd
Ste 50-232
Orlando, FL 32819-5420

Flexential
PO Box 530619
Atlanta, GA 30353-0619

Florida Dept of Revenue
5050 W Tennessee St
Tallahassee, FL 32399-0100

Florida Panthers Hockey Club, Ltd.
One Panthers Parkway
Attn: President, CEO
Sunrise, FL 33323-5315

Franchise Tax Board
Bankruptcy Section MS A340
PO BOX 2952
Sacramento, CA 95812-2952

Frank Recruitment Group
aka Nigel Frank International
110 Williams St
New York, NY 10038-3901

Frankford Candy LLC
9300 Ashton Road
Phildelphia, PA 19114-3532

Fred & Friends
Dept. Ch 17745
Palatine, IL 60055-7745

Fun Sweets, LLC.
3301 Electronics Way
Ste E
W Palm Beach, FL 33407-4636

GGB Candies
2600 Summer Blvd
Ste 112
Raleigh, NC 27616-5146

GGPLP REIT Services, LLC
SDS-12-1495
PO Box 86
Minneapolis, MN 55486-1495

Gadge USA, Inc.
3000 Marcus Ave
Ste 3 E 03
Lake Success, NY 11042-1007

Galerie
3380 Langley Drive
Hebron, KY 41048-9105

Garda CL Southeast Inc.
3209 Momentum Place
Chicago, IL 60689-5332

Gart Properties LLC
229 Milwaukee St
Ste 501
Denver, CO 80206

(p)GEORGIA DEPARTMENT OF REVENUE
COMPLIANCE DIVISION
ARCS BANKRUPTCY
1800 CENTURY BLVD NE SUITE 9100
ATLANTA GA 30345-3202

GlobalTranz Enterprises, Inc.
PO Box 203285
Dallas, TX 75320-3285

GlobalTranz Enterprises, LLC
7350 N. Dobson Road, Suite 130
Scottsdale, AZ 85256-2711

Gold Medal Products Co.
10700 Medallion Drive
Cincinnati, OH 45241-4807

Goulston & Storrs PC
Attn: WS-Legacy Place
400 Atlantic Avenue
Boston, MA 02110-3333

Grand Canal Shops II, LLC
c/o The Grand Canal Shoppes
350 N. Orleans St., Suite 300
Chicago, IL 60654-1607

Grapevine Mills Mall Ltd Partnertship
c/o M.S. Management Associates
225 West Washington Street
Indianapolis, IN 46204-3438

Great Lakes Coca-Cola Distribution
PO Box 809082
Chicago, IL 60680-9082

Great Number One, LLC
13506 Summerport Village Pkwy
Ste #233
Windermere, FL 34786-7366

Great Scot International Inc
8041 Arrowridge Blvd
UNIT I
Charlotte, NC 28273-5614

Green Rabbit Holdings, Inc.
135 Lundquist Dr
Braintree, MA 02184-5208

Green Rabbit Holdings, Inc.
Coface North America Insurance Company
650 College Road East, Suite 2005
Princeton, NJ 08540-6779

Guest Supply
300 Davidson Ave
Somerset, NJ 08873-4175

HCW Private Development, LLC
Brian J. LaFlamme
Summers Compton Wells LLC
8909 Ladue Road
St. Louis, MO 63124-2075

HCW Private Development, LLC
c/o Jones Lang Lasalle
100 Branson Landing Blvd
Branson, GA 65616-2097

HPC Gaslamp Square, LLC
c/o HP Inventors,
335 15 St
San Diego, CA 92101-7532

HPC Gaslamp Square, LLC
c/o HP Inventors,
9404 Genesee Avenue
Ste 330
La Jolla, CA 92037-1355

Hanna Design Group Inc
650 E Algonquin Rd
Ste 405
Schaumburg, IL 60173-3853

Hartman, Simons & Wood LLP
6400 Powers Ferry Road, NW Suite 400
Atlanta, GA 30339-2986

Headline
827 Valencia St
San Francisco, CA 94110-1736

Highwoods Properties, Inc.
4706 Broadway
Ste 260
Kansas City, MO 64112-1910

Hoffman's Commercial Group
5190 Lake Worth Road
Greenacres, FL 33463-3351

Hotlix Candy
PO Box 447
Grover Beach, CA 93483-0447

Hott Products - imports only
20700 Dearborn St
Chatsworth, CA 91311-5912

Hott Products Unlimited
20700 Dearborn St
Chatsworth, CA 91311-5912

IMI Huntsville LLC
PO Box 742117
Atlanta, GA 30374-2117

Idaho Dept of Revenue
PO BOX 36
Bosie, ID 83722-0410

Ilan Markus
545 Long Wharf Drive, Ninth Floor
New Haven, CT 06511-5960

Illinois Dept of Revenue
101 W Jefferson St
Springfield, IL 62702-5074

Indianola Pecan House, Inc.
PO Box 367
Indianola, MS 38751-0367

Intelligence Communications Systems LLC
64 South State St
Hackensack, NJ 07601-3932

Interior Development & Design
5100 N Dixie Hwy
Fort Lauderdale, FL 33334-4006

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Interstate Restoration LLC
6200 S Syracuse Way #230
Greenwood Village, CO 80111-4739

Island Dogs, LLC
11407 Cronhill Drive
Ste F
Owings Mills, MD 21117-6218

It'Sugar Atlantic City LLC
4960 Conference Way N
Ste 100
Boca Raton, FL 33431-3311

It'Sugar FLGC LLC
4960 Conference Way N
Ste 100
Boca Raton, FL 33431-3311

It'Sugar Holdings, LLC
401 E Las Olas Blvd
Ste 800
Fort Lauderdale, FL 33301-4284

J. Ted Donovan
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036-5600

J.Q. Nova, LLC
502 N. Eau Claire Ave
Madison, WI 53705-2804

JC Ehrlich
PO Box 13848
Reading, PA 19612-3848

JGB Vegas Retail Lessee, LLC
General Manager, c/o Grand Bazaar Shops
3635 Las Vegas Blvd S
Las Vegas, NV 89109-4363

JR Holdings, Inc.
3155 SW 10 St
Ste A
Deerfield Beach, FL 33442-5948

Jack's Candy
905 Murray Rd
East Hanover, NJ 07936-2200

Jelly Belly Candy Company
PO Box 742799
Los Angeles, CA 90074-2799

Jemal's Chinatown II, LLC
c/o Lincoln Property Company
950 F Street
Washington, DC 20004-1438

Jim Spinx
204 37th Ave N
Box 332
St Petersburg, FL 33704-1416

John Cappadoccia
9651 Captiva Circle
Boynton Beach, FL 33437-3637

Jones Lang LaSalle Americas, Inc.
Attention: President and CEO, Retail
3344 Peachtree Road NE
Atlanta, GA 30326-4801

Jones Lang LaSalle, Americas, Inc.
Attention: President and CEO, Retail,
3344 Peachtree Road NE, Suite 1200
Atlanta, GA 30326-4809

Jra Hhf Venture LLC
c/o Jeffrey R Anderson Real Estate, Inc.
3825 Edwards Road
Ste 200
Cincinnati, AL 45209-1288

KRG Atlantic Delray Beach, LLC
VP Of Property Ops c/o Kite Realty Group
30 South Meridian
Ste 1100
Indianapolis, IN 46204-3565

KRG Enterprises, Inc.
9901 Blue Grass Road
Philadelphia, PA 19114-1013

KRG PARKSIDE II, LLC
MARK A. BOGDANOWICZ
211 FULTON STREET, STE. 600
PEORIA, IL 61602-1350

KRG Parkside II, LLC
VP of Prop. Operations,Kite Realty Group
30 South Meridian
Ste 1100
Indianapolis, IN 46204-3565

KRG/ATLANTIC DELRAY BEACH, LLC
MARK A. BOGDANOWICZ
211 FULTON STREET, STE. 600
PEORIA, IL 61602-1350

KellyToy USA Inc
4811 S. Alameda St
Los Angeles, CA 90058-2805

Keystone Critical Systems Advisors
4050 Westgate Ave.
Suite 105
West Palm Beach, FL 33409-4732

Kidrobot, LLC
1505 Pearl St
Ste 106
Boulder, CO 80302-5469

Kids Focus/Namo Entertainment
16380 Roscoe Blvd
MOA Ste 120
Van Nuys, CA 91406-1221

Kierland Crossing, LLC
Attn: General Counsel
180 East Broad St
21 FL
Columbus, OH 43215

Kimmie Candy Company
405 Edison Way
Reno, NV 89502-4103

Knock Knock
1635-B Electric Ave.
Venice, CA 90291-4803

Koppers Chocolate
10 Exchange Place, Suite 2800
Jersey City, NJ 07302-4914

Koppers Chocolate, LLC
45 Jackson St
Cranford, NJ 07016-3503

L&M, LLC
Attn: Leo Chiakouris
54 North Market Street
Charleston, SC 29401-2003

Las Olas Confections and Snacks LLC
1815 Cypress Lake Dr
Orlando, FL 32837-8457

Law Firm of Ricki S. Friedman PLLC
Attn: Ricki S. Friedman, Esq.
1 Huckleberry Lane
Ste 1 Huckleberry Lane
Hewlett Harbor, NY 11557-2707

Legacy Place Properties LLC
33 Boylston Street
Ste 3000
Chestnut Hill, MA 02467-1731

Legacy Place Properties LLC
c/o Joseph H Baldiga, Esq
1800 West Park Drive #400
Westborough, MA 01581-3960

Leslie C. Heilman
c/o Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801-3023

Level 10
PO Box 88496
Chicago, IL 60680-1496

Liberty Center LLC
c/o Bayer Properties, Attn:Gen Counsel
2222 Arlington Avenue
Birmingham, AL 35205-4004

Liberty Center, LLC
Attn: John Taylor, General Manager
7100 Foundry Row, Suite 204
Liberty Township, OH 45069-7542

Liberty Coca-Cola Beverages Llc
PO Box 780810
Philadelphia, PA 19178-0810

Liberty Community Authority
PO Box 645434
Cincinnati, OH 45264-5434

Liberty Distribution Company LLC
290 E El Prado Court
Chandler, AZ 85225-0995

License 2 play
63 Colony Ln
Syosset, NY 11791-4723

Lifetime Brands Inc
12 Applegate Drive
Robbinsville NJ 08691
Robbinsville, NJ 08691-2342

Loomis Armored US, LLC
2500 Cityest Blvd
Ste 900
Houston, TX 77042-9000

Louisiana Department of Revenue
PO Box 66658
Baton Rouge, LA 70896-6658

Louisiana Dept of Revenue
617 North Third Street
Baton Rouge, LA 70802-5432

Loungefly, Inc.
2802 Wetmore Ave
Everett, WA 98201-3569

Lseven Inc.
2830 W State Road 84
Ste 104
Fort Lauderdale, FL 33312-4826

MASSACHUSETTS DEPARTMENT OF REVENUE
Attn: Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114-9564

MCA Promenade Owner LLC
c/o Hill Partners, Inc.
2201 South Boulevard
Ste 400
Charlotte, NC 28203-5158

MMA Securities LLC
2300 Renaissance Blvd.
King of Prussia, PA 19406-2772

MOAC Mall Holdings LLC
Attn: Legal Dept.,
60 East Broadway
Bloomington, NY 55425-5550

MV Rolling Oaks Retail, LLC
Attn: Manager of Retail Leasing
One Town Center Road
Ste 600
Boca Raton, FL 33486-1040

Madison Bay Street LLC
2001 Pennsylvania Avenue N.W.
10 FL
Washington, CA 20006

Mall at Gurnee Mills, LLC
c/o M.S. Management Associates Inc.,
225 West Washington Street
Indianapolis, IN 46204-3438

Mall at Katy Mills, L.P.
c/o M.S. Management Associates Inc.
225 West Washington Street
Indianapolis, IN 46204-3438

Market Street Retail South, LLC
1330 Boylston Street
Ste 212
Chestnut Hill, MA 02467-2111

Market Street South LLC
c/o Joseph H Baldiga Esq
1800 West Park Dr #400
Westborough, MA 01581-3960

Markham & Stein Unlimited LLC
2424 S Dixie Highway
Miami, FL 33133-3167

Maryland Dept of Revenue
310 W Preston Street
Room 206
Baltimore, MD 21201-2384

Massachusetts Dept of Revenue
200 Arlington St
Chelsea, MA 02150-2301

Master Toys & Novelties, Inc.
2355 E 37 St
Los Angeles, CA 90058-1404

(p)MATTHEW ROSSON
1816 NORTH M STREET
LAKE WORTH FL 33460-6625

Maud Borup Inc
2500 Hwy 88 Ste 210
Minneapolis, MN 55418-4228

Melville Candy Corp
70 Finnell Dr
Unit 16
Weymouth, MA 02188-1124

Miami 26, LLC
c/o Goldman Properties
2214 NW 1st Place
2 FL
Miami, FL 33127

Michigan Dept of Revenue
430 W Allegan St
Lansing, MI 48933-1592

Minnesota Dept of Revenue
600 Robert St N
Saint Paul, MN 55101

Missouri Dept of Revenue
301 W Hight St
Jefferson City, MO 65101-1517

Mizner Park
327 Plaza Real, Suite 355
Boca Raton, FL 33432-3944

Mondelez Global LLC
Attn: Wesley Saraceni
Mondelez International
100 DeForest Avenue
East Hanover, NJ 07936-2813

Morinaga America Inc
18552 Macarthur Blvd
Ste 360
Irvine, CA 92612-1216

Morinaga America, Inc.
4 Park Plaza, Suite 750
Irvine, CA 92614-5211

NEST International, Inc.
Brown & Connery, LLP
Attn: Donald K. Ludman, Esq.
6 North Broad Street, Suite 100
Woodbury, NJ 08096-4635

(p)STATE OF NEW JERSEY
DIVISION OF TAXATION BANKRUPTCY UNIT
PO BOX 245
TRENTON NJ 08646-0245

Nassau Candy
530 W John St
Hicksville, NY 11801-1039

Nathan Y. Salazar
9018 Perma Ln
San Antonio, TX 78224-2137

Navy Pier, Inc.
Attn: President/CEO and General Counsel
600 East Grand Avenue
Chicago, IL 60611-6335

Nest International
550 Cresent Blvd
Ste 5
Gloucester City, NJ 08030-2754

Nevada Dept of Revenue
555 E. Washington Ave
Suite 1300
Las Vegas, NV 89101-1046

New Jersey Dept of Revenue
125 W State St
Trenton, NJ 08608-1101

New Orleans Dept of Revenue
617 North Third Street
Baton Rouge, LA 70802-5431

New Rivercenter Mall II LP
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036-5600

New York Dept of Revenue
Po Box 61000
Albany, NY 12212-1000

Nigel Frank International
110 Williams St
Fr 21
New York, NY 10038-3901

North Carolina Department of Revenue
Bankruptcy Unit
P.O. Box 1168
Raleigh, NC 27602-1168

North Carolina Dept of Revenue
501 N Wilmington St
Raleigh, NC 27604-8002

North East Contractors, Inc.
87 Blue Hen Dr
Newark, DE 19713-3405

North Star Mall LLC
7400 San Pedro
Suite 224
General Growth Mgmt Office
San Antonio, TX 78216-8323

Odd Sox Distribution LLC
1277 South Highland
Clearwater, FL 33756-4384

Ohio Department of Taxation Bankruptcy Divis
P.O. Box 530
Columbus, OH 43216-0530

Ohio Dept of Revenue
4485 Northland Ridge Blvd
Columbus, OH 43229-5404

Opry Mills Mall Limited Partnership
c/o M.S. Management Associates Inc.,
225 West Washington Street
Indianapolis, IN 46204-3438

Orlando Outlet Owner LLC
c/o Simon Property Group
225 West Washington St.
Indianapolis IN 46204-3435

Paul Bundonis
616 Drexel Rd
Swarthmore, PA 19081-2511

Pembroke Lakes Mall LLC
11401 Pines Boulevard
Suite 546
General Growth Mgmt Office
Pembroke Pines, FL 33026-4106

Pez Candy, Inc.
PO Box 30087
New York, NY 10087-0087

Phoenix Premium Outlets, LLC
Lease Services, c/o Simon Property Group
225 West Washington ST
Indianapolis IN 46204-3438

Pier Renaissance, LP
Karen Worman, Regional VP Finance
2100 Pacific Avenue
Atlantic City, NJ 08401-6612

Pier at Caesars LLC
Karen Worman, Regional VP Finance
2100 Pacific Avenue
Atlantic City, NJ 08401-6612

Platinum Parking East LLC
401 Biscayne Blvd
Miami, FL 33132-1924

Play Visions, Inc.
19180 144 Ave NE
Woodinville, WA 98072-4371

Plaza Bonita LLC
c/o Ilan Markus, Esq.
Barclay Damon LLP
545 Long Wharf Drive, Ninth Floor
New Haven, CT 06511-5960

Plaza Bonita, LP
Attn: Legal Dept, c/o Westfield, LLC
11601 Wilshire Blvd
11 FL
Los Angeles, CA 90025

Pop Sockets LLC
3033 Sterling Circle
Boulder, CO 80301-2591

Print Appeal, Inc.
11220 Pagemill Rd.
Dallas, TX 75243-8313

Professional Pr
PO Box 1840
Santa Ana, CA 92702-1840

Project Service LLC
c/o Richard C Buturla
75 Broad St
Milford, CT 06460-3331

Promenade Enterprises, L.P.
127 Esparta Way
Santa Monica, CA 90402-2138

Pyramid Management Group, LLC
The Clinton Exchange,
4 Clinton Square
Syracuse, NY 13202-1078

Quadient Leasing Usa, Inc
PO Box 123682
Dept 3682
Dallas, TX 75312-3682

Quiet Waters Busisns Park, LLC
c/o Grubb & Ellis Management Services, I
8200 NW 33rd Street
Ste 107
Doral, FL 33122-1942

R Baker & Son All Industrial Svcs Inc NJ
190 Boundary Rd
Marlboro, NJ 07746-1058

RTL Atlantic Town Center LLC
c/o Morgan Stanley Real Estate Investing
3424 Peachtree Road Ne
9 FL
Atlanta, GA 30326

Raindrops Enterprise, LLC
1801 NE 123Rd St
Ste 313
North Miami, FL 33181-2883

Raymond Patella
675 Morris Avenue
Springfield, NJ 07081-1525

Rexel Capitol Light
PO Box 418453
Boston, MA 02241-8453

Richard  C Whitaker
55 N. Frog Pond Rd.
Lexington, IN 47138-8904

Ripple Junction
P.O. Box 932056
Cleveland, OH 44193-0007

Rishi Kapoor
1270 Avenue of the Americas
24th Floor
New York, NY 10020-1806

Riverwalk Marketplace (New Orleans), LLC
Gen Counsel, c/o The Howard Hughes Corp
13355 Noel Road
1 Galleria Tower
Dallas, TX 75240

Rosenthal & Rosenthal, Inc.
1370 Broadway, 3rd Floor
New York, NY 10018-7399

SFDS LLC
239 Java Street
Brooklyn, NY 11222-1805

SHL Holdings, Inc.
401 E Las Olas Blvd
Ste 800
Fort Lauderdale, FL 33301-4284

SOCM I, LLC
130 Yantis
Ste 200
Aliso Viejo, CA 92656-2691

SRMF Town Square Owner LLC c/o Fairbourn
Attn: George Manojlovic
1 East Wacker Drive
#2900
Chicago, IL 60601-2026

STATE OF FLORIDA - DEPARTMENT OF REVENUE
P.O. BOX 6668
TALLAHASSEE, FL 32314-6668

Safety Park
13420 Beach Ave
Marina Del Rey, CA 90292-5624

Sandblast by Creative Concepts, Inc
1500 Georgia Road
Ste A
Irondale, AL 35210-1147

Schneider National Carriers, Inc.
PO Box 281496
Atlanta, GA 30384-1496

Sean Sager Creative
5051 S Santa Fe Ave
Los Angeles, CA 90058-2123

Secureworks
PO Box 534583
Atlanta, GA  30353
Atlanta, GA 30353-4583

Secureworks Inc
1 Concourse Pkwy Ne
Suite 500
Atlanta, GA 30328-5346

Secureworks Inc.
PO Box 534583
Atlanta, GA 30353-4583

Sentinel Systems LLC
38 Windbeam Lane
Ringwood, NJ 07456-1237

Set & Stage Creative
5051 S Santa Fe Ave
BUilding B
Los Angeles, CA 90058-2123

Shops At Sunset Mall Owner, LLC
c/o M.S. Management Associates Inc.,
225 West Washington St
Indianapolis, IN 46204-3438

Sin City Suckers
3330 West Hacienda Blvd.
# 409
Las Vegas, NV 89118-1719

Singer Coney, LLC
c/o Joseph Lee Matalon, Esq.
1602 Lawrence Avenue, Suite 110
Ocean, NJ 07712-3434

Singer Coney, LLC
c/o Thor Equities, LLC,
25 West 39 St
New York, NY 10018-3805

Sirina Protection Systems Corp.
151 Herricks Road, Suite 103
Garden City Park, NY 11040-5200

So Carolina Dept of Revenue
1452 W Evans St
Ste 100
Florence, SC 29501-3391

SolarWinds
PO Box 730720
Dallas, TX 75373-0720

South Carolina Dept of Revenue
1452 W Evans St
Ste 100
Florence, SC 29501-3391

South Carolina Dept of Revenue
3713 Renee Dr
Myrtle Beach, SC 29579-4109

Southpoint Mall, LLC
c/o The Streets at Southpoint,
350 N. Orleans St
Ste 300
Chicago, IL 60654-1607

Spin Master, Inc.
300 International Dr
Williamsville, NY 14221-5781

Squire Boone Village, Inc.
PO Box 711
New Albany, IN 47151-0711

State of Michigan Department of Treasury
3030 W. Grand Blvd. Ste. 10-200
Detroit, MI 48202-6030

State of Minnesota, Dept of Revenue
POB 64447 BKY
St Paul, MN 55164-0447

Station Park CenterCal LLC
c/o Centercal Properties, LLC
1600 East Franklin Ave.
El Segundo, IL 90245-4337

Stephanie Logan
1885 Wilson Avenue, Suite 204
Toronto Ontario
Canada
,

Stonedog Studios
17 Bannard St
#12
Freehold, NJ 07728-1686

Street Retail, Inc.
c/o Federal Realty Investment Trust,
1626 East Jefferson St
Rockville, MD 20852-4041

Stretched Politics LLC
2845 S Imperial St
Salt Lake City, UT 84106-3644

Stribbons Inc
2921 W Cypress Creek Rd
#101
Fort Lauderdale, FL 33309-1755

Summerlin Center, LLC
Gen Counsel, c/o The Howard Hughes Corp
13355 Noel Road
1 Galleria Tower
Dallas, TX 75240

Sundance East Partners, L.P.
Attn: Property Manager,
201 Main Street
Ste 700
Fort Worth, TX 76102-3134

Sunrise Mills (MLP) Limited Partnership
c/o M.S. Management Associates Inc.,
225 West Washington St
Indianapolis, IN 46204-3438

Super Impulse Usa LLC
10 Canal Street
Ste 330
Bristol, PA 19007-3900

Sweets Indeed, LLC
1032 E Edna Place
Covina, CA 91724-2411

TDOR c/o Attorney General
PO Box 20207
Nashville, TN 37202-4015

(p)DE LAGE LANDEN FINANCIAL
ATTN LITIGATION & RECOVERY
1111 OLD EAGLE SCHOOL ROAD
WAYNE PA 19087-1453

TY Inc
POB 5377
Oak Brook IL 60522-5377

TY Inc.
PO Box 5934
Chicago, IL 60680-5934

Tanger National Harbor, LLC
Legal Dept, c/o Tanger Properties LP
3200 Northline Avenue
Ste 360
Greensboro, NC 27408-7612

Tanger Outlets Deer Park, LLC
Attn: Legal Admin., c/o Tanger Outlets
3200 Northline Ave
Ste 360
Greensboro, NC 27408-7612

Tanger Properties Limited Partnership
Lockbox #414225) MA5-527-02-07
2 Morrissey Blvd
Dorchester, MA 02125-3312

Tarcor Inc.
1885 Wilson Avenue, Suite 204
Toronto Ontario
Canada
M9M 1A2

Tarcor, Inc
167 Bentoak Cres
Thornhill
Ontario L4J8S6
CANADA

Taste Beauty LLC
PO Box 850
Edison, NJ 08818-0850

Taste of Nature, Inc
2828 Donald Douglas Loop N
Ste A
Santa Monica, CA 90405-2966

Taubman Auburn Hills Associates LP
200 East Long Lake Road
Bloomfield Hills, MI 48304-2360

(p)TENNESSEE DEPARTMENT OF REVENUE
ATTN COLLECTION SERVICES DIVISION BANKRUPTCY UNIT
P O BOX 190665
NASHVILLE TN 37219-0665

Texas Comptroller of Public Accounts
Office of the Attorney General
POB 12548, MC-008
Austin  TX 78711-2548

Texas Dept of Revenue
PO Box 13528
Capital Station
Austin, TX 78711-3528

The Cannery Row Company, L.P.
555 Abrego Street,
Monterey, CA 93940-3229

The Irvine Company LLC
Attention: Accounting Department,
101 Innovation
Irvine, CA 92617-3040

The Orb Factory Ltd
350 Wiconisco St
Millersburg, PA 17061-8020

The South Bend Chocolate Co Inc
3300 West Sample St
South Bend, IN 46619-3077

The Terminix International Company Limited P
Terminix International
PO Box 1000, Dept. 916
Memphis, TN 38148-0001

The Weeks Lerman Group LLC
58-38 Page Place
Maspeth, NY 11378-2235

Thumbs Up (UK) Limited
Braintree Road
Ruislip HA4 0EJ
ENGLAND

Tokidoki, LLC
5655 W Adams Blvd
Los Angeles, CA 90016-2525

Top Trenz Inc
85 Air Park Dr
Unit 2
Ronkonkoma, NY  11779-9207

Trade Fixtures
32857 Collection Center Dr
Chicago, IL 60693-0328

Trau & Loevner Operating Co Inc
858 Braddock Ave
Braddock, PA 15104

Triangle Sign & Service LLC
PO Box 24186
Baltimore, MD 21227-0686

UCC Distributing, Inc.
2580 Pioneer Ave
#A
Vista, CA 92081-8426

Universal CityWalk
Sr. VP, CityWalk and Sponsorship
100 Universal City Plaza
#5511, 6 Floor
Universal City, CA 91608

Universal Studios LLC dba Universal CityWalk
Universal Studios LLC, Attn:  Legal & Bu
100 Universal City Plaza Building 1155-6
Universal City, CA 91608-1002

Ut Brands LLC
85 Enterprise
Ste 310
Aliso Viejo, CA 92656-2504

V F Mall LLC
c/o Ilan Markus, Esq.
Barclay Damon LLP
545 Long Wharf Drive, Ninth Floor
New Haven, CT 06511-5960

VF Mall LLC
Attn: Legal Dep c/o Westfield, LLC
11601 Wilshire Boulevard
11 FL
Los Angeles, CA 90025

Variety Distributions Inc.
609 7 St
Harlan, IA 51537-1064

Vegas Image
3060 E Post Rd
#140
Las Vegas, NV 89120-4449

Vestar DRM-OPCO, LLC
Attn: President c/o Vestar Development
2425 East Camelback Rd
Ste 750
Phoenix, AZ 85016-4296

Victoria Gardens Mall, LLC
Attn: Associate General Counsel, Leasing
600 Superior Avenue East
Ste 1500
Cleveland, OH 44114-2619

Victory Retail I, L.P.,
c/o Cielo Property Group
2919 Commerce ST., Ste 595
Dallas, TX 75226-1610

Virginia Dept of Revenue
PO Box 1115
Richmond, VA 23218-1115

W2001ZI15 CPW Retail Sub, LLC
770 Lexington Avenue
4th FL
New York, NY 10065-8165

Walker Venice Properties, LLC
5417 Godbey Drive
La Canada, CA 91011-1835

Washingtonian Lake L.L.C.
General Counsel, c/o The Peterson Compan
12500 Fair Lakes Cir
Ste 400
Fairfax, VA 22033-3804

Watchitude LLC
24A Joyce Klimer Ave N
New Brunswick, NJ 08901-1950

Whiskey River Soap Co
434 Mill Race Rd
Granville, OH 43023-9531

Wisconsin Dept of Revenue
2135 Rimrock Rd
Madison, WI 53713-1443

(p)WONDERLIC  INC
ATTN YVONNE FLETCHER
3401 SALTERBECK COURT
SUITE 201
MOUNT PLEASANT SC 29466-7168

YAM Westgate
c/o YAM Properties, LLC
15750 N. Northsight Blvd.
Scottsdale, AZ 85260-1937

YESCO Financial Solutions LLC
2401 Foothill Drive
Salt Lake City, UT 84109-1479

Yesco
PO Box 11676
Tacoma, WA 98411-6676

Joshua W Dobin
200 S Biscayne Blvd # 3200
Miami, FL 33131-5323

Michael S Budwick Esq
200 S Biscayne Blvd #3200
Miami, FL 33131-5323

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Alabama Dept of Revenue
50 N Ripley St
Montgomery, AL 36130

Anastasia Confections Inc.
1815 Cypress Lake Dr
Orlando, FL 32837

Connecticut Department of Revenue Services
Collections Unit - Bankruptcy Team
450 Columbus Blvd. Ste. 1
Hartford, CT 06103

(d)Connecticut Dept of Revenue
450 Columbus Blvd
Ste 1
Hartford, CT 06103

Diversified Licensing Group
750 Kappock St
# 105
Bronx, NY 10463

Georgia Dept of Revenue
1800 Century Blvd NE
Atlanta, GA 30345

Matthew Rosson
1816 North M St
Lake Worth, FL 33460

NJ Division of Taxation
PO Box 245
Trenton, NJ 08695-0245

TGI Office Automation, LLC
PO Box 41602
Philadelphia, PA 19101-1602

Tennessee Dept of Revenue
500 Deaderick St
Nashville, TN 37242

Wonderlic Inc.
3401 Salterbeck Ct
Ste 201
Mount Pleasant, SC 29466

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

(d)Ace-Endico Corporation
80 International Blvd
Brewster, NY 10509-2344

(d)Broward County
c/o Records, Taxes & Treasury
Attn: Bankruptcy Section
115 S. Andrews Ave. A-100
Ft. Lauderdale, FL 33301-1888

(u)Country Club Plaza JV LLC
**DELETED PER ECF #32**

(d)Empire A/C LLC
22521 Sea Bass Dr
Boca Raton, FL 33428-4619

(u)G&J Holdings, LLC
**DELETED PER ECF #32**

(u)GGB of Raleigh LLC
**DELETED PER ECF #32**

(d)It'Sugar Holdings, LLC
401 E. Las Olas Blvd.
Suite 800
Fort Lauderdale, FL 33301-4284

(d)KRG/Atlantic Delray Beach, LLC
VP of Property Ops c/o Kite Realty Group
30 South Meridian
Ste 1100
Indianapolis, IN 46204-3565

(u)Loomis Armored US, LLC
**DELETED PER ECF #32**

(u)Nathan Y. Salazar
**DELETED PER ECF #32**

(u)Project Service LLC
**DELETED PER ECF #32**

(u)Spk/G&J Holdings, LLC
**DELETED PER ECF #32**

(d)Sweets Indeed, LLC
1032 E. Edna Place
Covina, CA 91724-2411

(u)Tuscon Mall L.L.C
4500 N. Oracle Road
General Growth Mgmt Office

(u)Utah Dept of Revenue
210 North 1950
Master File
West Salt Lake City, UT 84134

(u)Vestar CPT Tempe Marketplace LLC
**DELETED PER ECF #32**

(u)Yesco Signs LLC
**DELETED PER ECF #32**

(u)Ziffity Solutions Pvt Limited
184-187 Th Floor Block1
Unit #1 Temple Steps
Chennal
TAMLI NADAU

End of Label Matrix
Mailable recipients    399
Bypassed recipients     19
Total                  418

Label Matrix for local noticing
113C-1
Case 20-20259-RAM
Southern District of Florida
Miami
Wed May 26 15:37:12 EDT 2021

BBMK Contracting, LLC
c/o Blaxberg, Grayson, Kukoff & Forteza
25 SE 2nd Ave
Ste 730
Ste 730
Miami, FL 33131-1696

Broadway Mercer Associates
Greenberg Traurig P.A.
333 SE 2nd Ave Suite 4000
Miami, FL 33131-2183

Broadway Mercer Associates
c/o K&L Gates LLP
Attn.: Daniel M. Eliades
One Newark Center
One Newark Center
Newark, NJ 07102-5235

Brookfield Properties Retail, Inc.
Kristen N. Pate, Esq
350 N. Orleans St, Suite 300
Chicago, IL 60654-1607

Broward County
c/o Records, Taxes & Treasury
Attn: Bankruptcy Section
115 S. Andrews Ave. A-100
Ft. Lauderdale, FL 33301-1888

CRG Financial LLC
100 Union Avenue, Suite 240
Cresskill, NJ 07626-2137

Cooper House LLC, c/o Jay Paul Company
350 California Street
Suite 1905
San Francisco, CA 94104-1432

Daytona Beach Property Holdings Retail, LLC
c/o Ryan E. Davis, Esq.
Winderweedle, Haines, Ward & Woodman, PA
329 Park Avenue North
Second Floor
Winter Park, FL 32789-7408

ERST 1542 Third Avenue, LLC
c/o Brian S. Behar
1855 Griffin Road, Suite A-350
Ft. Lauderdale, FL 33004-2210

Federal Realty Investment Trust
c/o Joaquin J. Alemany, Esq.
Holland & Knight LLP
701 Brickell Ave., Ste 3300
Miami, FL 33131-2898

Hill Partners, Inc., as agent for MCA Promen
c/o Fender, Bolling and Paiva, P.A.
Chad S. Paiva
6526 S. Kanner Highway, #376
6526 S. Kanner Highway, #376
Stuart, FL 34997-6396

IMI Huntsville LLC
c/o Eric S. Golden, Esq.
Burr & Forman LLP
200 S. Orange Ave., Suite 800
Orlando, FL 32801-6404

Indianola Pecan House Inc
PO Box 367
Indianola, MS 38751-0367

Irvine Company LLC
c/o Ernie Zachary Park
13215 E Penn Street #510
Whittier, CA 90602-1776

It'Sugar Atlantic City LLC
4960 Conference Way N #100
Boca Raton, FL 33431-3311

It'Sugar FL I LLC
19501 Biscayne Blvd Suite 1313
Aventura, FL 33180-2372

It'Sugar FLGC LLC
4960 Conference Way N #100
Boca Raton, FL 33431-3311

It'Sugar LLC
4960 Conference Way N #100
Boca Raton, FL 33431-3311

MV Rolling Oaks Retail,LLC
Lowndes Law Firm
215 N. Eola Drive
Orlando, FL 32801-2028

(p)MIAMI DADE COUNTY TAX COLLECTOR
ATTN WENDY MONTOYA
200 NW 2ND AVENUE
MIAMI FL 33128-1733

Minnesota Department of Revenue
POB 64447-BKY
St Paul, MN 55164-0447

NEST International, Inc.
Donald K Ludman, Esq
6 North Broad Street #100
Woodbury, NJ 08096-4635

Palm Beach County Tax Collector
c/o Hampton Peterson, Esq.
POB 3715
West Palm Beach, FL 33402-3715

Playvisions Inc
19180- 144th Ave NE
Woodinville, WA 98072-4371

Pyramid Management Group, LLC
Barclay Damon LLP
c/o Ilan Markus
545 Long Wharf Drive, Ninth Floor
New Haven, CT 06511-5960

SHL Holdings, Inc.
c/o Eric J. Silver, Esq.
Stearns Weaver Miller, et al
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL 33130-1536

Simon Property Group, Inc.
Attn: RonaldM. Tucker, Esq.
225 West Washington Street
Indianapolis, IN 46204-3438

Singer Coney, LLC
c/o Ilyse M. Homer, Esq.
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131-5319

(c)STATE OF CONNECTICUT, DEPT. OF REVENUE SER
OFFICE OF THE ATTORNEY GENERAL
165 CAPITOL AVE STE 3000
HARTFORD CT  06106-1667

Stribbons
2921 W Cypress Creek Rd #101
Ft. Lauderdale, FL 33309-1755

TN Dept of Revenue
c/oTN Attorney General's Office,
Bankruptcy Division
PO Box 20207
Nashville, TN 37202-4015

Taubman Landlords
c/o Andrew S Conway
200 East Long Lake Road
Suite 300
Bloomfield Hills, MI 48304-2324

The Macerich Company
c/o Joaquin J. Alemany, Esq.
Holland & Knight LLP
Holland & Knight LLP
Miami, FL 33131

Tokidoki LLC
5655 W Adams Blvd
Los Angeles, CA 90016-2525

Victory Retail I, L.P.
c/o Alexander Ricks PLLC
1420 E 7th Street, Ste 100
Charlotte, NC 28204-2408

Washington Prime Group Inc.
c/o Frost Brown Todd LLC
301 East Fourth St
Cincinnati, OH 45202-4245

Westfield, LLC
Barclay Damon LLP
c/o Ilan Markus
545 Long Wharf Drive, Ninth Floor
New Haven, CT 06511-5960

117 Duval, LLC
7820 Peters Road
E-104
Plantation, FL 33324-4019

AAC HP Realty, LLC
c/o Joshua Bradley
Rosenberg Martin Greenberg LLP
25 S. Charles Street, 21st Floor
Baltimore, MD 21201-3322

ARIZONA DEPARTMENT OF REVENUE
Office of the Arizona Attorney General
c/o Tax, Bankruptcy and Collection Sct
2005 N Central Ave, Suite 100
Phoenix, AZ 85004-1546

Aventura Mall Venture
Legal Dept, c/o Turnberry Aventura Mall
19501 Biscayne Boulevard, Suite 400
Aventura, FL 33180-2337

Aventura Mall Ventures
Mario A. Romine, Esq.
Turnberry Associates
19501 Biscayne Blvd. Suite 400
Aventura, FL 33180-2337

BBMK CONTRACTING, LLC
c/o Ian J. Kukoff, Esq.
Blaxberg, Grayson, Kukoff & Forteza, P.A
25 SE 2nd Ave, Suite 730
Miami, FL 33131-1696

Bayside Marketplace LLC
Goldberg Weprin Finkel Goldstein LLC
1501 Broadway, 22nd Floor
New York, NY 10036-5600

Blue Q Corp
703 West Housatonic St
Pittsfield. MA 01201-6649

Bobbleheads.com LLC
5885 Shiloh Rd Ste 101
Alpharetta GA 30005-2217

Boston America Corp.
55 Sisth Rd Suite 8
Woburn MA 01801-1746

COUNTRY CLUB PLAZA JV LLC
200 E LONG LAKE ROAD
SUITE 300
BLOOMFIELD HILLS, MI 48304-2324

Destin Commons, Ltd.
Mario A. Romine, Esq.
Turnberry Associates
19501 Biscayne Blvd. Suite 400
Aventura, FL 33180-2337

Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

ESRT 1542 Third Avenue, LLC
c/o Brian S. Behar, Esq.
Behar, Gutt & Glazer, PA
1855 Griffin Road, Suite A-350
Ft. Lauderdale, FL 33004-2210

Excel Gardens LLC
William McDonald, Esq.
Shopcore Properties, L.P.
10920 Via Frontera, Suite 220
San Diego, CA 92127-1734

Executive Safe and Security Corporation Amph
ATTN: Anita Cooke
10722 Edison Court
Rancho Cucamoga, CA 91730-4845

Fashion Outlets II LLC
Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Fashion Outlets at Foxwoods, LLC
c/o Tanger Outlet Centers
3200 Northline Avenue, Suite 360
Greensboro, NC 27408-7612
Attn: Kim Statham

Florida Department of Revenue
Bankruptcy Section
PO Box 6668
Tallahassee, FL 32314-6668

Great Number One, LLC.
14422 Shoreside Way
Suite #110-181
Winter Garden, FL 34787-4938

HPC Gaslamp Square, LLC
Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Heather A. Jamison
Burr & Forman LLP
420 N. 20th Street, Suite 3400
Birmingham, AL 35203-3284

IMI Huntsville, LLC
c/o Barry O'Connor
11401 Century Oaks Terrace, Suite 240
Austin, TX 78758-8710

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

It'Sugar LLC
4960 Conference Way N
Ste 100
Boca Raton, FL 33431-3311

J. Ted Donovan
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036-5600

Meridian CenterCal, L.L.C.
Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Minnesota Dept of Revenue Taxes
600 N Robert St
Mail Station 4115
St Paul, MN 55146-4115

(p)STATE OF NEW JERSEY
DIVISION OF TAXATION BANKRUPTCY UNIT
PO BOX 245
TRENTON NJ 08646-0245

New Rivercenter Mall II LP
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036-5600

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

PPF RTL Atlantic Town Center, LLC
Cornell Holmes, General Manager
1380 Atlantic Drive #14250
Atlanta, GA 30363-1146

Phoenix Diversified Group Inc
53 Indian Lane East
Towaco, NJ 07082-1025

Quiet Waters Business Park, LLC
Alston & Bird LLP c/o David Wender
1201 W. Peachtree Street
Atlanta, GA 30309-3449

Rexel USA Inc. d/b/a Capitol Light
c/o Daniel J. Goldberg Esq.
255 State Street 7th Floor
Boston MA 02109-2618

Ronald E. Gold
Frost Brown Todd LLC
301 East Fourth Street
Cincinnati, OH 45202-4257

SDQ Fee, LLC
Ronald E. Gold
Frost Brown Todd LLC
301 East Fourth Street
Cincinnati, OH 45202-4257

SOCM I, LLC
Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Sean Sager Creative
5051 S Santa Fe Ave
Los Angeles, CA 90058-2123

Set & Stage Creative
5051 S Santa Fe Ave, Building B
Los Angeles, CA 90058-2123

State of Minnesota Department of Revenue
POB 64447 - BKY
St Paul, MN 55164-0447

Station Park CenterCal, LLC
Dustin P. Branch, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

StoneDog Studios
17 Bannard St # 2
Frehold NJ 07728-1686

Sundance East Partners, L.P.
c/o Reed Smith LLP /ATTN: Omar J. Alaniz
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201-2640

TAUBMAN AUBURN HILLS ASSOCIATES LP
200 EAST LONG LAKE ROAD
SUITE 300
BLOOMFIELD HILLS, MI 48304-2324

TDOR c/o Attorney General
PO Box 20207
Nashville, TN 37202-4015

Tanger National Harbor LLC
c/o Tanger Outlet Centers
3200 Northline Avenue, Suite 360
Greensboro, NC 27408-7612
Attn:  Kim Statham

Tanger Outlets Deer Park, LLC
c/o Tanger Outlet Centers
3200 Northline Avenue, Suite 360
Greensboro, NC 27408-7612
Attn:  Kim Statham

Tanger Properties Limited Partnership
c/o Tanger Outlet Centers
3200 Northline Avenue, Suite 360
Greensboro, NC 27408-7612
Attn:  Kim Statham

Yesco LLC
6725 West Chicago Street
Chandler, AZ 85226-3335

c/o Ian J. KUkoff, Esq.
Blaxberg Grayson Kukoff & Forteza, P.A.
25 SE Second Avenue, Suite 730
Miami, Florida 33131-1696

Bradford J. Sandler
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, NY 10017-2024

Bradsford J. Sandler
Pachulski Stang Ziehl & Jones LLP
919 North Market Street
17th Floor
Wilmington, DE 19801-3034

Brian R Kopelowitz
One West Las Olas Blvd
#500
Fort Lauderdale, FL 33301-1928

Hayley R. Winograd
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, NY 10017-2024

James C. Moon Esq
200 S. Biscayne Blvd # 3200
Miami, FL 33131-5323

Joshua W Dobin
200 S Biscayne Blvd # 3200
Miami, FL 33131-5323

Laurel D. Roglen
Ballard Spahr LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3023

Leslie C. Heilman
Ballard Spahr LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3023

Michael J. Viscount Jr.
Fox Rothschild LLP
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401-7227

Michael R. Herz
Fox Rothschild LLP
49 Market Street
Morristown, NJ 07960-5122

Michael S Budwick Esq
200 S Biscayne Blvd #3200
Miami, FL 33131-5323

Paul J. Labov
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, NY 10017-2024

Ricki S. Friedman
1 Huckleberry Lane
Hewlett Harbor, NY 11557-2707

Robert LeHane
Kelly Drye & Warren LLP
101 Park Avenue, 29th Floor
New York, NY 10178-3099

Sean T. Wilson
Kelley Drye & Warren LLP
101 Park Avenue, 27th Floor
New York, NY 10178-3099

Steven W. Golden
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, NY 10017-2024

Teri M. Kaye
Daszkal Bolton LLP
2401 NW Boca Raton Blvd
Boca Raton, FL 33431-6632

Troy Taylor
c/o Algon Group
2457 Collins Ave PH 2
Miami Beach, FL 33140-4786

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Miami-Dade County Tax Collector
Peter K. Cam, Tax Collector
c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430
Miami, FL 33128

(d)Miami-Dade County Tax Collector
Attn: Bankruptcy Unit
200 NW 2nd Avenue, Suite 430
Miami, Florida 33128

NJ Division of Taxation
PO Box 245
Trenton, NJ 08695-0245

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

State of Connecticut, Dept. of Revenue Servi
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106

# First Amended Schedule of Assumed Executory Contracts and Unexpired Leases

| Store # | Counterparty | Debtor | Description of Contract | Proposed Cure Amount | Store or Counterparty Address |
|---------|-------------|--------|------------------------|---------------------|-------------------------------|
| 1000 | Quiet Waters Business Park, LLC | IT'SUGAR LLC | Property Lease - Deerfield Office | SEE NOTE | 3155 SW 10th St. Deerfield Beach, FL 33442 |
| 1003 | BROADWAY AT THE BEACH, INC. | IT'SUGAR LLC | Property Lease - Myrtle Beach | SEE NOTE | 1211 Celebrity Circle, #136 Myrtle Beach, SC 29577 |
| 1004 | Universal Studios LLC | IT'SUGAR LLC | Property Lease - Universal | SEE NOTE | 1000 Universal Studios Blvd. #119 Universal City, CA 91608 |
| 1010 | SRMF Town Square Owner LLC c/o Fairbourne Properties, LLC | IT'SUGAR LLC | Property Lease - Town Square | SEE NOTE | 6587 Las Vegas Boulevard South, #176 Las Vegas, NV 89119 |
| 1013 | Madison Bay Street LLC | IT'SUGAR LLC | Property Lease - Emeryville | SEE NOTE | 5624 Bay Street Emeryville, CA 94608 |
| 1016 | HCW Private Development, LLC | IT'SUGAR LLC | Property Lease - Branson | SEE NOTE | 809 Branson Landing Branson, MO 65616 |
| 1017 | Kierland Crossing, LLC | IT'SUGAR LLC | Property Lease - Scottsdale | SEE NOTE | 15149 N. Scottsdale Rd., #165 Scottsdale, AZ 85254 |
| 1020 | Vestar CPT Tempe Marketplace LLC | IT'SUGAR LLC | Property Lease - Tempe | SEE NOTE | 2000 E. Rio Salado Parkway, Space 1072 Tempe, AZ 85281 |
| 1025 | Anchorage Holdings, L.P. | IT'SUGAR LLC | Property Lease - Fisherman's Wharf | SEE NOTE | 333 Jefferson Street, Space B-101 San Francisco, CA 94133 |
| 1030 | Vestar DRM-OPCO, LLC | IT'SUGAR LLC | Property Lease - Desert Ridge | SEE NOTE | 21001 N. Tatum Boulevard, #36-1170 Phoenix, AZ 85050 |
| 1033 | KRG/Atlantic Delray Beach, LLC | IT'SUGAR LLC | Property Lease - Delray Marketplace | SEE NOTE | 9169 West Atlantic Ave. #112 Delray Beach, FL 33446 |
| 1036 | L&M, LLC | IT'SUGAR LLC | Property Lease - Charleston | SEE NOTE | 50 N. Market Street Charleston, SC 29401 |
| 1041 | The Irvine Company LLC | IT'SUGAR LLC | Property Lease - Fashion Island | SEE NOTE | 1021 Newport Center Drive Newport Beach, CA 92660 |
| 1043 | IMI Huntsville LLC | IT'SUGAR LLC | Property Lease - Huntsville | SEE NOTE | 340 The Bridge Street #116 Huntsville, AL 35806 |
| 1045 | RTL Atlantic Town Center LLC | IT'SUGAR LLC | Property Lease - Atlantic Station | SEE NOTE | 264 19th Street NW, Building 2, Suite 2100-B A Atlanta, GA 30363 |
| 1046 | Market Street Retail South, LLC | IT'SUGAR LLC | Property Lease - Lynnfield | SEE NOTE | 535 Market Street Lynnfield, MA 01940 |
| 1050 | YAM Westgate, LLC | IT'SUGAR LLC | Property Lease - Westgate | SEE NOTE | 6751 North Sunset Blvd., Suite E-107 Glendale, AZ 85305 |
| 1051 | Downtown Delray Holdings, LLC | IT'SUGAR LLC | Property Lease - Delray II- Atlantic Ave | SEE NOTE | 250 E. Atlantic Ave. Delray Beach, FL 33444 |
| 1056 | Riverwalk Marketplace (New Orleans), LLC | IT'SUGAR LLC | Property Lease - Riverwalk Outlets | SEE NOTE | 500 Port of New Orleans Place, Ste. 150 New Orleans, LA 70130 |
| 1057 | J.Q. Nova, LLC | IT'SUGAR LLC | Property Lease - Madison | SEE NOTE | 542 State Street Madison, WI 53703 |
| 1060 | The Cannery Row Company, L.P. | IT'SUGAR LLC | Property Lease - Cannery Row | SEE NOTE | 751 Cannery Row, Ste. 129 Monterey, CA 93940 |
| 1064 | JRA HHF Venture LLC | IT'SUGAR LLC | Property Lease - Pembroke Gardens | SEE NOTE | 406 SW 145th Terr. Pembroke Pines, FL 33027 |
| 1066 | Summerlin Center, LLC | IT'SUGAR LLC | Property Lease - Summerlin | SEE NOTE | 1980 Festival Plaza, Ste. 195 Las Vegas, NV 89135 |
| 1067 | Ashkenazy Acquisition Corp. | IT'SUGAR LLC | Property Lease - RiverCenter | SEE NOTE | 849 E. Commerce St., #681 San Antonio, TX 78205 |
| 1069 | Fashion Outlets II LLC | IT'SUGAR LLC | Property Lease - Niagara Falls | SEE NOTE | 1803 Fashion Outlets Blvd. Space 284 Niagara Falls, NY 14304 |
| 1070 | Walker Venice Properties, LLC | IT'SUGAR LLC | Property Lease - Venice Beach | SEE NOTE | 2017 Ocean Front Walk Venice Beach, CA 90291 |
| 1073 | Barefoot Landing Commercial, LLC | IT'SUGAR LLC | Property Lease - Barefoot Landing | SEE NOTE | 4722 C-Highway 17 South N. Myrtle Beach, SC 29582 |
| 1076 | Gart Properties LLC | IT'SUGAR LLC | Property Lease - Denver | SEE NOTE | 500 16th Street, 184A Denver, CO 80202 |
| 1077 | MCA Promenade Owner LLC | IT'SUGAR LLC | Property Lease - Coconut Creek | SEE NOTE | 4437 Lyons Rd., Ste. 103 Coconut Creek, FL 33073 |
| 1080 | HPC Gaslamp Square, LLC | IT'SUGAR LLC | Property Lease - Gaslamp | SEE NOTE | 450 5th Ave., Space 101 San Diego, CA 92101 |
| 1084 | MOAC Mall Holdings LLC | IT'SUGAR LLC | Property Lease - Mall of America | SEE NOTE | 270 North Garden Bloomington, MN 55425 |
| 1086 | Ameream LLC | IT'SUGAR LLC | Property Lease - American Dream | SEE NOTE | 1 American Dream Way, Suite G134 East Rutherford, NJ 07073 |
| 1088 | Sundance East Partners, L.P. | IT'SUGAR LLC | Property Lease - Sundance | SEE NOTE | 503 Main Street Fort Worth, TX 76102 |
| 1090 | Liberty Center LLC | IT'SUGAR LLC | Property Lease - Liberty | SEE NOTE | 7125 Haskell Street Liberty Township, OH 45069 |
| 1093 | A SAFE KEEPING SELF STORAGE CMCH, INC. | IT'SUGAR LLC | Property Lease - Ocean City | SEE NOTE | 952 Boardwalk, Unit A&B Ocean City, NJ 08226 |
| 1096 | 3000 Ocean Front LLC | IT'SUGAR LLC | Property Lease - Wildwood | SEE NOTE | 3008 Boardwalk Space #'s 308/310 Wildwood, NJ 08260 |
| 1097 | Daytona Beach Property Holdings Retail, LLC | IT'SUGAR LLC | Property Lease - Daytona | SEE NOTE | 1860 Victory Cir., Space #M120 Daytona Beach, FL 32114 |
| 1098 | Domain Northside Retail Property Owner, LP | IT'SUGAR LLC | Property Lease - Domain | SEE NOTE | 11621 Rock Rose Blvd., Ste. 100 Austin, TX 78758 |
| 1100 | Legacy Place Properties LLC | IT'SUGAR LLC | Property Lease - Legacy Place- Dedham | SEE NOTE | 544 Legacy Place Dedham, MA 02026 |
| 1101 | Easton Town Center II, LLC | IT'SUGAR LLC | Property Lease - Easton | SEE NOTE | 121 Easton Town Center Columbus, OH 43219 |
| 1103 | JGB Vegas Retail Lessee, LLC | IT'SUGAR LLC | Property Lease - Grand Bazaar | SEE NOTE | 3623 Las Vegas Blvd. South, Ste. 200 Las Vegas, NV 89109 |
| 1104 | Navy Pier, Inc. | IT'SUGAR LLC | Property Lease - Navy Pier | SEE NOTE | 600 E. Grand Ave., Space FP-12 Chicago, IL 60611 |
| 1105 | MV Rolling Oaks Retail, LLC | IT'SUGAR LLC | Property Lease - Margaritaville | SEE NOTE | 3230 Margaritaville Blvd., Ste. E.140 Kissimmee, FL 34747 |
| 1108 | Bayside Marketplace, LLC | IT'SUGAR LLC | Property Lease - Bayside Temp Store | SEE NOTE | 401 Biscayne Blvd., Space S151 Miami, FL 33132 |
| 1109 | Broadway Mercer Associates | IT'SUGAR LLC | Property Lease - NYC NOHO (SPK) | SEE NOTE | 665 Broadway New York, NY 10012 |
| 1110 | Miami 26, LLC | IT'SUGAR LLC | Property Lease - Wynwood Temp | SEE NOTE | 2516 NW 2nd Ave., Space B Miami, FL 33127 |
| 2025 | FAO ROC Holdings LLC | IT'SUGAR LLC | Property Lease - FAO Schweetz | SEE NOTE | 30 Rockefeller Plaza New York, NY 10111 |
| 4019 | Aventura Mall Venture | IT'SUGAR FL 1, LLC | Property Lease - Aventura | SEE NOTE | 19575 Biscayne Blvd., #115 Aventura, FL 33180 |

EXHIBIT A

| 1024 | GRAND CANAL SHOPS II, LLC | IT'SUGAR LLC | Property Lease - Ventian | SEE NOTE | 3377 Las Vegas Blvd S., Space 2030 Las Vegas, NV 89109 |
|---|---|---|---|---|---|
| 1027 | Victoria Gardens Mall, LLC | IT'SUGAR LLC | Property Lease - Victoria Gardens | SEE NOTE | 12485 N. Mainstreet Rancho Cucamonga, CA 91739 |
| 1031 | Southpoint Mall, LLC | IT'SUGAR LLC | Property Lease - Streets at Southpoint | SEE NOTE | 8030 Renaissance Parkway, Suite 925 Durham, NC 27713 |
| 1083 | Baybrook Mall GGP MGMT Office | IT'SUGAR LLC | Property Lease - Baybrook | SEE NOTE | 500 Baybrook Mall, S/B C128 Friendswood, TX 77546 |
| 1094 | Crocker Downtown Development Associates | IT'SUGAR LLC | Property Lease - Mizner | SEE NOTE | 339 Plaza Real Boca Raton, FL 33432 |
| 1092 | Destiny USA Holdings LLC | IT'SUGAR LLC | Property Lease - Destiny USA | SEE NOTE | 1 Destiny USA Drive, J308 Syracuse, NY 13290 |
| 1099 | Eklecco Newo LLC | IT'SUGAR LLC | Property Lease - Palisades Center | SEE NOTE | 4522 Palisades Center Drive West Nyack, NY 10994 |
| 1011 | Chelsea Property Group | IT'SUGAR LLC | Property Lease - Jersey Shore Premium | SEE NOTE | 1 Premium Outlets Blvd., #810 Tinton Falls, NJ 07753 |
| 1012 | Chelsea Orlando Development Limited Partnership | IT'SUGAR LLC | Property Lease - Orlando I Vineland Premium | SEE NOTE | 8200 Vineland Ave., #118 Orlando, FL 32821 |
| 1014 | Grapevine Mills Mall Limited Partnership | IT'SUGAR LLC | Property Lease - Grapevine Mills | SEE NOTE | 3000 Grapevine Mills Parkway, Suite #413 Grapevine, TX 76051 |
| 1023 | Opry Mills Mall Limited Partnership | IT'SUGAR LLC | Property Lease - Opry Mills | SEE NOTE | 122 Opry Mills Drive Nashville, TN 37214 |
| 1032 | Orlando Outlet Owner LLC | IT'SUGAR LLC | Property Lease - Orlando II International Premium | SEE NOTE | 4973 International Dr. #3F.02 Orlando, FL 32819 |
| 1034 | Mall at Gurnee Mills, LLC | IT'SUGAR LLC | Property Lease - Gurnee Mills | SEE NOTE | 6170 West Grand Ave. #477 Gurnee, IL 60031 |
| 1035 | Phoenix Premium Outlets, LLC | IT'SUGAR LLC | Property Lease - Phoenix Premium | SEE NOTE | 4976 Premium Outlets Way #414 Chandler, AZ 85226 |
| 1052 | Mall at Katy Mills, L.P. | IT'SUGAR LLC | Property Lease - Katy Mills | SEE NOTE | 5000 Katy Mills Circle, Ste. 631 Katy, TX 77494 |
| 1074 | Arundel Mills Limited Partnership | IT'SUGAR ATLANTIC CITY LLC | Property Lease - Arundel Mills | SEE NOTE | 7000 Arundel Mills Circle, Space 341 Hanover, MD 21076 |
| 1078 | Colorado Mills Mall Limited Partnership | IT'SUGAR ATLANTIC CITY LLC | Property Lease - Colorado Mills | SEE NOTE | 14500 W. Colfax Ave., Space 436 Lakewood, CO 80401 |
| 1106 | Sunrise Mills (MLP) Limited Partnership | IT'SUGAR LLC | Property Lease - Sawgrass Mills | SEE NOTE | 12801 W. Sunrise Blvd., #307 Sunrise, FL 33323 |
| 1008 | Tanger Outlets Deer Park, LLC | IT'SUGAR LLC | Property Lease - Deer Park | SEE NOTE | 152 Arches Circle, Suite 407 Deer Park, NY 11729 |
| 1053 | Tanger National Harbor, LLC | IT'SUGAR LLC | Property Lease - National Harbor | SEE NOTE | 6800 Oxon Hill Rd., Ste. 880 National Harbor, MD 20745 |
| 1061 | Tanger Properties Limited Partnership | IT'SUGAR LLC | Property Lease - Sevierville | SEE NOTE | 1645 Parkway, Space 1125 Sevierville, TN 37862 |
| 1075 | Fashion Outlets at Foxwoods, LLC | IT'SUGAR LLC | Property Lease - Foxwoods | SEE NOTE | 455 Trolley Line Blvd., Ste. 380 Mashantucket, CT 06338 |
| 1058 | Country Club Plaza JV LLC | IT'SUGAR LLC | Property Lease - Country Club Plaza | SEE NOTE | 445 West 47th Street Kansas City, MO 64112 |
| 1091 | Taubman Auburn Hills Associates Limited Partnership | IT'SUGAR LLC | Property Lease - Great Lakes Crossing Outlets | SEE NOTE | 4250 Baldwin Rd. #608 Auburn Hills, MI 48326 |
| 1063 | Promenade Enterprises, L.P. | IT'SUGAR LLC | Property Lease - 3rd Street Prom | SEE NOTE | 1427 3rd Street Promenade, Ste. #102 Santa Monica, CA 90401 |
| 1040 | Jemal's Chinatown II, LLC | IT'SUGAR LLC | Property Lease - Washington DC | SEE NOTE | 714 7th Street NW Washington, DC 20001 |
| 1047 | 117 Duval, LLC | IT'SUGAR LLC | Property Lease - Key West | SEE NOTE | 117 Duval St. Key West, FL 33040 |
| 1028 | 1880 Broadway Retail, LLC | IT'SUGAR LLC | Property Lease - NYC UWS | SEE NOTE | 1870 Broadway Unit B New York, NY 10023 |
| 1059 | 210 Muni, LLC | IT'SUGAR LLC | Property Lease - Brooklyn | SEE NOTE | 210 Joralemon St. Space E Brooklyn, NY 11201 |
| 1021 | Downtown At The Gardens Associates, Ltd. | IT'SUGAR LLC | Property Lease - Downtown at the Gardens | SEE NOTE | 11701 Lake Victoria Gardens Ave. #2103 Palm Beach Gardens, FL 33410 |
| 1001 | Pier at Caesars LLC | IT'SUGAR ATLANTIC CITY LLC | Property Lease - Atlantic City | SEE NOTE | 1 Atlantic Ocean, #1110 Atlantic City, NJ 08401 |
| 1029 | Cooper House LLC | IT'SUGAR LLC | Property Lease - Santa Cruz | SEE NOTE | 110 Cooper Street, Suite 100-C Santa Cruz, CA 95060 |
| 1081 | Destin Commons, LTD. | IT'SUGAR LLC | Property Lease - Destin Commons | SEE NOTE | 4340 Legendary Dr., Space B114 Destin, FL 32541 |
| 1054 | ESRT 1542 Third Avenue, LLC | IT'SUGAR LLC | Property Lease - Upper East Side | SEE NOTE | 1542 3rd Ave. New York, NY 10028 |
| 1042 | Station Park CenterCal LLC | IT'SUGAR LLC | Property Lease - Station Park | SEE NOTE | 930 W. Forbush Place #B100 Farmington, UT 84025 |
| 1037 | Singer Coney, LLC | IT'SUGAR LLC | Property Lease - Coney Island | SEE NOTE | 1232 Surf Avenue Brooklyn, NY 11224 |
| 1072 | Meridian CenterCal LLC | IT'SUGAR LLC | Property Lease - Meridian | SEE NOTE | 3693 E. Longwing Lane, Space #130 Meridian, ID 83646 |
| 1082 | SOCM I, LLC | IT'SUGAR LLC | Property Lease - River Park | SEE NOTE | 540 Collection Blvd. Oxnard, CA 93036 |
| 1018 | AAC HP Realty, LLC | IT'SUGAR LLC | Property Lease - Baltimore | SEE NOTE | 201 Pratt St. Baltimore, MD 21202 |
| 1089 | Street Retail, Inc. | IT'SUGAR LLC | Property Lease - Rockville | SEE NOTE | 130 East Gibbs Street Rockville, MD 20850 |
| 1019 | V F Mall LLC | IT'SUGAR LLC | Property Lease - Valley Fair | SEE NOTE | 2855 Stevens Creek Blvd. #2231 San Jose, CA 95050 |
| 1006 | Plaza Bonita LLC | IT'SUGAR LLC | Property Lease - Plaza Bonita | SEE NOTE | 3030 Plaza Bonita Rd. #2268 National City, CA 91608 |
| 1055 | Washingtonian Lake Retail LLC | IT'SUGAR LLC | Property Lease - Gaithersburg | SEE NOTE | 216 Boardwalk Place Gaithersburg, MD 20878 |
|  | Avalara, Inc. | IT'SUGAR LLC | Third party sales tax processing agreement | 0.00 | 225 S. King St. #1800 Seattle, WA 98104 |
|  | Florida Panthers Hockey Club, Ltd. and Arena Operating Company, Ltd. | IT'SUGAR LLC | Sponsorship and Advertising Agreement | 0.00 | One Panthers Parkway, Attn: President, CEO Sunrise, FL 33323 |
|  | AvidXchange, Inc. | IT'SUGAR LLC | Third party AP/invoice processing | 0.00 | P.O. Box 36862 Charlotte, NC 28236 |
|  | Contract Datascan, LP | IT'SUGAR LLC | Master Rental Agreement - scanner equipment | 0.00 | 2941 Trade Center Dr. #100 Carrollton, TX 75007 |
|  | Frank Recruitment Group aka Nigel Frank International | IT'SUGAR LLC | Bradforces, Inc. re Dynamics Great Plains Consulting | 870.00 | 110 Williams Street New York, NY 10038 |
|  | Loomis Armored US, LLC | IT'SUGAR LLC | Armored cash management agreement | 8,785.98 | 2500 City West Blvd. #2300 Houston, TX 77042 |

| | | | | |
|---|---|---|---|---|
| MMA Securities LLC | IT'SUGAR LLC | 401k Retirement Plan Advisory and Consulting Agreement | 0.00 | 610 W. Garmantown Pike, Ste. 350 Plymouth Meeting, PA 19462 |
| TGI Office Automation, LLC | IT'SUGAR LLC | Lease for copiers | 0.00 | P.O. Box 41602 Philadelphia, PA 19101-1602 |
| NEST International, Inc. | IT'SUGAR LLC | Service Agreement | 87,219.40 | 550 Crescent Blvd. Gloucester City, NJ 08030 |
| Yesco Signs LLC | IT'SUGAR LLC | Service Agreement | 919.00 | 10235 Bellegrave Ave. Jurupa Valley, CA 91752 |
| Yesco Financial Solutions LLC | IT'SUGAR LLC | Finance Lease Agreement | 35,883.60 | 2401 Foothill Dr. Salt Lake City, UT 84109 |
| SecureWorks, Inc. | IT'SUGAR LLC | Master Services Agreement | 19,171.00 | One Concourse Parkway, #500 Atlanta, GA 30328 |

**Total Cure (see note):**   **$876,654.73**   Note: Pursuant to the terms of Leases and modifications, proposed cure amounts for individual landlords are confidential. Landlords have been provided individual notice of the proposed cure amount applicable to their leases.

# TERM LOAN AGREEMENT

THIS TERM LOAN AGREEMENT ("Agreement") is made and entered into effective as of _____, 2021, by and among IT'SUGAR LLC, a Delaware limited liability company ("IT'Sugar"), IT'SUGAR ATLANTIC CITY LLC, a Delaware limited liability company ("Atlantic City"), IT'SUGAR FLGC LLC, a Florida limited liability company ("FLGC"), IT'SUGAR FL I, LLC, a Delaware limited liability company ("FLI", and together with IT'Sugar, Atlantic City and FLGC, collectively, the "Borrowers", and, each, a "Borrower") and SHL HOLDINGS, INC., a Florida corporation ("Lender").

## RECITALS

WHEREAS, IT'Sugar was indebted to Bank of America N.A. ("Bank") as evidenced by that certain Credit Agreement dated August 24, 2018, and First Amendment thereto dated February 28, 2020, by and between IT'Sugar and Bank (as so amended, the "Prepetition Credit Agreement"), evidencing a revolving line of credit in the principal amount of $6,000,000;

WHEREAS, on April 7, 2020, the Bank's rights under the Prepetition Credit Agreement were assigned without recourse to the SHL pursuant to a Loan Sale and Assignment Agreement and by reason thereof Lender is the holder of such Prepetition Credit Agreement and related loan documents and has all the rights and obligations of the Bank thereunder;

WHEREAS, on September 22, 2020, each of the Borrowers filed petitions for relief under Chapter 11of the Bankruptcy Code in the United States Bankruptcy Court, Southern District of Florida (the "Bankruptcy Court") styled as follows: (1) *In re IT'Sugar FI I, LLC*, Case No. 20-20259-RAM (2) IT'Sugar, LLC, Case No. 20-20261-RAM, (3) IT'Sugar Atlantic City, LLC, Case No. 20-20263-RAM and (4) IT'Sugar FLGC, LLC, Case No. 20-20264-RAM (collectively, the "Bankruptcy Cases");

WHEREAS, in connection with the Bankruptcy Cases, each of the Borrowers requested that Lender extend financing to the Borrowers to facilitate its respective reorganization;

WHEREAS, on or about October 13, 2020, Borrowers and Lender entered into that certain Loan and Security Agreement (the "Existing DIP Facility Agreement", and, together with the Prepetition Credit Agreement, collectively, the "Existing Loan Agreements"), pursuant to which Lender provided to Borrowers a loan in the aggregate principal amount of $4,000,000;

WHEREAS, on April 20, 2021, Borrowers filed that certain *Plan of Reorganization for It'Sugar FL I, LLC, It'Sugar, LLC, It'Sugar Atlantic City, LLC and It'Sugar FLGC, LLC* in the Bankruptcy Cases (the "Plan of Reorganization") proposing to reorganize their financial affairs and exit bankruptcy;

WHEREAS, as agreed by the Lender and pursuant to the Plan of Reorganization, and as approved by the order entered by the Bankruptcy Court confirming the Plan of Reorganization (the "Confirmation Order"), (a) (i) the loans under the Existing Loan Agreements will be refinanced by the Loan made pursuant to this Agreement, (ii) the Prepetition Credit Agreement will be superseded and replaced in its entirety by this Agreement, and (iii) the Existing DIP Facility Agreement, except for those provisions contained therein which relate to the grant of a security

EXHIBIT B

interest to Lender and all of Lender's rights and remedies with respect thereto, will be superseded and replaced in its entirety by this Agreement, and (b) Lender will increase the amount of the Loan to Borrowers hereunder by an additional $3,000,000, for an aggregate principal amount of $13,000,000 to be outstanding post-confirmation of the Plan of Reorganization;

**NOW, THEREFORE,** in consideration of the mutual benefits hereunder accruing to each of the parties, the receipt and sufficiency of which are hereby acknowledged, and in further consideration of the mutual performance of this Agreement, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.01    <u>Recitals</u>.  The foregoing recitals are true and correct and are incorporated herein by this reference as if set forth in their entirety.

1.02    <u>Additional Definitions</u>. In addition to terms defined elsewhere in this Agreement, the following terms when used in this Agreement shall have the meanings indicated below:

(a)    "<u>Business Day</u>" means any day other than a Saturday or Sunday or day on which national banks in Florida are authorized or required to be closed.

(b)    "<u>Collateral</u>" has the meaning set forth in the Security Agreement.

(c)    "<u>DACA</u>" means that certain Deposit Account Control Agreement, dated as of the date hereof, by and among Borrowers, Lender and Bank of America, N.A.

(d)    (the "<u>Depository Bank</u>") substantially in the form of <u>Exhibit C</u> attached hereto.

(e)    "<u>Indebtedness</u>" means, without duplication, indebtedness for money borrowed, whether or not evidenced by notes, bonds, debentures or similar obligations and any guarantees with respect thereto.

(f)    "<u>Lien</u>" means any mortgage, lien, encumbrance, charge or other security interest of any kind, whether arising by contract, as a matter of law, judicial process or otherwise.

(g)    "<u>Loan Documents</u>" means this Agreement, the Term Note, the Security Agreement, the DACA, [List other Documents if any] and any and all other agreements, instruments and documents heretofore, now or hereafter executed or delivered by or on behalf of the Borrowers with respect to this Agreement or the transactions contemplated by this Agreement, as each may be amended, modified or restated from time to time.

(h)    "<u>Obligations</u>" means the obligations and indebtedness of the Borrowers to the Lender under this Agreement or under any other Loan Document.

(i)    "<u>Person</u>" means any individual, partnership, firm, corporation, association, joint venture, limited liability company, trust or other entity, or any government or political subdivision or agency, department or instrumentality thereof.

2

(j)      "Security Agreement" means that certain Security Agreement, dated as of the date hereof, made by the Borrowers in favor of the Lender, substantially in the form of Exhibit B attached hereto.

1.03    Other Definitional Terms. The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and article, section, schedule, exhibit and like references are references to this Agreement unless otherwise specified. The meanings of defined terms are equally applicable to the singular and plural forms of such terms.

## ARTICLE II
## LOAN

2.01    Amount.  On the terms and subject to the conditions of this Agreement, Lender agrees to make a term loan to Borrowers in the sum of Thirteen Million NO/100 Dollars ($13,000,000.00) (the "Loan").  Amounts borrowed under the Loan and repaid or prepaid may not be reborrowed. Lender will make the Loan available to Borrower in one advance upon satisfaction of all conditions set forth herein.  The proceeds of the Loan shall be used by the Borrower (a) to repay the existing loans made by Lender pursuant to the Existing Loan Agreements, and (b) in accordance with the Plan of Reorganization.

2.02    Term Note.  The obligations of the Borrowers to repay the Loan shall be evidenced by a term loan promissory note substantially in the form of Exhibit A attached hereto (the "Term Note").  The Term Note shall (a) be dated the Effective Date (as hereinafter defined), (b) be stated to mature on April 1, 2025 (the "Term Loan Maturity Date") and (c) be payable as to principal and interest as set forth in Sections 2.03 and 2.04.

2.03    Interest. The principal sum outstanding from time to time under the Term Note shall bear interest from the Effective Date at the fixed rate equal to five percent (5%) per annum ("Interest Rate"). All computations of interest shall be made by the Lender on the basis of a year of three hundred sixty (360) days for the actual number of days (including the first day but excluding the last day) occurring in the period for which such interest is payable.

2.04    Repayment of the Loan.  The entire unpaid principal amount of the Loan shall be due and payable on the Term Loan Maturity Date.  The Loan shall be repaid as follows:  (a) monthly payments of interest at the Interest Rate shall be due and payable on the first day of each month, commencing on _____ 1, 2021 and continuing to and including December 1, 2021, and (b) monthly payments of principal in the amount of Three Hundred Twenty-Five Thousand and No/100 ($325,000) plus accrued interest shall be due and payable on the first day of each month, commencing on January 1, 2022 and continuing to and including the Term Loan Maturity Date. On the Term Loan Maturity Date, the entire outstanding principal balance plus accrued interest plus all other amounts due under this Agreement and the Term Note shall be due and payable. Unless otherwise provided for herein, if any payment hereunder shall be due on a day that is not a Business Day, the date for payment shall be extended to the next succeeding Business Day, and in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension.  All payments hereunder shall be made in United States dollars.

2.05    Default Interest Rate; Late Fee. During the occurrence and continuance of an Event of Default, the Loan and all other outstanding Obligations hereunder shall bear interest, at an interest rate per annum equal at all times to two percent (2%) above the Interest Rate in effect (but in no event in excess of the maximum interest rate permitted by applicable law) (the "Default Interest Rate").   If any payment of interest or principal due under this Agreement is not made within five (5) days after such payment is due in accordance with the terms hereof (other than the payment of principal and/or interest due on the Term Loan Maturity Date or the earlier acceleration of the Loan), then, in addition to the payment of the amount so due, the Borrowers shall pay to the Lender a "late charge" of five cents ($0.05) for each whole dollar so overdue to defray part of the cost of collection and handling such late payment. The Borrowers agree that the damages to be sustained by the Lender for the detriment caused by any late payment are extremely difficult and impractical to ascertain, and that the amount of five cents ($0.05) for each one dollar due is a reasonable estimate of such damages, does not constitute interest, and is not a penalty.

2.06    Voluntary Prepayments. The Borrowers may at any time, upon prior written notice to the Lender, prepay the Loan and accrued interest thereon in whole or in part without penalty or premium.

## ARTICLE III
## CONDITIONS OF LENDING

3.01    Conditions to Effectiveness.  This Agreement and the obligations of the Lender to make the Loan hereunder shall not become effective until the date on which each of the following conditions is satisfied or waived by Lender (the "Effective Date"):

(a)    The Lender shall have received from Borrowers the following:  (i) a counterpart of this Agreement, duly executed by each of the Borrowers; (ii) the Term Note, duly executed by each of the Borrowers; (iii) a counterpart of the Security Agreement, duly executed by each of the Borrowers; (iv) a counterpart of the DACA, duly executed by each of the Borrowers and the Depository Bank; and (v) duly executed copies of each of the other Loan Documents and such other documents, certificates, instruments and agreements as the Lender shall reasonably request in connection with the transactions contemplated by this Agreement and the other Loan Documents;

(b)    The Lender shall have received a certificate of an authorized officer of each of the Borrowers attaching (i) a copy of such Borrower's limited liability company agreement; (ii) resolutions of each Borrower authorizing the execution and delivery of each Loan Document, the borrowings hereunder and the performance by such Borrower of its obligations set forth under the Loan Documents; (ii) a certificate of good standing or active statute as to each Borrower issued by the Delaware Department of State or Florida Department of State, as applicable; (iv) a certified copy of the Certificate of Formation or Articles of Organization of each Borrower issued by the Delaware Department of State or Florida Department of State, as applicable; and (v) certificate of incumbency of the authorized officers of each Borrower;

(c)    The Confirmation Order shall be entered and in full force and effect and shall not have been appealed, stayed, reversed, vacated or otherwise modified (or subject to a motion seeking any of the foregoing) a copy of the Confirmation Order approved and signed by

the Bankruptcy Court authorizing the Plan of Reorganization, this Loan and the transactions contemplated by this Agreement;

(d)     All documents executed in connection with the implementation of the Plan of Reorganization shall be in accordance with the Plan of Reorganization and in form and substance reasonably satisfactory to Lender, the Effective Date of the Plan of Reorganization shall have occurred, and the Plan of Reorganization shall have been substantially consummated;

(e)     Except as otherwise provided in the Plan of Reorganization, all Indebtedness of the Borrowers shall have been discharged or subordinated to the Indebtedness to the Lender under this Agreement on terms and conditions satisfactory to Lender;

(f)     The Lender shall have received certificates of insurance evidencing compliance with the insurance requirements provided in Section 5.06 and certificates of endorsement naming the Lender as an additional beneficiary under such insurance policies.

(g)     The Lender shall have received all Uniform Commercial Code financing statements required by the Loan Documents or under law or reasonably requested by the Lender to be filed, registered or recorded in order to create in favor of the Lender a perfected Lien on the Collateral described therein, prior and superior in right to any other Person, and such financing statements shall be in proper form for filing, registration or recordation.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES

Each Borrower hereby represents and warrants to Lender (which representations and warranties will survive the delivery of the Term Note and shall continue so long as any Obligations remain outstanding under the Term Note, under this Agreement or under any other Loan Document) that:

4.01     Organization.  Each of IT'Sugar, Atlantic City and FLI is a limited liability company, duly organized and validly existing and in good standing under the laws of the State of Delaware, and has the limited liability company power to own its property and assets and to transact the business in which it is engaged.  FLGC is a limited liability company, duly organized and validly existing under the laws of the State of Florida and its status is active, and it has the limited liability company power to own its property and assets and to transact the business in which it is engaged. Each of the Borrowers is duly qualified to do business as a foreign limited liability partnership in each jurisdiction in which the nature of the business conducted by such Borrower requires such qualification.

4.02     Authority; Enforceability.  Each Borrower has the full limited liability company power and authority to execute and deliver this Agreement and the other Loan Documents to which such Borrower is a party and to consummate the transactions contemplated hereby and thereby. This Agreement and the other Loan Documents have been duly executed and delivered by each Borrower and constitute the legal, valid and binding agreement of such Borrower enforceable against such Borrower in accordance with the terms thereof.

5

4.03    No Violation or Conflict. The execution, delivery and performance by Borrowers of this Agreement and the Loan Documents and the consummation by Borrowers of the transactions contemplated hereby and thereby, do not and will not: (a) violate or conflict with any provision of law, rule or regulation, or any writ, order, judgment or decree of any court or governmental or regulatory agency or authority; (b) violate or conflict with the organizational documents of such Borrower; or (c) with or without the passage of time or the giving of notice or both, result in the breach of, or constitute a default, cause the acceleration of performance or require any consent or notice under, or result in the creation of any Lien upon any property or asset of Borrowers (other than in favor of Lender) pursuant to any instrument or agreement to which any Borrower is a party or by which any Borrower or its properties or assets may be bound or affected.

4.04    Litigation.    Other than the Bankruptcy Cases, there are no actions, suits or proceedings pending or, to the knowledge of Borrowers, threatened, or any basis therefor, against or affecting Borrowers or the Collateral at law or in equity, in any court or before any governmental department or agency.

4.05    Compliance with Laws. Each Borrower is in compliance with all applicable laws, rules, regulations, and other legal requirements with respect to its business and the use, maintenance, and operation of the real and personal property owned or leased by such Borrower in the conduct of its business.  Neither the execution and delivery of this Agreement and the other Loan Documents, nor the consummation of the transactions herein or therein contemplated, nor compliance with the terms and provisions hereof or thereof, will violate any provision of law or of any applicable regulation, rule, order, writ, injunction or decree of any court or governmental department, commission, board, bureau, agency or instrumentality.

4.06    Security Interest. The Security Agreement creates, as security for the Loan and the Borrowers' other obligations hereunder and under the other Loan Documents, a valid and enforceable Lien on, and, upon filing the financing statements required thereby, such Lien will constitute a perfected security interest in, all Collateral in favor of the Lender, prior to the rights and Liens of all third Persons.

4.07    Taxes.  Each Borrower has duly filed or caused to be filed all federal, state, local and other tax returns required by applicable law to be filed, and has paid, or made adequate provision for the payment of, all federal, state, local and other taxes, assessments and governmental charges or levies upon it and its property, income, profits and assets which are due and payable.

**ARTICLE V**
**AFFIRMATIVE COVENANTS**

Each Borrower covenants and agrees that during the term of this Agreement and until all of the Obligations shall have been paid in full and all other obligations incurred hereunder and thereunder are fully performed, Borrower will duly perform and observe each and all of the covenants and agreements hereinafter set forth:

5.01    Books and Records.  Maintain proper books and records, and account for financial transactions in accordance with generally accepted accounting practices, consistently applied, and

permit Lender's officers and/or its authorized representatives or accountants to visit and inspect each Borrower's offices and properties, examine its books and records, and discuss its accounts and business with its respective officers, employees, accountants and auditors, all at reasonable times upon reasonable notice.

5.02    <u>Financial Reporting</u>. Furnish to the Lender:

(a)    As soon as available, but in any event not later than sixty (60) days calendar days after the close of each fiscal year-end, annual consolidated financial statements of the Borrowers, prepared in accordance with generally accepted accounting principles ("<u>GAAP</u>"), which statements shall be audited and reported by a certified public accountant acceptable to Lender, together with such other  information regarding such Borrower's financial condition, results of operations and cash flows as the Lender may reasonably request.

(b)    As soon as available, but in any event not later than the earlier of (i) eight (8) business days and (ii) ten (10) calendar days after the end of each fiscal quarter of each fiscal year of the Borrowers, unaudited financial statements prepared in accordance with GAAP, for such quarter and for the period from the beginning of the applicable fiscal year to the close of such quarter.

(c)    Federal income tax returns for such Borrower as soon as available, but not later than May 1st of each year, or, if extensions are filed, then copies of the extension requests by May 1st of each year and a copy of the tax returns by August 1st of each year.

(d)    Such other financial and other information pertaining to Borrowers as Lender may reasonably request from time to time.

5.03    <u>Further Assurances</u>.  Take any and all such other actions as the Lender may from time to time reasonably deem necessary or proper in connection with this Agreement and with the obligations of the Borrowers hereunder and under the other Loan Documents.

5.04    <u>Borrower Existence</u>.  Preserve and maintain in full force and effect each Borrower's existence, rights, privileges and franchises.

5.05    <u>Payment of Debts, Taxes and Claims</u>.  Promptly pay and discharge prior to delinquency all debts, accounts, liabilities, taxes, assessments and other governmental charges or levies imposed upon, or due from, Borrowers, as well as all claims of any kind (including claims for labor, materials and supplies) which, if unpaid, might by law become a lien or charge upon any of its property or the Collateral, except that nothing herein contained shall be interpreted to require the payment of any such debt, account, liability, tax, assessment or charge so long as its validity is being contested in good faith by appropriate legal proceedings and against which, if requested by Lender, reserves satisfactory to Lender have been made therefor.

5.06    <u>Insurance</u>.  Maintain the following insurance policies:

(a)    <u>General Business Insurance</u>.  To maintain satisfactory to the Bank as to amount, nature and carrier covering property damage (including loss of use and occupancy) to any of the Borrower's properties, business interruption insurance, public liability insurance including

7

coverage for contractual liability, product liability and workers' compensation, and any other insurance which is usual for such Borrower's business. Each policy shall include a cancellation clause in favor of the Lender.

(b)     _Insurance Covering Collateral_. To maintain all risk property damage insurance policies (including without limitation windstorm coverage, flood coverage, and hurricane coverage as applicable) covering the tangible property comprising the Collateral. Each insurance policy must be in an amount acceptable to the Lender. The insurance must be issued by an insurance company acceptable to the Lender and must include a lender's loss payable endorsement in favor of the Lender in a form acceptable to the Lender.

(c)     _Evidence of Insurance_. Upon the request of the Lender, to deliver to the Lender a copy of each insurance policy, or, if permitted by the Lender, a certificate of insurance listing all insurance in force.

(d)     _Changes to Insurance_. To the extent the Lender requires changes in the insurance coverage required hereunder after the date hereof, the Borrowers shall have ten (10) business days from the date of the Lender's written notice of such changes to provide evidence of its compliance with such required coverage.

5.07     _Compliance with Laws_.  Comply with all laws, regulations and governmental requirements applicable to the Borrowers or to the business or any property of the Borrowers (including environmental laws).

5.08     _Property Maintenance_.  Keep all Collateral in good repair, working order, and condition and from time to time make any necessary and proper repairs, renewals, replacements, extensions, additions, and improvements thereto so that the business of Borrowers will be conducted at all times in accordance with prudent business management.

5.09     _Litigation; Adverse Events_.  Notify Lender immediately in writing of the commencement of any material action, suit, proceeding or investigation against any Borrower, or the making of any counterclaim against any Borrower and of all Liens against any of Borrowers' property and promptly advise Lender in writing of any other condition, event or act which comes to Borrower's attention that would or might prejudice Lender's rights under this Agreement or the Loan Documents.

5.10     _Notification_.  Notify Lender immediately in writing if it becomes aware of the occurrence of any Event of Default or of any fact, condition, or event that, only with the giving of notice or passage of time or both, would become an Event of Default, or if it becomes aware of a material adverse change in the business, prospects, financial condition (including, without limitation, proceedings in bankruptcy, insolvency, reorganization or the appointment of a receiver or trustee of Borrowers), or results of operations of any Borrower, or the failure of any Borrower to observe any of its undertakings under the Loan Documents.

5.11     _Use of Proceeds_.  Use the proceeds of the Loan solely to repay the existing loans made by Lender pursuant to the Existing Loan Agreements, and to repay creditors of the Borrowers in accordance with the Plan of Reorganization.

5.12  Leases.  Pay when due all rents and other amounts payable under any lease agreement to which any Borrower is a party.

## ARTICLE VI
## NEGATIVE COVENANTS

Each Borrower covenants and agrees that during the term of this Agreement and until all of the Obligations shall have been paid in full and all other obligations incurred hereunder and thereunder are fully performed, no Borrower shall, without the prior written consent of Lender:

6.01  Liens.  Contract, create, incur, assume or suffer to exist any Lien upon any of the Collateral, whether now owned or hereafter acquired, except such Liens for taxes not in default or being contested in good faith, and except such other Liens disclosed in writing, and acceptable, to Lender.

6.02  Indebtedness. Incur, assume or suffer to exist any Indebtedness, except for Indebtedness of Borrowers under this Agreement or the other Loan Documents.

6.03  Guarantees.  Be or become liable in respect of any guarantee, pledge or endorsement of any kind whatsoever.

6.04  Liquidation; Sale of Assets; Merger or Acquisition; Subsidiaries. (a) Wind up, liquidate or dissolve its affairs; (b) convey, sell, lease or otherwise dispose of (or agree to do any of the foregoing at any future time) all or substantially all of its property or assets; (c) merge with any Person or acquire the assets of any Person; or (d) form any direct or indirect subsidiary of any Borrower.

6.05  Other Fundamental Changes. (a) Modify, amend, amend and restate, or otherwise supplement any Borrower's organizational documents; (b) make any material change in the management or control of any Borrower; (c) the accounting basis upon which Borrowers' financial statements are prepared; (d) change the tax filing elections that any Borrower has under the Internal Revenue Code; and (e) change any Borrower's name, state of organization or organizational identity; provided, that with respect to this clause (e) any Borrower may change its name, state or organization or organizational identity upon at least fifteen (15) Business Days prior written notice to Lender of such change.

6.06  Conduct of Business.  Materially alter the character in which any Borrower conducts its business or the location of such business or the nature of such business conducted at the date hereof.

6.07  Distributions.  Pay any distributions to members if an Event of Default exists or would result therefrom.

6.08  Restricted Payments.  Declare or make, or agree to declare or make, directly or indirectly, any dividend or other distribution (whether in cash, securities or other property) with respect to any membership interest in any Borrower, or to incur any obligation (contingent or otherwise) to do so, except, as long as there is no Event of Default immediately before and after

giving effect to any such payment and no Event of Default would result therefrom, for the payment of a cash dividend or distribution to such Borrower's members.

**ARTICLE VII**
**DEFAULT**

7.01    Events of Default.  The occurrence of one or more of the following events shall constitute a default by Borrowers hereunder (each, an "Event of Default"):

(a)    The Borrowers' failure to pay any installment of interest or principal on the Term Note or any other amount provided for herein or therein  later than five days after the date thereof;

(b)    Any representation or warranty made by Borrowers herein or in any writing furnished in connection with or pursuant to this Agreement or the Loan Documents shall prove to be false or incorrect in any material respect as of the date on which it is made;

(c)    Borrowers shall fail to perform or observe any covenant or agreement contained in Articles V and VI or any other term, covenant agreement or condition contained in this Agreement, the Note, the Security Agreement or any of the other Loan Documents on their part to be performed or observed and, to the extent curable, any such failure shall remain unremedied for thirty (30) days after written notice thereof shall have been given to the Borrowers by the Lender;

(d)    If a final judgment or order (not subject to appeal) for the payment of money in excess of $25,000, which is not covered by insurance, is rendered against any of the Borrowers and such judgment or order shall continue unsatisfied and in effect for a period of thirty (30) days after the expiration of any time period for appeal;

(e)    If any of the Borrowers fails to perform or observe any other obligation or condition with respect to any such other Indebtedness, exceeding $10,000 in principal amount, if as a result of such failure the holder of such Indebtedness, or any trustee or agent for such holders, has accelerated or otherwise caused such Indebtedness to become due and payable prior to its stated maturity, but only if such Borrower fails to pay such then-matured Indebtedness within thirty (30) days after it has matured;

(f)    If any of the Borrowers becomes insolvent or generally fails to pay, or admits in writing its inability or unwillingness to pay its debts as they become due or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against any of the Borrowers under the Bankruptcy Code or otherwise, seeking to adjudicate it as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors seeking appointment of a receiver, trustee or other similar official for it or for any substantial part of its property and such proceeding (unless instituted or consented to by the Borrowers) shall not be dismissed within sixty (60) days; or any of the Borrowers shall take any action to authorize any of the actions set forth in this Subsection (f);

10

(g)     If the Lender's security interest in the Collateral ceases to be perfected or ceases to have priority over all other perfected security interests in the Collateral.

(h)     If an event of default occurs and is continuing under any other agreement between any of the Borrowers and the Lender or any affiliate of the Lender, but only if such other event of default could reasonably be expected to impair the Borrowers' ability to repay the Loan.

7.02   <u>Remedies</u>.  Upon the occurrence and during the continuance of any Event of Default, the Lender may pursue any or all of the following remedies:

(a)     The Lender may declare the unpaid principal amount of the Term Note, all interest thereon and all other amounts payable under this Agreement, the Term Note and the other Loan Documents, to be forthwith due and payable, whereupon the same shall become and be forthwith due and payable, without presentment, demand, protest or notice of any kind, all of which are, to the extent permitted by applicable law, hereby expressly waived by the Borrowers.

(b)     The Lender shall have and may exercise all of its rights and remedies available at law under this Agreement, the Term Note, the Security Agreement or any of the other Loan Documents, or otherwise available to the Lender.

(c)     The Bank may thereafter charge and collect interest at the Default Interest Rate as provided in <u>Section 2.05</u>.

(d)     The Bank, in its sole discretion, may determine the order of application of payments or other sums received, including, without limitation, proceeds of Collateral, from any source, to the Indebtedness of the Borrowers hereunder.

7.03   <u>Automatic Remedies for Bankruptcy Default</u>. .  If any Event of Default described in <u>Section 7.01(f)</u> shall occur, the unpaid principal amount of the Term Note, all interest thereon and all other amounts payable under this Agreement, the Term Note and the other Loan Documents shall become immediately due and payable, all without presentment, demand, protest or notice of any kind.

7.04   <u>Expenses of Collection</u>.  All reasonable costs, expenses and liabilities incurred by Lender in collecting or attempting to collect on the Term Note, including costs and expenses incurred in proposing or selling or otherwise deriving upon any security, and all reasonable attorneys' fees in connection with such matters, shall constitute a demand obligation of Borrowers.

7.05   <u>Waiver</u>.  Any waiver of an Event of Default by Lender shall not extend to or affect any subsequent Event of Default.  No failure or delay by Lender in exercising any right hereunder shall operate as a waiver, nor shall any single or partial exercise of any right preclude the exercise of any other right hereunder.

## ARTICLE VIII
## <u>MISCELLANEOUS</u>

8.01   <u>Notices</u>.  All notices, requests, demands or other communications to or upon the respective parties hereto shall be in writing and shall be delivered personally or sent by certified

11

United States mail, return receipt requested, postage prepaid, sent by facsimile, or sent by nationally recognized overnight courier service with guaranteed next day delivery, in each case, to the parties hereto at the names, addresses and numbers set forth on the signature page hereto (or at such other addresses or numbers as shall be specified by the parties hereto by like notice). Such notices, requests, demands and other communications shall be deemed given when actually received, or (a) in the case of delivery by nationally recognized overnight courier service with guaranteed next day delivery, the next day or the day designated for delivery, (b) in the case of certified United States mail, return receipt requested, postage prepaid, five (5) days after deposit in the United States mail or (c) in the case of facsimile, upon receipt by the sender of a confirmation report for the number designated on the signature page hereto.

8.02    Waivers. No failure or delay on the part of the Lender in exercising any right, power or privilege under this Agreement, the Term Note, the Security Agreement or any other Loan Document, and no course of dealing between the Borrowers and the Lender shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under this Agreement preclude any other further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the Lender would otherwise have.  No notice to or demand on the Borrowers in any case shall entitle the Borrowers to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of the Lender to any other or further action in any circumstances without notice or demand.

8.03    Payment of Expenses. The Borrowers agree, whether or not the transactions hereby contemplated shall be consummated, upon demand, to pay to the Lender and save the Lender harmless against liability for the payment of all reasonable out-of-pocket expenses arising in connection with any modification of, or any consent or waiver under, this Agreement, the Term Note, the Security Agreement and the other Loan Documents and enforcement of, or the preservation of any rights under, this Agreement, the Term Note, the Security Agreement and the other Loan Documents, including, without limitation, documentary stamp taxes payable in connection with the Notes or otherwise in connection with any transactions under this Agreement.

8.04    Survival of Representations, Warranties and Covenants. All representations and warranties and covenants made in this Agreement shall survive the making of the Loan and shall continue in full force and effect so long as the Loan is unpaid or any obligation hereunder is outstanding.

8.05    Benefit of Agreement.  This Agreement shall be binding upon and inure to the benefit of the Borrowers and the Lender and their permitted successors and assigns.  The Borrowers may not assign or otherwise transfer any of their rights or obligations hereunder without the prior written consent of the Lender.

8.06    Entire Agreement; Amendment.  This Agreement and any schedules and exhibits hereto or thereto, contain every obligation and understanding between the parties relating to the subject hereof and supersedes all prior discussions, negotiations and agreements between them, and none of the parties shall be bound by any conditions, definitions, understandings, warranties or representations other than as expressly provided herein.  This Agreement may be modified or amended only by a written instrument executed by the parties.

8.07    <u>Headings</u>.  The descriptive headings of the several Articles and Sections of this Agreement are inserted for convenience only and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

8.08    <u>Severability of Provisions</u>.  Any provision of this Agreement, the Term Note, the Security Agreement or the other Loan Documents which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provisions in any other jurisdiction.

8.09    <u>Governing Law</u>.  This Agreement and the rights and obligations of the parties hereunder and under the Term Note, the Security Agreement and the other Loan Documents shall be construed in accordance with and be governed by the laws of the State of Florida applicable to agreements made and to be performed entirely within the State of Florida.

8.10    <u>WAIVER OF JURY TRIAL</u>. THE LENDER AND THE BORROWERS HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THE LOAN, THE OBLIGATIONS, THIS AGREEMENT, THE TERM NOTE, THE SECURITY AGREEMENT OR THE OTHER LOAN DOCUMENTS, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS OR ACTIONS OF EITHER PARTY.  THIS SECTION 8.11 IS A MATERIAL INDUCEMENT FOR THE LENDER TO ENTER INTO THIS AGREEMENT.

8.11    <u>Counterpart Agreements</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same Agreement.

8.12    <u>Indemnity</u>.  Borrowers agree to, jointly and severally, pay, indemnify, and hold Lender and its affiliates harmless from, and against, any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, or disbursements of any kind or nature whatsoever (including, without limitation, counsel and special counsel fees and disbursements in connection with any litigation, investigation, hearing, or other proceeding) with respect, or in any way related, to the existence, execution, delivery, enforcement, performance, and administration of this Agreement and any other Loan Document, except such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements that arise out of or result from Lender's gross negligence or willful misconduct.  The provisions of this Section shall survive repayment of the Loan.

8.13    <u>Existing Loan Agreements Superseded</u>.  This Agreement amends, modifies, supersedes and replaces in its entirety (a) the Prepetition Credit Agreement, and (b) the Existing DIP Facility Agreement, except for those provisions contained therein which relate to the grant of a security interest to Lender and all of Lender's rights and remedies with respect thereto.  All loans outstanding under either Existing Loan Agreement on the date of this Agreement shall be deemed to have been made pursuant to this Agreement and the other Loan Documents which shall hereafter govern and control for all purposes. <u>Joint and Several Liability of Borrowers</u>.

13

(a)    The obligations of the Borrowers hereunder shall be joint and several, shall be absolute and unconditional and shall remain in full force and effect until all Obligations shall have been paid and, until such payment has been made, shall not be discharged, affected, modified or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any of the undersigned:  (a) the waiver, compromise, indulgence, settlement, release, termination, modification or amendment (including, without limitation, any extension or postponement of the time for payment or performance or renewal or refinancing) of any or all of the obligations, covenants or agreements of any of the Borrowers under this the Agreement, the Term Note or any other Loan Document; (b) the failure to give notice to any or all of the Borrowers of the occurrence of a default under the terms and provisions of this Agreement, the Term Note or any other Loan Document; (c) the release, substitution or exchange by the Lender of any security held by it for the payment of any amount due pursuant to the Term Note or any other Loan Document (whether with or without consideration) or the acceptance by the Lender of any additional security for such payments or the availability or claimed availability of any other security, collateral or source of repayment; (d) the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting any or all of the undersigned or any other person or entity who, or any of whose property, shall at the time in question be obligated in respect of the debt evidenced by the Term Note or any part thereof; (e) any failure, omission, delay or neglect by the Lender in enforcing, asserting or exercising any right, power or remedy under this Agreement, the Term Note, any other Loan Document, or at law or in equity; (f) the release of any Person primarily or secondarily liable for all or any part of the debt evidenced by the Term Note; (g) any non-perfection or other impairment of any security; (h) any assignment or transfer by the Lender of all or any interest in this Agreement or the Term Note; (i) the invalidity or unenforceability of any term or provision in this Agreement, the Term Note or any other Loan Document; (j) any merger, consolidation, conversion or re-domestication involving any of the Borrowers, any sale, assignment, transfer, conveyance or issuance of any stock, partnership, membership or other equity interest by any of the Borrowers or any sale, transfer or conveyance by any of the undersigned or any other Person of all or any part of such Person's interest in any of the Borrowers or any affiliate of any of the Borrowers; or (k) to the extent permitted by law, any event or action that would, in the absence of this clause, result in the release or discharge of any or all of the Borrowers from the performance or observance of any obligation, covenant or agreement contained in this Agreement.  Without limiting the foregoing, it is the intention of the parties that any modification, limitation, or discharge of the obligations of any of the Borrowers arising out of or by virtue of any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law shall not affect, modify, limit or discharge the liability of any other co-maker in any manner whatsoever, and this Agreement, the Term Note and the other Loan Documents shall remain and continue in full force and effect and shall be enforceable against such Borrower to the same extent and with the same force and effect as if any such proceedings had not been instituted; and all other Borrowers shall be jointly and severally liable to the Lender under this Agreement, the Term Note and the other Loan Documents for the full amount payable hereunder irrespective of any modification, limitation, or discharge of the liability of any co-maker that may result from any such proceeding.  The obligations of the Borrowers to the Lender pursuant hereto include and apply to any payment or payments received by the Lender on account of the

14

liabilities evidenced hereby, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be paid to a trustee, receiver, or any other Person under any bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance or similar law, common law or equitable doctrine.  If any action or proceeding seeking such repayment is pending or, in the Lender's sole judgment, threatened, this Agreement, the Term Note and any security interest therefor shall remain in full force and effect notwithstanding that one or more of the Borrowers may not then be obligated to the Lender.  The joint and several obligations of the Borrowers to the Lender and this Agreement, the Term Note, and any security therefor, shall remain in full force and effect (or be reinstated) until the Lender has received payment in full of all Obligations payable to it pursuant to this Agreement, the Term Note, and any other Loan Document and the expiration of any applicable preference or similar period pursuant to any bankruptcy, insolvency, reorganization, moratorium or similar law, or at law or equity, without any claim having been made before the expiration of such period asserting an interest in all or any part of any payment(s) received by the Lender.

(b)    The Borrowers expressly agree that the Lender shall not be required first to institute any suit or to exhaust its remedies against any of the Borrowers or any other Person to become liable hereunder or against any Collateral or security for the Loan evidenced hereby, in order to enforce this Agreement and the Term Note; and expressly agree that, notwithstanding the occurrence of any of the foregoing, the Borrowers shall be and remain, directly and primarily liable for all Obligations due under this Agreement, the Term Note and under the Loan Documents.  Each Borrower assumes responsibility for keeping itself informed of the financial condition of each other Borrower, and any and all endorsers and/or guarantors of any instrument or document evidencing all or any part of such other Borrower's Obligations and of all other circumstances bearing upon the risk of nonpayment by such other Borrowers of their Obligations and each Borrower agrees that Lender shall not have any duty to advise such Borrower of information known to Lender regarding such condition or any such circumstances or to undertake any investigation not a part of its regular business routine.  If Lender, in its sole discretion, undertakes at any time or from time to time to provide any such information to a Borrower, Lender shall not be under any obligation to update any such information or to provide any such information to such Borrower on any subsequent occasion.

(c)    All rights and claims of each of the Borrowers against any other of the Borrowers or the property of any other of the Borrowers now or hereafter existing (collectively, the "Borrower Claims") shall be subordinate and subject in right of payment to the prior payment in full of the Obligations.  Until such Obligations have been paid in full, and Borrowers have performed all of their Obligations, none of the Borrowers shall receive or collect, directly or indirectly, from any other of the Borrowers or any other party any payment upon any Borrower Claim nor seek to realize upon any collateral securing any such Borrower Claim.  Notwithstanding the foregoing, if any of the Borrowers shall receive any such payment, such Borrowers shall hold such payment in trust for the Lender and shall have absolutely no rights in or to such payment except to deliver it promptly to the Lender, and each of the Borrowers hereby covenants to do so.  None of the Borrowers will assert any right to which it may be or become entitled, whether by subrogation, contribution or otherwise, against any other of the Borrowers or against the property of any other of the Borrowers by reason of the performance by such party of its obligations under this Agreement, except after performance and payment in full of the Term Note and any other Loan Documents.

(d)    Lender is hereby authorized, without notice or demand and without affecting the liability of any Borrower under this Agreement, the Term Note or any other Loan Documents, to, at any time and from time to time, (i) renew, extend, accelerate or otherwise change the time for payment of, or other terms relating to a Borrower's Obligations or otherwise modify, amend or change the terms of any promissory note or other agreement, document or instrument now or hereafter executed by a Borrower and delivered to the Lender; (ii) accept partial payments on a Borrower's Obligations; (iii) take and hold security or collateral for the payment of a Borrower's Obligations hereunder or for the payment of any guaranties of a Borrower's Obligations or other liabilities of a Borrower and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale thereof as the Lender, in its sole discretion, may determine; and (v) settle, release, compromise, collect or otherwise liquidate a Borrower's Obligations and any security or collateral therefor in any manner, without affecting or impairing the obligations of the other Borrowers.  The Lender shall have the exclusive right to determine the time and manner of application of any payments or credits, whether received from a Borrower or any other source, and such determination shall be binding on such Borrower.  All such payments and credits may be applied, reversed and reapplied, in whole or in part, to any of a Borrower's Obligations as the Lender shall determine in its sole discretion without affecting the validity or enforceability of the Obligations of the other Borrowers.

(e)    Notwithstanding any provisions of this Agreement to the contrary, it is intended that the joint and several nature of the Obligations of Borrowers and the liens and security interests granted by Borrowers to secure the Obligations, not constitute a "Fraudulent Conveyance" (as defined below).  Consequently, Lender and Borrowers agree that if the Obligations of a Borrower, or any liens or security interests granted by such Borrower securing the Obligations would, but for the application of this sentence, constitute a Fraudulent Conveyance, the Obligations of such Borrower and the liens and security interests securing such Obligations shall be valid and enforceable only to the maximum extent that would not cause such Obligations or such lien or security interest to constitute a Fraudulent Conveyance, and the Obligations of such Borrower and this Agreement shall automatically be deemed to have been amended accordingly.  For purposes hereof, "Fraudulent Conveyance" means a fraudulent conveyance under Section 548 of Chapter 11 of Title II of the United States Code (11 U.S.C. § 101, et seq.), as amended (the "Bankruptcy Code") or a fraudulent conveyance or fraudulent transfer under the applicable provisions of any fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

16

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed on the day and year first above written.

**BORROWERS**:

IT'SUGAR LLC,
a Delaware limited liability company

By:_____

Name:_____

Title:_____

Address:_____

       _____

       _____

IT'SUGAR Atlantic City LLC,
a Delaware limited liability company

By:_____

Name:_____

Title:_____

Address:_____

       _____

       _____

IT'SUGAR FLGC LLC,
a Florida limited liability company

By:_____

Name:_____

Title:_____

Address:_____

       _____

       _____

IT'SUGAR FL I, LLC,
a Delaware limited liability company

By:_____

Name:_____

Title:_____

Address:_____

       _____

       _____

**LENDER**:

SHL Holdings, Inc.,
a Florida corporation

By:_____

Name:_____

Title:_____

Address:_____

       _____

       _____

# EXHIBIT A

## Term Note

$13,000,000

_____

_____, 2021

FOR VALUE RECEIVED, the undersigned, IT'SUGAR LLC, a Delaware limited liability company ("IT'Sugar"), IT'SUGAR ATLANTIC CITY LLC, a Delaware limited liability company ("Atlantic City"), IT'SUGAR FLGC LLC, a Florida limited liability company ("FLGC"), IT'SUGAR FL I, LLC, a Delaware limited liability company ("FLI", and together with IT'Sugar, Atlantic City and FLGC, collectively, the "Borrowers", and, each, a "Borrower"), jointly and severally, promise to pay to the order of SHL HOLDINGS, INC., a Florida corporation ("Lender"), the principal sum of Thirteen Million and No/100 ($13,000,000.00), which the Lender loaned to the Borrowers pursuant to the Term Loan Agreement dated as _____, 2021, by and among the Borrowers and the Lender (as amended, restated or otherwise modified from time to time, the "Loan Agreement"), together with interest thereon at a fixed rate per annum equal to five percent (5%), in each case, payable at the times and in the amounts set forth in the Loan Agreement.

The Borrowers further promise to pay interest on the unpaid principal amount of the Term Loan (as defined in the Loan Agreement) from the date of such Term Loan until such Term Loan is paid in full, payable at the rate(s) and at the time(s) set forth in the Loan Agreement. Payments of both principal and interest shall be made in lawful money of the United States of America.

This Note (this "Note") shall be governed by the laws of the State of Florida applicable to contracts made and to be performed entirely within such State.

This Note is the "*Term Note*" described in the Loan Agreement and has been issued pursuant to the Loan Agreement.

The Borrower waives presentment for payment, demand, protest, notice of dishonor and all other notices in connection with this Note.

EACH OF THE BORROWERS AND, BY ITS ACCEPTANCE OF THIS NOTE, THE LENDER, HERETO  (i) IRREVOCABLY WAIVES THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, AND (ii) AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY.  WITHOUT LIMITING THE FOREGOING, THE BORROWERS AND, BY ITS ACCEPTANCE OF THIS NOTE, THE LENDER, HERETO AGREE THAT THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IS ALSO WAIVED AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING THAT CHALLENGES, IN WHOLE OR IN PART, THE VALIDITY OR ENFORCEABILITY OF THIS NOTE.  THIS WAIVER IS A MATERIAL INDUCEMENT FOR THE LENDER TO MAKE THE LOAN EVIDENCED BY THIS NOTE.

Reference to the Loan Agreement is made for a statement of the terms and provisions under which this Note may be required to be prepaid or this Note may be accelerated.

This Note is given in replacement of, amends and restates, consolidates and supersedes: (a) those certain loans made to IT'Sugar, Atlantic City and FLGC under the Prepetition Credit Agreement in the aggregate principal amount of $6,000,000, and (b) that certain Promissory Note, dated October 7, 2020, in the aggregate principal amount of $4,000,000.

*[Remainder of Page Intentionally Left Blank]*

**IN WITNESS WHEREOF**, the Borrowers have caused this Note to be executed on the day and year first above written.

**<u>BORROWERS</u>**:

IT'SUGAR LLC,
a Delaware limited liability company

By:_____
Name:_____
Title:_____

Address:_____
        _____
        _____

IT'SUGAR Atlantic City LLC,
a Delaware limited liability company

By:_____
Name:_____
Title:_____

Address:_____
        _____
        _____

IT'SUGAR FLGC LLC,
a Florida limited liability company

By:_____
Name:_____
Title:_____

Address:_____
        _____
        _____

IT'SUGAR FL I, LLC,
a Delaware limited liability company

By:_____
Name:_____
Title:_____

Address:_____
        _____
        _____

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "<u>Agreement</u>") is entered into as of _____ 2021 among IT'SUGAR LLC, a Delaware limited liability company ("<u>IT'Sugar</u>"), IT'SUGAR ATLANTIC CITY LLC, a Delaware limited liability company ("<u>Atlantic City</u>"), IT'SUGAR FLGC LLC, a Florida limited liability company ("<u>FLGC</u>"), IT'SUGAR FL I, LLC, a Delaware limited liability company ("<u>FLI</u>", and together with IT'Sugar, Atlantic City and FLGC, collectively, the "<u>Grantors</u>", and, each, a "<u>Grantor</u>"), and SHL HOLDINGS, INC., a Florida corporation ("<u>Lender</u>").

## <u>RECITALS</u>

**WHEREAS**, IT'Sugar, Atlantic City and FLGC were indebted to Bank of America N.A. ("<u>Bank</u>") as evidenced by that certain Credit Agreement dated August 24, 2018, and First Amendment thereto dated February 28, 2020, by and between IT'Sugar and Bank (as so amended, the "<u>Prepetition Credit Agreement</u>"), evidencing a revolving line of credit in the principal amount of $6,000,000, which was secured by all of the assets of each of IT'Sugar, Atlantic City and FLGC pursuant to that certain Security Agreement, dated as of August 24, 2018, by and among IT'Sugar, Atlantic City, FLGC and Bank (as so amended, the "<u>Prepetition Security Agreement</u>");

WHEREAS, on April 7, 2020, the Bank's rights under the Prepetition Credit Agreement and the Prepetition Security Agreement were assigned without recourse to the SHL pursuant to a Loan Sale and Assignment Agreement and by reason thereof Lender is the holder of such Prepetition Credit Agreement, the Prepetition Security Agreement and related loan documents and has all the rights and obligations of the Bank thereunder;

WHEREAS, on September 22, 2020, each of the Grantors filed petitions for relief under Chapter 11of the Bankruptcy Code in the United States Bankruptcy Court, Southern District of Florida (the "<u>Bankruptcy Court</u>") styled as follows: (1) *In re IT'Sugar FI I, LLC*, Case No. 20-20259-RAM (2) IT'Sugar, LLC, Case No. 20-20261-RAM, (3) IT'Sugar Atlantic City, LLC, Case No. 20-20263-RAM and (4) IT'Sugar FLGC, LLC, Case No. 20-20264-RAM (collectively, the "<u>Bankruptcy Cases</u>");

WHEREAS, in connection with the Bankruptcy Cases, each of the Grantors requested that Lender extend financing to the Grantors to facilitate its respective reorganization;

WHEREAS, on or about October 13, 2020, Grantors and Lender entered into that certain Loan and Security Agreement (the "<u>Existing DIP Facility Agreement</u>"), pursuant to which Lender provided to Grantors a loan in the aggregate principal amount of $4,000,000;

WHEREAS, on April 20, 2021, Borrowers filed that certain *Plan of Reorganization for It'Sugar FL I, LLC, It'Sugar, LLC, It'Sugar Atlantic City, LLC and It'Sugar FLGC, LLC* in the Bankruptcy Cases (the "<u>Plan of Reorganization</u>") proposing to reorganize their financial affairs and exit bankruptcy;

WHEREAS, as agreed by the Lender and pursuant to the Plan of Reorganization, and as approved by the order entered by the Bankruptcy Court confirming the Plan of Reorganization (the "<u>Confirmation Order</u>"), (a) (i) (i) the loans under the Existing Loan Agreements will be refinanced

by the Loan made pursuant to that certain Term Loan Agreement, dated as of the date hereof (the "Loan Agreement") and will be secured pursuant to a grant of a security interest in all of the assets of Grantors pursuant to this Agreement, (ii) the Prepetition Security Agreement will be superseded and replaced in its entirety by this Agreement, and (iii) those provisions of the Existing DIP Facility Agreement which relate to the grant of a security interest to Lender and all of Lender's rights and remedies with respect thereto will be superseded and replaced in its entirety by this Agreement (and, for the avoidance of doubt, all other provisions of the Existing DIP Facility Agreement will remain unchanged by this Agreement), and (b) pursuant to the Loan Agreement, Lender will increase the amount of the Loan to Borrowers hereunder by an additional $3,000,000, for an aggregate principal amount of $13,000,000 to be outstanding post-confirmation of the Plan of Reorganization;

**WHEREAS**, this Agreement is required by the terms of the Loan Agreement.

**NOW**, **THEREFORE**, in consideration of these premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Definitions.

(a)    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement and the following terms shall have the meanings set forth in the UCC (defined below):  Accession, Account, Account Debtor, Adverse Claim, As-Extracted Collateral, Certificated Security, Chattel Paper, Commercial Tort Claim, Consumer Goods, Deposit Account, Document, Electronic Chattel Paper, Equipment, Farm Products, Financial Asset, Fixtures, General Intangible, Goods, Instrument, Inventory, Investment Company Security, Investment Property, Letter-of-Credit Right, Manufactured Home, Payment Intangible, Proceeds, Securities Account, Security Entitlement, Securities Intermediary, Security, Software, Supporting Obligation and Tangible Chattel Paper.

(b)    In addition, the following terms shall have the meanings set forth below:

"Collateral" has the meaning provided in Section 2 hereof.

"Control" means the manner in which "control" is achieved under the UCC with respect to any Collateral for which the UCC specifies a method of achieving "control".

"Copyright License" means any agreement now or hereafter in existence, providing for the grant by, or to, any rights (including, without limitation, the grant of rights for a party to be designated as an author or owner and/or to enforce, defend, use, display, copy, manufacture, distribute, exploit and sell, make derivative works, and require joinder in suit and/or receive assistance from another party) covered in whole or in part by a Copyright.

"Copyrights" means, collectively, all of the following of any Grantor: (i) all copyrights, works protectable by copyright, copyright registrations and copyright applications anywhere in the world, (ii) all derivative works, counterparts, extensions and renewals of any of the foregoing, (iii) all income, royalties, damages and payments now or hereafter due and/or payable under any of the foregoing or with respect to any of the foregoing, including, without limitation, damages or

2

payments for past, present and future infringements, violations or misappropriations of any of the foregoing, (iv) the right to sue for past, present and future infringements, violations or misappropriations of any of the foregoing and (v) all rights corresponding to any of the foregoing throughout the world.

"Government Contract" means a contract between any Grantor and an agency, department or instrumentality of the United States or any state, municipal or local Governmental Authority located in the United States or all obligations of any such Governmental Authority arising under any Account now or hereafter owing by any such Governmental Authority, as Account Debtor, to any Grantor.

"Intellectual Property" means, collectively, all of the following of any Grantor: (i) all systems software and applications software (including source code and object code), all documentation for such software, including, without limitation, user manuals, flowcharts, functional specifications, operations manuals, and all formulas, processes, ideas and know-how embodied in any of the foregoing, (ii) concepts, discoveries, improvements and ideas, know-how, technology, reports, design information, trade secrets, practices, specifications, test procedures, maintenance manuals, research and development, inventions (whether or not patentable), blueprints, drawings, data, customer lists, catalogs, and all physical embodiments of any of the foregoing, (iii) Patents and Patent Licenses, Copyrights and Copyright Licenses, Trademarks and Trademark Licenses and (iv) other agreements with respect to any rights in any of the items described in the foregoing clauses (i), (ii), and (iii).

"Issuer" means the issuer of any Pledged Equity.

"Patent License" means any agreement, now or hereafter in existence, providing for the grant by, or to, any Grantor of any rights (including, without limitation, the right for a party to be designated as an owner and/or to enforce, defend, make, have made, make improvements, manufacture, use, sell, import, export, and require joinder in suit and/or receive assistance from another party) covered in whole or in part by a Patent.

"Patents" means collectively, all of the following of any Grantor: (i) all patents, all inventions and patent applications anywhere in the world, (ii) all improvements, counterparts, reissues, divisional, re-examinations, extensions, continuations (in whole or in part) and renewals of any of the foregoing and improvements thereon, (iii) all income, royalties, damages or payments now or hereafter due and/or payable under any of the foregoing or with respect to any of the foregoing, including, without limitation, damages or payments for past, present or future infringements, violations or misappropriations of any of the foregoing, (iv) the right to sue for past, present and future infringements, violations or misappropriations of any of the foregoing and (v) all rights corresponding to any of the foregoing throughout the world.

"Pledged Equity" means, with respect to each Grantor, (i) 100% of the issued and outstanding Equity Interests of each domestic Subsidiary of such Grantor that is directly owned by such Grantor and (ii) 65% (or such greater percentage that, due to a change in an applicable law after the date hereof, (A) could not reasonably be expected to cause the undistributed earnings of such foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such foreign Subsidiary's United States parent and (B) could not

reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interests entitled to vote (within the meaning of Treas. Reg. Section 1.956 2(c)(2)) and 100% of the issued and outstanding Equity Interests not entitled to vote (within the meaning of Treas. Reg. Section 1.956 2(c)(2)) in each foreign Subsidiary of such Grantor that is directly owned by such Grantor, including the Equity Interests of the Subsidiaries owned by such Grantor as set forth on <u>Schedule 1</u>, in each case together with the certificates (or other agreements or instruments), if any, representing such shares, and all options and other rights, contractual or otherwise, with respect thereto, including, but not limited to, the following:

> (1) all Equity Interests representing a dividend thereon, or representing a distribution or return of capital upon or in respect thereof, or resulting from a stock split, revision, reclassification or other exchange therefor, and any subscriptions, warrants, rights or options issued to the holder thereof, or otherwise in respect thereof; and

> (2) in the event of any consolidation or merger involving any Issuer and in which such Issuer is not the surviving Person, all shares of each class of the Equity Interests of the successor Person formed by or resulting from such consolidation or merger, to the extent that such successor Person is a direct Subsidiary of a Grantor.

"<u>Secured Obligations</u>" means, without duplication, (a) all Obligations and other indebtedness owing from any Grantor to Lender, whether as a result of future advances from Lender or otherwise, and (b) all costs and expenses incurred in connection with enforcement and collection thereof, including the fees, charges and disbursements of counsel.

"<u>Trademark License</u>" means any agreement, now or hereafter in existence, providing for the grant by, or to, any Grantor of any rights in (including, without limitation, the right for a party to be designated as an owner and/or to enforce, defend, use, mark, police, and require joinder in suit and/or receive assistance from another party) covered in whole, or in part, by a Trademark.

"<u>Trademarks</u>" means, collectively, all of the following of any Grantor: (i) all trademarks, trade names, corporate names, company names, business names, fictitious business names, internet domain names, trade styles, service marks, logos, other business identifiers, whether registered or unregistered, all registrations and recordings thereof, and all applications in connection therewith (other than each United States application to register any trademark or service mark prior to the filing under an applicable law of a verified statement of use for such trademark or service mark) anywhere in the world, (ii) all counterparts, extensions and renewals of any of the foregoing, (iii) all income, royalties, damages and payments now or hereafter due and/or payable under any of the foregoing or with respect to any of the foregoing, including, without limitation, damages or payments for past, present or future infringements, violations, dilutions or misappropriations of any of the foregoing, (iv) the right to sue for past, present or future infringements, violations, dilutions or misappropriations of any of the foregoing and (v) all rights corresponding to any of the foregoing (including the goodwill) throughout the world.

"<u>Vehicles</u>" means all cars, trucks, trailers, construction and earth moving equipment and other vehicles covered by a certificate of title under the applicable law of any state, all tires and all other appurtenances to any of the foregoing.

4

"UCC" means the Uniform Commercial Code as in effect from time to time in the state of Florida except as such term may be used in connection with the perfection of the Collateral and then the applicable jurisdiction with respect to such affected Collateral shall apply.

"USPTO" means the United States Patent and Trademark Office.

2.     Grant of Security Interest in the Collateral. To secure the prompt payment and performance in full when due, whether by lapse of time, acceleration, mandatory prepayment or otherwise, of the Secured Obligations, each Grantor hereby grants to the Lender a continuing security interest in, and a right to set off against, any and all right, title and interest of such Grantor in and to all of the following, whether now owned or existing or owned, acquired, or arising hereafter (collectively, the "Collateral"): (a) all Accounts; (b) all cash, currency and cash equivalents; (c) all Chattel Paper (including Electronic Chattel Paper and Tangible Chattel Paper); (d) those certain Commercial Tort Claims set forth on Schedule 2 (as updated from time to time pursuant to Section 4(l)(ii)); (e) all Deposit Accounts; (f) all Documents; (g) all Equipment, including, without limitation, all Financed Equipment (as defined in the Loan Agreement); (h) all Fixtures; (i) all General Intangibles; (j) all Goods; (k) all Instruments; (l) all Intellectual Property; (m) all Inventory; (n) all Investment Property; (o) all Letter-of-Credit Rights; (p) all Payment Intangibles; (q) all Pledged Equity; (r) all Securities Accounts; (s) all Software; (t) all Supporting Obligations; (u) all Vehicles; (v) all books and records pertaining to the Collateral; (w) all Accessions and all Proceeds and products of any and all of the foregoing and (x) all other personal property of any kind or type whatsoever now or hereafter owned by such Grantor or as to which such Grantor now or hereafter has the power to transfer interest therein.

Notwithstanding anything to the contrary contained herein, the security interests granted under this Agreement shall not extend to any General Intangible, permit, lease, license, contract or other Instrument of an Grantor to the extent that the grant of a security interest in such General Intangible, permit, lease, license, contract or other Instrument in the manner contemplated by this Agreement, under the terms thereof or under applicable law, is prohibited and would result in the termination thereof or give the other parties thereto the right to terminate, accelerate or otherwise alter such Grantor's rights, titles and interests thereunder (including upon the giving of notice or the lapse of time or both); provided that (a) any such limitation described in the foregoing clause on the security interests granted hereunder shall only apply to the extent that any such prohibition could not be rendered ineffective pursuant to the UCC or any other applicable law (including debtor relief laws) or principles of equity and (b) in the event of the termination or elimination of any such prohibition or the requirement for any consent contained in any applicable law, General Intangible, permit, lease, license, contract or other Instrument, to the extent sufficient to permit any such item to become Collateral hereunder, or upon the granting of any such consent, or waiving or terminating any requirement for such consent, a security interest in such General Intangible, permit, lease, license, contract or other Instrument shall be automatically and simultaneously granted hereunder and shall be included as Collateral hereunder.

The Grantors and the Lender hereby acknowledge and agree that the security interest created hereby in the Collateral (a) constitutes continuing collateral security for all of the Secured Obligations, whether now existing or hereafter arising, (b) is not to be construed as an assignment of any Intellectual Property, and (c) shall secure all present and future Secured Obligations of any of the Grantors to the Lender.

5

3.    <u>Representations and Warranties</u>.  Each Grantor hereby represents and warrants to the Lender that:

(a)    <u>Ownership</u>.  Each Grantor is the legal and beneficial owner of its Collateral and has the right to pledge, sell, assign or transfer the same.  There exists no Adverse Claim with respect to the Pledged Equity of such Grantor.

(b)    <u>Security Interest/Priority</u>.  This Agreement creates a valid security interest in favor of the Lender in the Collateral of such Grantor and, when properly perfected by filing, shall constitute a valid and perfected, first priority security interest in such Collateral (including all uncertificated Pledged Equity consisting of partnership or limited liability company interests that do not constitute Securities), to the extent such security interest can be perfected by filing under the UCC, free and clear of all liens except for Permitted Liens.  No Grantor has authenticated any agreement authorizing any secured party thereunder to file a financing statement, except to perfect Permitted Liens.  The taking possession by the Lender of the certificated securities (if any) evidencing the Pledged Equity and all other Instruments constituting Collateral will perfect and establish the first priority of the Lender's security interest in all the Pledged Equity evidenced by such certificated securities and such Instruments.  With respect to any Collateral consisting of a Deposit Account, Security Entitlement or held in a Securities Account, upon execution and delivery by the applicable Grantor, the applicable Securities Intermediary and the Lender of an agreement granting control to the Lender over such Collateral, the Lender shall have a valid and perfected, first priority security interest in such Collateral.

(c)    <u>Types of Collateral</u>.  None of the Collateral consists of, or is the Proceeds of, (i) As-Extracted Collateral, (ii) Consumer Goods, (iii) Farm Products, (iv) Manufactured Homes, (v) standing timber, or (vi) any other interest in or to any of the foregoing.

(d)    <u>Accounts</u>.  (i) Each Account of the Grantors and the papers and documents relating thereto are genuine and in all material respects what they purport to be, (ii) each Account arises out of (A) a bona fide sale of goods sold and delivered by such Grantor (or is in the process of being delivered) or (B) services theretofore actually rendered by such Grantor to, the account debtor named therein, (iii) no Account of a Grantor is evidenced by any Instrument or Chattel Paper unless such Instrument or Chattel Paper, to the extent requested by the Lender, has been endorsed over and delivered to, or submitted to the control of, the Lender, (iv) no surety bond was required or given in connection with any Account of a Grantor or the contracts or purchase orders out of which they arose, (v) the right to receive payment under each Account is assignable and (vi) to the knowledge of Grantors, no Account Debtor has any defense, set-off, claim or counterclaim against any Grantor that can be asserted against the Lender, whether in any proceeding to enforce the Lender's rights in the Collateral otherwise, except defenses, setoffs, claims or counterclaims that are not, in the aggregate, material to the value of the Accounts.

(e)    <u>Equipment and Inventory</u>.  With respect to any Equipment and/or Inventory of a Grantor, each such Grantor has exclusive possession and control of such Equipment and Inventory of such Grantor except for (i) Equipment leased by such Grantor as a lessee, (ii) Equipment or Inventory in transit with common carriers, (iii) Equipment and/or Inventory in the possession or control of a warehouseman, bailee or any agent or processor of such Grantor to the extent such Grantor has complied with <u>Section 4(e)</u>, or (iv) rights of landowners, lessors, utility

companies and/or other parties under leases, pole attachment agreements or similar agreements. No Inventory of a Grantor is held by a Person other than a Grantor pursuant to consignment, sale or return, sale on approval or similar arrangement.

(f)     <u>Authorization of Pledged Equity</u>.  All Pledged Equity (i) is duly authorized and validly issued, (ii) is fully paid and, to the extent applicable, nonassessable and is not subject to the preemptive rights of any Person, (iii) is beneficially owned as of record by a Grantor and (iv) constitutes all the issued and outstanding shares of all classes of the equity of such Issuer issued to such Grantor.

(g)     <u>No Other Equity Interests, Instruments, Etc</u>.  As of the Closing Date, (i) no Grantor owns any certificated Equity Interests in any Subsidiary that are required to be pledged and delivered to the Lender hereunder except as set forth on <u>Schedule 1</u> (as updated from time to time pursuant to <u>Section 4(l)(ii)</u>), and <u>(ii)</u> no Grantor holds any Instruments, Documents or Tangible Chattel Paper required to be pledged and delivered to the Lender pursuant to <u>Section 4(c)(i)</u> of this Agreement other than as set forth on <u>Schedule 3</u> (as updated from time to time pursuant to <u>Section 4(l)(ii)</u>).  All such certificated securities, Instruments, Documents and Tangible Chattel Paper have been delivered to the Lender to the extent (A) requested by the Lender or (B) as required by the terms of this Agreement and the other Loan Documents.

(h)     <u>Partnership and Limited Liability Company Interests</u>.  Except as previously disclosed to the Lender, none of the Collateral consisting of an interest in a partnership or a limited liability company (i) is dealt in or traded on a securities exchange or in a securities market, (ii) by its terms expressly provides that it is a Security governed by Article 8 of the UCC, (iii) is an Investment Company Security, (iv) is held in a Securities Account or (v) constitutes a Security or a Financial Asset.

(i)     <u>Contracts; Agreements; Licenses</u>.  To the knowledge of Grantors, no Grantor has any material contracts, agreements or licenses which are non-assignable by their terms, or as a matter of law, or which prevent the granting of a security interest therein.

(j)     <u>Consents; Etc</u>.  No approval, consent, exemption, authorization or other action by, notice to, or filing with, any Governmental Authority or any other Person (including, without limitation, any stockholder, member or creditor of such Grantor), is necessary or required for (i) the grant by such Grantor of the security interest in the Collateral granted hereby or for the execution, delivery or performance of this Agreement by such Grantor, (ii) the perfection of such security interest (to the extent such security interest can be perfected by filing under the UCC, the granting of control (to the extent required under <u>Section 4(c)</u> hereof) or by filing an appropriate notice with the USPTO or the United States Copyright Office) or (iii) the exercise by the Lender of the rights and remedies provided for in this Agreement (including, without limitation, as against any Issuer), except for (A) the filing or recording of UCC financing statements, (B) the filing of appropriate notices with the USPTO and the United States Copyright Office, (C) obtaining control to perfect the liens created by this Agreement (to the extent required under <u>Section 4(c)</u> hereof), (D) such actions as may be required by applicable laws affecting the offering and sale of securities, (E) such actions as may be required by applicable foreign applicable laws affecting the pledge of the Pledged Equity of foreign Subsidiaries, (F) consents, authorizations, filings or other actions

7

which have been obtained or made, and (G) as may be required with respect to Vehicles registered under a certificate of title.

        (k)    <u>Commercial Tort Claims</u>.  As of the Closing Date, no Grantor has any Commercial Tort Claims seeking damages in excess of $50,000 other than as set forth on <u>Schedule 2</u>.

        4.    <u>Covenants</u>.  Each Grantor covenants that until such time as the Secured Obligations arising under the Loan Documents have been paid in full, such Grantor shall:

        (a)    <u>Maintenance of Perfected Security Interest; Further Information</u>.

        (i)    Maintain the security interest created by this Agreement as a first priority perfected security interest (subject only to Permitted Liens) and shall defend such security interest against the claims and demands of all Persons whomsoever (other than the holders of Permitted Liens).

        (ii)    From time to time furnish to the Lender upon the Lender's reasonable request, statements and schedules further identifying and describing the assets and property of such Grantor and such other reports in connection therewith as the Lender may reasonably request, all in reasonable detail.

        (b)    <u>Required Notifications</u>.  Each Grantor shall promptly notify the Lender, in writing, of: (i) any lien (other than Permitted Liens) on any of the Collateral which would adversely affect the ability of the Lender to exercise any of its remedies hereunder and (ii) the occurrence of any other event which could reasonably be expected to have a material impairment on the aggregate value of the Collateral or on the security interests created hereby.

        (c)    <u>Perfection through Possession and Control</u>.

        (i)    If any amount in excess of $25,000 payable under or in connection with any of the Collateral shall be or become evidenced by any Instrument or Tangible Chattel Paper or Supporting Obligation, or if any property constituting Collateral shall be stored or shipped subject to a Document, ensure that such Instrument, Tangible Chattel Paper, Supporting Obligation or Document is either in the possession of such Grantor at all times or, if requested by the Lender to perfect its security interest in such Collateral, is delivered to the Lender duly endorsed in a manner satisfactory to the Lender.  Such Grantor shall ensure that any Collateral consisting of Tangible Chattel Paper is marked with a legend acceptable to the Lender indicating the Lender's security interest in such Tangible Chattel Paper.

        (ii)    Deliver to the Lender promptly upon the receipt thereof by or on behalf of a Grantor, all certificates and instruments constituting Certificated Securities or Pledged Equity.  Prior to delivery to the Lender, all such certificates constituting Pledged Equity shall be held in trust by such Grantor for the benefit of the Lender pursuant hereto.  All such certificates representing Pledged Equity shall be delivered in suitable form for transfer by delivery or shall be accompanied by duly executed instruments of transfer or assignment in blank, substantially in the form provided in Exhibit A hereto or other form acceptable to the Lender.

(iii)    If any Collateral shall consist of Deposit Accounts, Electronic Chattel Paper, Letter-of-Credit Rights, Securities Accounts or uncertificated Investment Property, execute and deliver (and, with respect to any Collateral consisting of a Securities Account or uncertificated Investment Property, cause the Securities Intermediary or the Issuer, as applicable, with respect to such Investment Property to execute and deliver) to the Lender all control agreements, assignments, instruments or other documents as reasonably requested by the Lender for the purposes of obtaining and maintaining Control of such Collateral.

(d)    <u>Filing of Financing Statements, Notices, etc</u>.  Each Grantor shall execute and deliver to the Lender and/or file such agreements, assignments or instruments (including affidavits, notices, reaffirmations and amendments and restatements of existing documents, as the Lender may reasonably request) and do all such other things as the Lender may reasonably deem necessary or appropriate (i) to assure to the Lender its security interests hereunder, including such instruments as the Lender may from time to time reasonably request in order to perfect and maintain the security interests granted hereunder in accordance with the UCC, including, without limitation, financing statements (including continuation statements), (ii) to consummate the transactions contemplated hereby and (iii) to otherwise protect and assure the Lender of its rights and interests hereunder.  Furthermore, each Grantor also hereby irrevocably makes, constitutes and appoints the Lender, its nominee or any other person whom the Lender may designate, as such Grantor's attorney in fact with full power and for the limited purpose to prepare and file (and, to the extent applicable, sign) in the name of such Grantor any financing statements, or amendments and supplements to financing statements, renewal financing statements, notices or any similar documents which in the Lender's reasonable discretion would be necessary or appropriate in order to perfect and maintain perfection of the security interests granted hereunder, such power, being coupled with an interest, being and remaining irrevocable until such time as the Secured Obligations arising under the Loan Documents have been paid in full.  Each Grantor hereby agrees that a carbon, photographic or other reproduction of this Agreement or any such financing statement is sufficient for filing as a financing statement by the Lender without notice thereof to such Grantor wherever the Lender may in its sole discretion desire to file the same.

(e)    <u>Collateral Held by Warehouseman, Bailee, etc</u>.  If any Collateral is at any time in the possession or control of a warehouseman, bailee or any agent or processor of such Grantor and the Lender so requests (i) notify such Person in writing of the Lender's security interest therein, (ii) instruct such Person to hold all such Collateral for the Lender's account and subject to the Lender's instructions and (iii) use reasonable efforts to obtain a written acknowledgment from such Person that it is holding such Collateral for the benefit of the Lender.

(f)    <u>Commercial Tort Claims</u>.  Execute and deliver such statements, documents and notices and do and cause to be done all such things as may be required by the Lender, or required by any applicable law to create, preserve, perfect and maintain the Lender's security interest in any Commercial Tort Claims initiated by or in favor of any Grantor.

(g)    <u>Books and Records</u>.  Mark its books and records (and shall cause the Issuer of the Pledged Equity of such Grantor to mark its books and records) to reflect the security interest granted pursuant to this Agreement.

(h)    Nature of Collateral.  At all times maintain the Collateral as personal property and not affix any of the Collateral to any real property in a manner with the intent to change its nature from personal property to real property or a Fixture to real property, unless the Lender shall have a perfected lien on such Fixture or real property.

(i)    Issuance or Acquisition of Equity Interests.  Not without executing and delivering, or causing to be executed and delivered, to the Lender such agreements, documents and instruments as the Lender may reasonably require, issue or acquire any Pledged Equity consisting of an interest in a partnership or a limited liability company that (A) is dealt in or traded on a securities exchange or in a securities market, (B) by its terms expressly provides that it is a Security governed by Article 8 of the UCC, (C) is an investment company security, (D) is held in a Securities Account or (E) constitutes a Security or a Financial Asset.

(j)    Equipment.  Maintain each item of Equipment in good working order and condition (reasonable wear and tear and obsolescence excepted).

(k)    Vehicles.  File or cause to be filed in each office in each jurisdiction which the Lender shall deem reasonably advisable to perfect its liens on the Vehicles, all applications for certificates of title or ownership (and any other necessary documentation) indicating the Lender's first priority lien on the Vehicle (subject to any Permitted Liens) covered by such certificate.

(l)    Further Assurances.

(i)    Promptly upon the request of the Lender and at the sole expense of the Grantors, duly execute and deliver, and have recorded, such further instruments and documents and take such further actions as the Lender may reasonably request for the purpose of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted, including, without limitation, (A) the assignment of any material contract, (B) with respect to Government Contracts, assignment agreements and notices of assignment, in form and substance satisfactory to the Lender, duly executed by any Grantors party to such Government Contract in compliance with the Assignment of Claims Act (or analogous state applicable law), and (C) all applications, certificates, instruments, registration statements, and all other documents and papers the Lender may reasonably request and as may be required by law in connection with the obtaining of any consent, approval, registration, qualification, or authorization of any Person deemed necessary or appropriate for the effective exercise of any rights under this Agreement; provided that no Grantor shall be required to take any action to perfect a security interest in any Collateral that the Lender reasonably determines in its sole discretion that the costs and burdens to the Grantors of perfecting a security interest in such Collateral (including any applicable stamp, intangibles or other taxes) are excessive in relation to value to the Lender afforded thereby.

(ii)    From time to time upon the Lender's reasonable request, promptly furnish such updates to the information disclosed pursuant to this Agreement, the Loan Agreement, including any Schedules hereto or thereto, such that such updated information is true and correct as of the date so furnished.

5.    Authorization to File Financing Statements.  Each Grantor hereby authorizes the Lender to prepare and file such financing statements (including continuation statements) or

amendments thereof or supplements thereto or other instruments as the Lender may from time to time deem necessary or appropriate in order to perfect and maintain the security interests granted hereunder in accordance with the UCC, which such financing statements may describe the Collateral in the same manner as described herein or may contain an indication or description of Collateral that describes such property in any other manner as the Lender may determine, in its sole discretion, is necessary, advisable or prudent to ensure the perfection of the security interest in the Collateral granted herein, including, without limitation, describing such property as "all assets, whether now owned or hereafter acquired" or "all personal property, whether now owned or hereafter acquired," or describing such property using words of similar import.

6.    <u>Advances</u>.    On failure of any Grantor to perform any of the covenants and agreements contained herein or in any other Loan Document, the Lender may, at its sole option and in its sole discretion, perform the same and in so doing may expend such sums as the Lender may reasonably deem advisable in the performance thereof, including, without limitation, the payment of any insurance premiums, the payment of any taxes, a payment to obtain a release of a lien or potential lien, expenditures made in defending against any adverse claim and all other expenditures which the Lender may make for the protection of the security hereof or which may be compelled to make by operation of any applicable law.  All such sums and amounts so expended shall be repayable by the Grantors on a joint and several basis promptly upon timely notice thereof and demand therefor, shall constitute additional Secured Obligations and shall bear interest from the date said amounts are expended at the Default Rate.  No such performance of any covenant or agreement by the Lender on behalf of any Grantor, and no such advance or expenditure therefor, shall relieve the Grantors of any Default or Event of Default.  The Lender may make any payment hereby authorized in accordance with any bill, statement or estimate procured from the appropriate public office or holder of the claim to be discharged without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax assessment, sale, forfeiture, tax lien, title or claim except to the extent such payment is being contested in good faith by a Grantor in appropriate proceedings and against which adequate reserves are being maintained in accordance with GAAP.

7.    <u>Remedies</u>.

(a)    <u>General Remedies</u>.    Upon the occurrence of an Event of Default and during continuation thereof, the Lender shall have, in addition to the rights and remedies provided herein, in the Loan Documents, in any other documents relating to the Secured Obligations, or by any applicable law (including, but not limited to, levy of attachment, garnishment and the rights and remedies set forth in the UCC of the jurisdiction applicable to the affected Collateral), the rights and remedies of a secured party under the UCC (regardless of whether the UCC is the law of the jurisdiction where the rights and remedies are asserted and regardless of whether the UCC applies to the affected Collateral), and further, the Lender may, with or without judicial process or the aid and assistance of others, (i) enter on any premises on which any of the Collateral may be located and, without resistance or interference by the Grantors, take possession of the Collateral, (ii) dispose of any Collateral on any such premises, (iii) require the Grantors to assemble and make available to the Lender at the expense of the Grantors any Collateral at any place and time designated by the Lender which is reasonably convenient to both parties, (iv) remove any Collateral from any such premises for the purpose of effecting sale or other disposition thereof, and/or (v) without demand and without advertisement, notice, hearing or process of law, all of which each of the Grantors hereby waives to the fullest extent permitted by applicable law, at any

place and time or times, sell, lease, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels any or all Collateral held by or for it at public or private sale (which in the case of a private sale of Pledged Equity, shall be to a restricted group of purchasers who will be obligated to agree, among other things, to acquire such securities for their own account, for investment and not with a view to the distribution or resale thereof), at any exchange or broker's board or elsewhere, by one or more contracts, in one or more parcels, for money, upon credit or otherwise, at such prices and upon such terms as the Lender deems advisable, in its sole discretion (subject to any and all mandatory legal requirements).  Each Grantor acknowledges that any such private sale may be at prices and on terms less favorable to the seller than the prices and other terms which might have been obtained at a public sale and, notwithstanding the foregoing, agrees that such private sale shall be deemed to have been made in a commercially reasonable manner and, in the case of a sale of Pledged Equity, that the Lender shall have no obligation to delay sale of any such securities for the period of time necessary to permit the Issuer of such securities to register such securities for public sale under the Securities Act of 1933.  The Lender shall have the right upon any such public sale or sales, and, to the extent permitted by applicable law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold.  Neither the Lender's compliance with applicable laws nor its disclaimer of warranties relating to the Collateral shall be considered to adversely affect the commercial reasonableness of any sale.  To the extent the rights of notice cannot be legally waived hereunder, each Grantor agrees that any requirement of reasonable notice shall be met if such notice, specifying the place of any public sale or the time after which any private sale is to be made, is personally served on or mailed, postage prepaid, to Grantor in accordance with the notice provisions of <u>Section 8.01</u> of the Loan Agreement at least ten (10) days before the time of sale or other event giving rise to the requirement of such notice.  Each Grantor further acknowledges and agrees that any offer to sell any Pledged Equity which has been (A) publicly advertised on a bona fide basis in a newspaper or other publication of general circulation in the financial community of New York, New York (to the extent that such offer may be advertised without prior registration under the Securities Act of 1933), or (B) made privately in the manner described above shall be deemed to involve a "public sale" under the UCC, notwithstanding that such sale may not constitute a "public offering" under the Securities Act of 1933, and the Lender may, in such event, bid for the purchase of such securities.  The Lender shall not be obligated to make any sale or other disposition of the Collateral regardless of notice having been given.  To the extent permitted by applicable law, the Lender may be a purchaser at any such sale.  To the extent permitted by applicable law, each of the Grantors hereby waives all of its rights of redemption with respect to any such sale.  Subject to the provisions of applicable law, the Lender may postpone or cause the postponement of the sale of all or any portion of the Collateral by announcement at the time and place of such sale, and such sale may, without further notice, to the extent permitted by applicable law, be made at the time and place to which the sale was postponed, or the Lender may further postpone such sale by announcement made at such time and place.  To the extent permitted by applicable law, each Grantor waives all claims, damages and demands it may acquire against the Lender arising out of the exercise by the Lender of any rights hereunder except to the extent any such claims, damages or demands result solely from the gross negligence or willful misconduct of the Lender as determined by a final non-appealable judgment of a court of competent jurisdiction, in each case against whom such claim is asserted.  Each Grantor agrees that the internet shall constitute a "place" for purposes of Section 9-610(b) of the UCC and that any sale of Collateral to a licensor pursuant to the terms of a license agreement between such

licensor and a Grantor is sufficient to constitute a commercially reasonable sale (including as to method, terms, manner, and time) within the meaning of Section 9-610 of the UCC.

      (b)    <u>Remedies Relating to Accounts</u>.

      (i)    During the continuation of an Event of Default, whether or not the Lender has exercised any or all of its rights and remedies hereunder, (A) each Grantor shall notify (such notice to be in form and substance satisfactory to the Lender) its Account Debtors and parties to its material contracts subject to a security interest hereunder that such Accounts and material contracts have been assigned to the Lender and promptly upon request of the Lender, instruct all account debtors to remit all payments in respect of Accounts to a mailing location selected by the Lender and (B) the Lender shall have the right to enforce any Grantor's rights against its customers and account debtors, and the Lender or its designee may notify any Grantor's customers and account debtors that the Accounts of such Grantor have been assigned to the Lender or of the Lender's security interest therein, and may (either in its own name or in the name of a Grantor or both) demand, collect (including without limitation by way of a lockbox arrangement), receive, take receipt for, sell, sue for, compound, settle, compromise and give acquittance for any and all amounts due or to become due on any Account, and, in the Lender's discretion, file any claim or take any other action or proceeding to protect and realize upon the security interest of the Lender in the Accounts.

      (ii)    Each Grantor acknowledges and agrees that the Proceeds of its Accounts remitted to or on behalf of the Lender in accordance with the provisions hereof shall be solely for the Lender's own convenience and that such Grantor shall not have any right, title or interest in such Accounts or in any such other amounts except as expressly provided herein.  The Lender shall not have any liability or responsibility to any Grantor for acceptance of a check, draft or other order for payment of money bearing the legend "payment in full" or words of similar import or any other restrictive legend or endorsement or be responsible for determining the correctness of any remittance.

      (iii)    During the continuation of an Event of Default, (A) the Lender shall have the right, but not the obligation, to make test verifications of the Accounts in any manner and through any medium that it reasonably considers advisable, and the Grantors shall furnish all such assistance and information as the Lender may require in connection with such test verifications, (B) upon the Lender's request and at the expense of the Grantors, the Grantors shall cause independent public accountants or others satisfactory to the Lender to furnish to the Lender reports showing reconciliations, aging and test verifications of, and trial balances for, the Accounts and (C) the Lender in its own name or in the name of others may communicate with account debtors on the Accounts to verify with them to the Lender's satisfaction the existence, amount and terms of any Accounts.

      (iv)    During the continuation of an Event of Default, upon the request of the Lender, each Grantor shall forward to the Lender, on the last Business Day of each week, deposit slips related to all cash, money, checks or any other similar items of payment received by the Grantor during such week, and, if requested by the Lender, copies of such checks or any other similar items of payment, together with a statement showing the application of all payments on the

Collateral during such week and a collection report with regard thereto, in form and substance satisfactory to the Lender.

        (c)    <u>Deposit Accounts/Securities Accounts</u>.  Upon the occurrence of an Event of Default and during continuation thereof, the Lender may prevent withdrawals or other dispositions of funds in Deposit Accounts and Securities Accounts subject to control agreements or held with the Lender.

        (d)    <u>Access</u>.  In addition to the rights and remedies hereunder, upon the occurrence of an Event of Default and during the continuance thereof, the Lender shall have the right to enter and remain upon the various premises of the Grantors without cost or charge to the Lender, and use the same, together with materials, supplies, books and records of the Grantors for the purpose of collecting and liquidating the Collateral, or for preparing for sale and conducting the sale of the Collateral, whether by foreclosure, auction or otherwise.  In addition, the Lender may remove Collateral, or any part thereof, from such premises and/or any records with respect thereto, in order to effectively collect or liquidate such Collateral.  If the Lender exercises its right to take possession of the Collateral, each Grantor shall also at its expense perform any and all other steps reasonably requested by the Lender to preserve and protect the security interest hereby granted in the Collateral, such as placing and maintaining signs indicating the security interest of the Lender, appointing overseers for the Collateral and maintaining inventory records.

        (e)    <u>Nonexclusive Nature of Remedies</u>.  Failure by the Lender to exercise any right, remedy or option under this Agreement, any other Loan Document, any other document relating to the Secured Obligations, or as provided by applicable law, or any delay by the Lender in exercising the same, shall not operate as a waiver of any such right, remedy or option.  No waiver hereunder shall be effective unless it is in writing, signed by the party against whom such waiver is sought to be enforced and then only to the extent specifically stated, which in the case of the Lender shall only be granted as provided herein.  To the extent permitted by applicable law, neither the Lender, nor any party acting as attorney for the Lender, shall be liable hereunder for any acts or omissions or for any error of judgment or mistake of fact or law other than their gross negligence or willful misconduct hereunder as determined by a final non-appealable judgment of a court of competent jurisdiction.  The rights and remedies of the Lender under this Agreement shall be cumulative and not exclusive of any other right or remedy which the Lender may have.

        (f)    <u>Retention of Collateral</u>.  In addition to the rights and remedies hereunder, the Lender may, in compliance with Sections 9-620 and 9-621 (including notices given thereunder) of the UCC or otherwise complying with the requirements of applicable laws of the relevant jurisdiction, accept or retain the Collateral in satisfaction of the Secured Obligations.  Unless and until the Lender shall have provided such notices, however, the Lender shall not be deemed to have retained any Collateral in satisfaction of any Secured Obligations for any reason.

        (g)    <u>Waiver; Deficiency</u>.  Each Grantor hereby waives, to the extent permitted by applicable law, all rights of redemption, appraisement, valuation, stay, extension or moratorium now or hereafter in force under any applicable law in order to prevent or delay the enforcement of this Agreement or the absolute sale of the Collateral or any portion thereof.  In the event that the proceeds of any sale, collection or realization are insufficient to pay all amounts to which the Lender is legally entitled, the Grantors shall be jointly and severally liable for the deficiency,

together with interest thereon at the Default Rate, together with the costs of collection and the fees, charges and disbursements of counsel. Any surplus remaining after the full payment and satisfaction of the Secured Obligations shall be returned to the Grantors or to whomsoever a court of competent jurisdiction shall determine to be entitled thereto.

(h)    Specific Performance.  Each Grantor further agrees that a breach of any of the covenants contained in this Section 7 will cause irreparable injury to the Lender, that the Lender have no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section 7 shall be specifically enforceable against such Grantor, and such Grantor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred under the Loan Agreement.

8.    Rights of the Lender.

(a)    Power of Attorney.  In addition to other powers of attorney contained herein, each Grantor hereby designates and appoints the Lender and each of its designees or agents, as attorney-in-fact of such Grantor, irrevocably and with power of substitution, with authority to take any or all of the following actions upon the occurrence and during the continuance of an Event of Default:

(i)    to demand, collect, settle, compromise, adjust, give discharges and releases, all as the Lender may reasonably determine;

(ii)    to commence and prosecute any actions at any court for the purposes of collecting any Collateral and enforcing any other right in respect thereof;

(iii)    to defend, settle or compromise any action brought and, in connection therewith, give such discharge or release as the Lender may deem reasonably appropriate;

(iv)    to receive, open and dispose of mail addressed to a Grantor and endorse checks, notes, drafts, acceptances, money orders, bills of lading, warehouse receipts or other instruments or documents evidencing payment, shipment or storage of the goods giving rise to the Collateral of such Grantor on behalf of and in the name of such Grantor, or securing, or relating to such Collateral;

(v)    to sell, assign, transfer, make any agreement in respect of, or otherwise deal with or exercise rights in respect of, any Collateral or the goods or services which have given rise thereto, as fully and completely as though the Lender were the absolute owner thereof for all purposes;

(vi)    to adjust and settle claims under any insurance policy relating thereto;

(vii)    to execute and deliver all assignments, conveyances, statements, financing statements, continuation financing statements, security agreements, affidavits, notices and other agreements, instruments and documents that the Lender may determine necessary in

15

order to perfect and maintain the security interests and liens granted in this Agreement and in order to fully consummate all of the transactions contemplated herein;

    (viii)   to institute any foreclosure proceedings that the Lender may deem appropriate;

    (ix)   to sign and endorse any drafts, assignments, proxies, stock powers, verifications, notices and other documents relating to the Collateral;

    (x)   to exchange any of the Pledged Equity or other property upon any merger, consolidation, reorganization, recapitalization or other readjustment of the Issuer thereof and, in connection therewith, deposit any of the Pledged Equity with any committee, depository, transfer agent, registrar or other designated agency upon such terms as the Lender may reasonably deem appropriate;

    (xi)   to vote for a shareholder resolution, or to sign an instrument in writing, sanctioning the transfer of any or all of the Pledged Equity into the name of the Lender or into the name of any transferee to whom the Pledged Equity or any part thereof may be sold pursuant to Section 7 hereof;

    (xii)   to pay or discharge taxes, liens, security interests or other encumbrances levied or placed on or threatened against the Collateral;

    (xiii)   to direct any parties liable for any payment in connection with any of the Collateral to make payment of any and all monies due and to become due thereunder directly to the Lender or as the Lender shall direct;

    (xiv)   to receive payment of and receipt for any and all monies, claims, and other amounts due and to become due at any time in respect of or arising out of any Collateral;

    (xv)   in the case of any Intellectual Property, execute and deliver, and have recorded, any and all agreements, instruments, documents and papers as the Lender may request to evidence the security interests created hereby in such Intellectual Property and the goodwill and General Intangibles of such Grantor relating thereto or represented thereby; and

    (xvi)   do and perform all such other acts and things as the Lender may reasonably deem to be necessary, proper or convenient in connection with the Collateral.

This power of attorney is a power coupled with an interest and shall be irrevocable until such time as the Secured Obligations arising under the Loan Documents have been paid in full. The Lender shall be under no duty to exercise or withhold the exercise of any of the rights, powers, privileges and options expressly or implicitly granted to the Lender in this Agreement, and shall not be liable for any failure to do so or any delay in doing so. The Lender shall not be liable for any act or omission or for any error of judgment or any mistake of fact or law in its individual capacity or its capacity as attorney-in-fact except acts or omissions resulting from its gross negligence or willful misconduct as determined by a final non-appealable judgment of a court of competent jurisdiction. This power of attorney is conferred on the Lender solely to protect, preserve and realize upon its

16

security interest in the Collateral and shall not impose any duty upon the Lender to exercise any such powers.

(b)     <u>Assignment by the Lender</u>.  The Lender may from time to time assign the Secured Obligations to an assignee in accordance with the Loan Agreement, and such assignee shall be entitled to all of the rights and remedies of the Lender under this Agreement in relation thereto.

(c)     <u>The Lender's Duty of Care</u>.  Other than the exercise of reasonable care to assure the safe custody of the Collateral while being held by the Lender hereunder, the Lender shall have no duty or liability to preserve rights pertaining thereto, it being understood and agreed that the Grantors shall be responsible for preservation of all rights in the Collateral, and the Lender shall be relieved of all responsibility for the Collateral upon surrendering it or tendering the surrender of it to the Grantors.  The Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which the Lender accords its own property, which shall be no less than the treatment employed by a reasonable and prudent agent in the industry, it being understood that the Lender shall not have responsibility for taking any necessary steps to preserve rights against any parties with respect to any of the Collateral.  In the event of a public or private sale of Collateral pursuant to <u>Section 7</u> hereof, the Lender shall have no responsibility for (i) ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relating to any Collateral, whether or not the Lender has or is deemed to have knowledge of such matters, or (ii) taking any steps to clean, repair or otherwise prepare the Collateral for sale.

(d)     <u>Liability with Respect to Accounts</u>.  Anything herein to the contrary notwithstanding, each of the Grantors shall remain liable under each of the Accounts to observe and perform all the conditions and obligations to be observed and performed by it thereunder, all in accordance with the terms of any agreement giving rise to each such Account.  The Lender shall not have any obligation or liability under any Account (or any agreement giving rise thereto) by reason of or arising out of this Agreement or the receipt by the Lender of any payment relating to such Account pursuant hereto, nor shall the Lender be obligated in any manner to perform any of the obligations of a Grantor under or pursuant to any Account (or any agreement giving rise thereto), to make any payment, to make any inquiry as to the nature or the sufficiency of any payment received by it or as to the sufficiency of any performance by any party under any Account (or any agreement giving rise thereto), to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times.

(e)     <u>Voting and Payment Rights in Respect of the Pledged Equity</u>.

(i)     So long as no Event of Default shall exist, each Grantor may (A) exercise any and all voting and other consensual rights pertaining to the Pledged Equity of such Grantor or any part thereof for any purpose not inconsistent with the terms of this Agreement or the Loan Agreement and (B) receive and retain any and all dividends (other than stock dividends and other dividends constituting Collateral which are addressed hereinabove), principal or interest

paid in respect of the Pledged Equity to the extent they are allowed under the Loan Agreement; and

(ii)    During the continuance of an Event of Default, (A) all rights of an Grantor to exercise the voting and other consensual rights which it would otherwise be entitled to exercise pursuant to clause (i)(A) above shall cease and all such rights shall thereupon become vested in the Lender which shall then have the sole right to exercise such voting and other consensual rights, (B) all rights of an Grantor to receive the dividends, principal and interest payments which it would otherwise be authorized to receive and retain pursuant to clause (i)(B) above shall cease and all such rights shall thereupon be vested in the Lender which shall then have the sole right to receive and hold as Collateral such dividends, principal and interest payments, and (C) all dividends, principal and interest payments which are received by an Grantor contrary to the provisions of clause (ii)(B) above shall be received in trust for the benefit of the Lender, shall be segregated from other property or funds of such Grantor, and shall be forthwith paid over to the Lender as Collateral in the exact form received, to be held by the Lender as Collateral and as further collateral security for the Secured Obligations.

(f)    Releases of Collateral.

(i)    If any Collateral shall be sold, transferred or otherwise disposed of by any Grantor in a transaction permitted by the Loan Agreement then the Lender, at the request and sole expense of such Grantor, shall promptly execute and deliver to such Grantor all releases and other documents, and take such other action, reasonably necessary for the release of the liens created hereby or by any other Collateral Document on such Collateral.

(ii)    The Lender may release any of the Pledged Equity from this Agreement or may substitute any of the Pledged Equity for other Pledged Equity without altering, varying or diminishing in any way the force, effect, lien, pledge or security interest of this Agreement as to any Pledged Equity not expressly released or substituted, and this Agreement shall continue as a first priority lien on all Pledged Equity not expressly released or substituted.

9.    Application of Proceeds.  After the exercise of remedies provided for in Section 8.2 of the Loan Agreement any payments in respect of the Secured Obligations and any proceeds of the Collateral, when received by the Lender in cash or cash equivalents will be applied in reduction of the Secured Obligations in the manner determined by the Lender.

10.    Continuing Agreement.

(a)    This Agreement shall remain in full force and effect until such time as the Secured Obligations arising under the Loan Documents have been paid in full, at which time this Agreement shall be automatically terminated (other than obligations under this Agreement which expressly survive such termination) and the Lender shall, upon the request and at the expense of the Grantors, forthwith release all of its liens and security interests hereunder and shall execute and deliver all UCC termination statements and/or other documents reasonably requested by the Grantors evidencing such termination.

(b)    This Agreement shall continue to be effective or be automatically reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Secured

Obligations is rescinded or must otherwise be restored or returned by the Lender as a preference, fraudulent conveyance or otherwise under any debtor relief law, all as though such payment had not been made; provided that in the event payment of all or any part of the Secured Obligations is rescinded or must be restored or returned, all reasonable costs and expenses (including without limitation any reasonable legal fees and disbursements) incurred by the Lender in defending and enforcing such reinstatement shall be deemed to be included as a part of the Secured Obligations.

11.    <u>Amendments; Waivers; Modifications, etc</u>.  This Agreement and the provisions hereof may not be amended, waived, modified, changed, discharged or terminated except as agreed in writing and signed by the Grantors and the Lender.

12.    <u>Successors in Interest</u>.  This Agreement shall be binding upon each Grantor, its successors and assigns and shall inure, together with the rights and remedies of the Lender hereunder, to the benefit of the Lender and their successors and permitted assigns.

13.    <u>Notices</u>.  All notices required or permitted to be given under this Agreement shall be in conformance with <u>Section 8.01</u> of the Loan Agreement.

14.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.  It shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.  Delivery of an executed counterpart of a signature page of this Agreement by fax transmission or other electronic mail transmission (e.g. "<u>pdf</u>" or "<u>tif</u>") shall be effective as delivery of a manually executed counterpart of this Agreement.  Without limiting the foregoing, to the extent a manually executed counterpart is not specifically required to be delivered, upon the request of any party, such fax transmission or electronic mail transmission shall be promptly followed by such manually executed counterpart.

15.    <u>Headings</u>.  The headings of the sections hereof are provided for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

16.    <u>Governing Law; WAIVER OF JURY TRIAL</u>.  The terms of <u>Sections 8.10</u> and <u>8.11</u> of the Loan Agreement with respect to governing law and waiver of jury trial are incorporated herein by reference, mutatis mutandis, and the parties hereto agree to such terms.

17.    <u>Severability</u>.  If any provision of this Agreement is determined to be illegal, invalid or unenforceable, such provision shall be fully severable and the remaining provisions shall remain in full force and effect and shall be construed without giving effect to the illegal, invalid or unenforceable provisions.

18.    <u>Entirety</u>.  This Agreement, the other Loan Documents and the other documents relating to the Secured Obligations represent the entire agreement of the parties hereto and thereto, and supersede all prior agreements and understandings, oral or written, if any, including any commitment letters or correspondence relating to the Loan Documents, any other documents relating to the Secured Obligations, or the transactions contemplated herein and therein.

19.    <u>Other Security</u>.  To the extent that any of the Secured Obligations are now or hereafter secured by property other than the Collateral (including, without limitation, real property

and securities owned by a Grantor), or by a guarantee, endorsement or property of any other Person, then the Lender shall have the right to proceed against such other property, guarantee or endorsement upon the occurrence of any Event of Default, and the Lender shall have the right, in its sole discretion, to determine which rights, security, liens, security interests or remedies the Lender shall at any time pursue, relinquish, subordinate, modify or take with respect thereto, without in any way modifying or affecting any of them or the Secured Obligations or any of the rights of the Lender under this Agreement, under any other Loan Documents or under any other document relating to the Secured Obligations.

20.    Joinder.  At any time after the date of this Agreement, one or more additional Persons may become party hereto by executing and delivering to the Lender a joinder agreement in such form as is acceptable to the Lender.  Immediately upon such execution and delivery of such joinder agreement (and without any further action), each such additional Person will become a party to this Agreement as an "Grantor" and have all of the rights and obligations of a Grantor hereunder and this Agreement and the schedules hereto shall be deemed amended by such Joinder Agreement.

21.    Consent of Issuers of Pledged Equity.  Any Grantor that is an Issuer hereby acknowledges, consents and agrees to the grant of the security interests in such Pledged Equity by the applicable Grantors pursuant to this Agreement, together with all rights accompanying such security interest as provided by this Agreement and applicable law, notwithstanding any anti-assignment provisions in any operating agreement, limited partnership agreement or similar organizational or governance documents of such Issuer.

22.    Marshaling.  The Lender shall not be required to marshal any present or future collateral security (including but not limited to the Collateral) for, or other assurances of payment of, the Secured Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights and remedies hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights and remedies, however existing or arising.  To the extent that it lawfully may, each Grantor hereby agrees that it will not invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Lender's rights and remedies under this Agreement or under any other instrument creating or evidencing any of the Secured Obligations or under which any of the Secured Obligations is outstanding or by which any of the Secured Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, each Grantor hereby irrevocably waives the benefits of all such laws.

23.    Injunctive Relief.

(a)    Each Grantor recognizes that, in the event such Grantor fails to perform, observe or discharge any of its obligations or liabilities under this Agreement, any other Loan Document, any remedy of law may prove to be inadequate relief to the Lender.  Therefore, each Grantor agrees that the Lender, at the option of the Lender, shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.

(b)    The Lender and each Grantor hereby agree that no such Person shall have a remedy of punitive or exemplary damages against any other party to a Loan Document and each

such Person hereby waives any right or claim to punitive or exemplary damages that they may now have or may arise in the future in connection with any dispute under this Agreement, any other Loan Document, whether such dispute is resolved through arbitration or judicially.

24.    <u>Existing Security Agreements Superseded</u>.  This Agreement amends, modifies, supersedes and replaces in its entirety (a) the Prepetition Security Agreement, and (b) those provisions of the Existing DIP Facility Agreement which relate to the grant of a security interest to Lender and all of Lender's rights and remedies with respect thereto (and, for the avoidance of doubt, all other provisions of the Existing DIP Facility Agreement will remain unchanged by this Agreement).  All grants of security interests under the Prepetition Security Agreement and the Existing DIP Facility shall be deemed to have been made pursuant to this Agreement and the other Loan Documents which shall hereafter govern and control for all purposes.

25.    <u>Joint and Several Liability of Grantors</u>.

(a)    The obligations of the Grantors hereunder shall be joint and several, shall be absolute and unconditional and shall remain in full force and effect until all Secured Obligations shall have been paid and, until such payment has been made, shall not be discharged, affected, modified or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any of the undersigned:    (a) the waiver, compromise, indulgence, settlement, release, termination, modification or amendment (including, without limitation, any extension or postponement of the time for payment or performance or renewal or refinancing) of any or all of the obligations, covenants or agreements of any of the Grantors under this the Agreement or any other Loan Document; (b) the failure to give notice to any or all of the Grantors of the occurrence of a default under the terms and provisions of this Agreement or any other Loan Document; (c) the release, substitution or exchange by the Lender of any security held by it for the payment of any amount due pursuant to the Term Note or any other Loan Document (whether with or without consideration) or the acceptance by the Lender of any additional security for such payments or the availability or claimed availability of any other security, collateral or source of repayment; (d) the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting any or all of the undersigned or any other person or entity who, or any of whose property, shall at the time in question be obligated in respect of the debt evidenced by the Term Note or any part thereof; (e) any failure, omission, delay or neglect by the Lender in enforcing, asserting or exercising any right, power or remedy under this Agreement, any other Loan Document, or at law or in equity; (f) the release of any Person primarily or secondarily liable for all or any part of the debt evidenced by the Term Note; (g) any non-perfection or other impairment of any security; (h) any assignment or transfer by the Lender of all or any interest in this Agreement; (i) the invalidity or unenforceability of any term or provision in this Agreement or any other Loan Document; (j) any merger, consolidation, conversion or re-domestication involving any of the Grantors, any sale, assignment, transfer, conveyance or issuance of any stock, partnership, membership or other equity interest by any of the Grantors or any sale, transfer or conveyance by any of the undersigned or any other Person of all or any part of such Person's interest in any of the Grantors or any affiliate of any of the Grantors; or (k) to the extent permitted by law, any event or action that would, in the absence of this clause, result in the

21

release or discharge of any or all of the Grantors from the performance or observance of any obligation, covenant or agreement contained in this Agreement.  Without limiting the foregoing, it is the intention of the parties that any modification, limitation, or discharge of the obligations of any of the Grantors arising out of or by virtue of any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law shall not affect, modify, limit or discharge the liability of any other co-maker in any manner whatsoever, and this Agreement and the other Loan Documents shall remain and continue in full force and effect and shall be enforceable against such Grantor to the same extent and with the same force and effect as if any such proceedings had not been instituted; and all other Grantors shall be jointly and severally liable to the Lender under this Agreement and the other Loan Documents for the full amount payable hereunder irrespective of any modification, limitation, or discharge of the liability of any co-maker that may result from any such proceeding.  The obligations of the Grantors to the Lender pursuant hereto include and apply to any payment or payments received by the Lender on account of the liabilities evidenced hereby, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be paid to a trustee, receiver, or any other Person under any bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance or similar law, common law or equitable doctrine.  If any action or proceeding seeking such repayment is pending or, in the Lender's sole judgment, threatened, this Agreement and any security interest therefor shall remain in full force and effect notwithstanding that one or more of the Grantors may not then be obligated to the Lender.  The joint and several obligations of the Grantors to the Lender and this Agreement and any security therefor, shall remain in full force and effect (or be reinstated) until the Lender has received payment in full of all Secured Obligations payable to it pursuant to this Agreement and any other Loan Document and the expiration of any applicable preference or similar period pursuant to any bankruptcy, insolvency, reorganization, moratorium or similar law, or at law or equity, without any claim having been made before the expiration of such period asserting an interest in all or any part of any payment(s) received by the Lender.

(b)      The Grantors expressly agree that the Lender shall not be required first to institute any suit or to exhaust its remedies against any of the Grantors or any other Person to become liable hereunder or against any Collateral or security for the Loan evidenced hereby, in order to enforce this Agreement; and expressly agree that, notwithstanding the occurrence of any of the foregoing, the Grantors shall be and remain, directly and primarily liable for all Secured Obligations due under this Agreement and under the Loan Documents.  Each Grantor assumes responsibility for keeping itself informed of the financial condition of each other Grantor, and any and all endorsers and/or guarantors of any instrument or document evidencing all or any part of such other Grantor's Obligations and of all other circumstances bearing upon the risk of nonpayment by such other Grantors of their Obligations and each Grantor agrees that Lender shall not have any duty to advise such Grantor of information known to Lender regarding such condition or any such circumstances or to undertake any investigation not a part of its regular business routine.  If Lender, in its sole discretion, undertakes at any time or from time to time to provide any such information to a Grantor, Lender shall not be under any obligation to update any such information or to provide any such information to such Grantor on any subsequent occasion.

(c)      All rights and claims of each of the Grantors against any other of the Grantors or the property of any other of the Grantors now or hereafter existing (collectively, the "Grantor Claims") shall be subordinate and subject in right of payment to the prior payment in full

22

of the Obligations.  Until such Obligations have been paid in full, and Grantors have performed all of their Obligations, none of the Grantors shall receive or collect, directly or indirectly, from any other of the Grantors or any other party any payment upon any Grantor Claim nor seek to realize upon any collateral securing any such Grantor Claim.  Notwithstanding the foregoing, if any of the Grantors shall receive any such payment, such Grantors shall hold such payment in trust for the Lender and shall have absolutely no rights in or to such payment except to deliver it promptly to the Lender, and each of the Grantors hereby covenants to do so.  None of the Grantors will assert any right to which it may be or become entitled, whether by subrogation, contribution or otherwise, against any other of the Grantors or against the property of any other of the Grantors by reason of the performance by such party of its obligations under this Agreement, except after performance and payment in full of the Term Note and any other Loan Documents.

(d)     Lender is hereby authorized, without notice or demand and without affecting the liability of any Grantor under this Agreement or any other Loan Documents, to, at any time and from time to time, (i) renew, extend, accelerate or otherwise change the time for payment of, or other terms relating to a Grantor's Secured Obligations or otherwise modify, amend or change the terms of any promissory note or other agreement, document or instrument now or hereafter executed by a Grantor and delivered to the Lender; (ii) accept partial payments on a Grantor's Secured Obligations; (iii) take and hold security or collateral for the payment of a Grantor's Secured Obligations hereunder or for the payment of any guaranties of a Grantor's Secured Obligations or other liabilities of a Grantor and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale thereof as the Lender, in its sole discretion, may determine; and (v) settle, release, compromise, collect or otherwise liquidate a Grantor's Secured Obligations and any security or collateral therefor in any manner, without affecting or impairing the obligations of the other Grantors.  The Lender shall have the exclusive right to determine the time and manner of application of any payments or credits, whether received from a Grantor or any other source, and such determination shall be binding on such Grantor.  All such payments and credits may be applied, reversed and reapplied, in whole or in part, to any of a Grantor's Secured Obligations as the Lender shall determine in its sole discretion without affecting the validity or enforceability of the Secured Obligations of the other Grantors.

(e)     Notwithstanding any provisions of this Agreement to the contrary, it is intended that the joint and several nature of the Secured Obligations of Grantors and the liens and security interests granted by Grantors to secure the Secured Obligations, not constitute a "Fraudulent Conveyance" (as defined below).  Consequently, Lender and Grantors agree that if the Secured Obligations of a Grantor, or any liens or security interests granted by such Grantor securing the Secured Obligations would, but for the application of this sentence, constitute a Fraudulent Conveyance, the Secured Obligations of such Grantor and the liens and security interests securing such Secured Obligations shall be valid and enforceable only to the maximum extent that would not cause such Secured Obligations or such lien or security interest to constitute a Fraudulent Conveyance, and the Secured Obligations of such Grantor and this Agreement shall automatically be deemed to have been amended accordingly.  For purposes hereof, "Fraudulent Conveyance" means a fraudulent conveyance under Section 548 of Chapter 11 of Title II of the United States Code (11 U.S.C. § 101, et seq.), as amended (the "Bankruptcy Code") or a fraudulent conveyance or fraudulent transfer under the applicable provisions of any fraudulent conveyance

23

or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Each of the parties hereto has caused a counterpart of this Agreement to be duly executed and delivered as of the date first above written.

**<u>GRANTORS</u>**:

IT'SUGAR LLC,
a Delaware limited liability company

By:_____
Name:_____
Title:_____

Address:_____
             _____
             _____

IT'SUGAR Atlantic City LLC,
a Delaware limited liability company

By:_____
Name:_____
Title:_____

Address:_____
             _____
             _____

IT'SUGAR FLGC LLC,
a Florida limited liability company

By:_____
Name:_____
Title:_____

Address:_____
             _____
             _____

IT'SUGAR FL I, LLC,
a Delaware limited liability company

By:_____
Name:_____
Title:_____

Address:_____
             _____
             _____

**ACCEPTED AND AGREED BY THE <u>LENDER</u>**:

SHL Holdings, Inc.,
a Florida corporation

By:_____
Name:_____
Title:_____

Address:_____
             _____
             _____

## **SCHEDULE 1**

<u>EQUITY INTERESTS</u>

| Grantor | Name of Subsidiary | Number of Shares | Certificate Number | Percentage Ownership |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**SCHEDULE 2**

COMMERCIAL TORT CLAIMS

## **SCHEDULE 3**

INSTRUMENTS, DOCUMENTS OR TANGIBLE CHATTEL PAPER

## **EXHIBIT A**

[FORM OF]

IRREVOCABLE STOCK POWER

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers to _____ the follow Equity Interests of [_____], a [_____] [corporation] [limited liability company]:

No. of Shares                                    Certificate No.


and irrevocably appoints _____ its agent and attorney-in-fact to transfer all or any part of such Equity Interests and to take all necessary and appropriate action to effect any such transfer.  The agent and attorney-in-fact may substitute and appoint one or more persons to act for him.

_____

By:_____
Name:_____
Title:_____