UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

IT'SUGAR FL I LLC, *et al.*,

    Debtors.[1]

_____/

Case No. 20-20259-RAM
(Jointly Administered)

Chapter 11

**CONFIRMATION AFFIDAVIT OF TROY TAYLOR**

STATE OF FLORIDA    )
    ) s.s.:
COUNTY OF MIAMI-DADE    )

I, Troy Taylor, being duly sworn, hereby states:

1. I am over 21 years of age and fully competent to make this Affidavit. Unless otherwise stated, I have personal knowledge of the facts set forth in this affidavit.

2. I am the president of Algon Capital, LLC d/b/a Algon Group ("**Algon**"), a restructuring and investment banking firm with completed assignments throughout the United States and internationally.

3. On November 19, 2020, the Court entered its *Final Order Authorizing (I) The Retention of Algon Capital, LLC d/b/a/ Algon Group to Provide the Debtors a Chief Restructuring Officer and (II) The Designation of Troy Taylor as Chief Restructuring Officer for the Chapter 11 Debtors-in-Possession Nunc Pro Tunc to the Petition Date* ("**Retention Order**") [ECF No. 166].

---

[1] The Debtors in these cases are as follows: (i) IT'SUGAR FL I LLC (Case No. 20-20259); (ii) IT'SUGAR LLC (Case No. 20-20261); (iii) IT'SUGAR Atlantic City LLC (Case No. 20263); and (iv) IT'SUGAR FLGC LLC (Case No. 20-20264) (collectively, "**Chapter 11 Cases**").

4.  Pursuant to the Retention Order, the Court authorized IT'SUGAR FL I LLC, IT'SUGAR, LLC, IT'SUGAR ATLANTIC CITY LLC and IT'SUGAR FLGC LLC ("**Debtors**" or "**Plan Proponents**") to retain Algon and designate me as Chief Restructuring Officer of the Debtors in these Chapter 11 Cases.

5.  In my role as Chief Restructuring Officer ("**CRO**"), I, among other duties, (a) performed a financial review of the Debtors, (b) negotiated with the Debtors' senior lender, (c) participated in negotiations with landlords and other key constituents in connection with the modification of the Debtors' prepetition leases of non-residential real property, (d) participated in negotiations with the Creditors' Committee, (e) served as the Debtors' representative for all purposes in connection with these Chapter 11 Cases, (f) assisted in the preparation of the monthly operating reports and other budget and financial related information and (g) assisted the Debtors in developing the Debtors' plan of reorganization.

6.  I submit this Affidavit in support of the confirmation of the *Plan of Reorganization for IT'SUGAR FL I LLC, IT'SUGAR LLC, IT'SUGAR ATLANTIC CITY LLC and IT'SUGAR FLGC LLC*, dated April 20, 2021 (as may be amended or modified, including without limitation all exhibits thereto, collectively, "**Plan**") [ECF No. 301].*e* I am familiar with the terms of the Plan and the *Disclosure Statement Pursuant to 11 U.S.C. § 1125 for IT'SUGAR FL I LLC, IT'SUGAR LLC, IT'SUGAR ATLANTIC CITY LLC, and IT'SUGAR FLGC LLC* ("**Disclosure Statement**") [ECF No. 302].

7.  Unless otherwise indicated, all facts and opinions set forth in this Affidavit are based upon: (i) my personal knowledge; (ii) my experience, knowledge and information concerning the operations of the Debtors, the Debtors' financial condition and the Debtors' industry as a whole; (iii) my review of relevant business records; (iv) information provided to me

by agents of the Debtors or others working under my direction; (v) a review of pleadings and orders on the Court's docket for the Debtors' chapter 11 bankruptcy cases; and (vi) as to matters involving United States bankruptcy law or rules or other applicable laws, my reliance on the advice of counsel of the Debtors. If I were called upon as a witness, I could and would testify competently to the facts and opinions set forth herein.

### General Background / Plan of Reorganization

8.      On September 22, 2020 ("*Petition Date*") each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code ("*Chapter 11 Cases*"). By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. The Debtors have operated their business and managed their assets as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

9.      On October 20, 2020, the Office of the United States Trustee ("*U.S. Trustee*") appointed the Creditors' Committee which is comprised of the following five members: (i) Simon Property Group, Inc..; (ii) Jack's Candy Company; (iii) Brookfield Properties Retail, Inc.; (iv) KRG Enterprises, Inc.; and (v) Nassau Candy Distributors, Inc. [ECF No. 110].

10.     On May 5, 2021, the Court entered the Disclosure Statement Order,[2] which, among other things, conditionally approved the Disclosure Statement, finding that it contained "adequate

---

[2]     Order (I) Conditionally Approving the Disclosure Statement; (II) Approving the Ballot; (III) Setting a Date for a Consolidated Hearing on (A) Final Approval of the Disclosure Statement and (B) Confirmation of the Plan of Reorganization; (IV) Establishing and Consolidating the Deadlines to File (A) Objections to the Disclosure Statement and (B) Objections to Confirmation of the Plan of Reorganization; (V) Approving the Procedures for Solicitation and Tabulation of Votes on the Plan; (VI) Setting Various Deadlines; and (VII) Describing the Plan Proponents' Obligations. ("*Disclosure Statement Order*") [ECF No. 317]

information" within the meaning of § 1125 of the Bankruptcy Code, and established procedures for the Plan Proponents' solicitation and tabulation of votes on the Plan. The (a) Disclosure Statement Order, (b) Disclosure Statement, (c) Plan, (d) Ballot for voting on the Plan, and (e) Solicitation Letter (collectively, the "*Solicitation Package*"), were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order ("*Solicitation*"). I am familiar with the contents of each document comprising the Solicitation Package.

11.     As of the time of execution of this Affidavit, there has only been one objection filed to confirmation of the Plan, and I expect that objection, and any other objection filed by any party will be resolved prior to Confirmation, or overruled by the Court at the Confirmation Hearing.

### The Plan Satisfies Section 1129 of the Code

12.     <u>The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. On the basis of my understanding and discussions with Debtors' legal advisors, I believe the Plan complies with section 1129(a)(1) of the Bankruptcy Code, as follows:

13.     <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. Article III of the Plan designates the following five classes of Claims and one class of Equity Interests: Class 1 (Other Priority Claims), Class 2 (Secured Claim of SHL Holdings, Inc.), Class 3 (Secured Construction/Mechanics Lien Claims), Class 4 (General Unsecured Claims), Class 5 (Subordinated Claims) and Class 6 (Equity Interests). Each of the Claims or Equity Interests, as the case may be, in each particular Class is substantially similar to the other Claims or Equity Interests within such Class. Valid business, legal and factual reasons exist for separately classifying the various Claims and Equity Interests pursuant to the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. No party has objected to the classification of Claims and Equity Interests as reflected in the Plan. Thus, I have been advised

that such classification complies with section 1122 and 1123(a)(1) of the Bankruptcy Code because each Class contains only Claims or Equity Interests that are substantially similar to each other.

14. <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article III of the Plan specifies that Class 1 (Other Priority Claims) are unimpaired under the Plan, thereby complying with § 1123(a)(2) of the Bankruptcy Code. Accordingly, the Plan satisfies § 1123(a)(2) of the Bankruptcy Code.

15. <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article III of the Plan designates Class 2 (Secured Claim of SHL Holdings, Inc.), Class 3 (Secured Construction/Mechanics Lien Claims), Class 4 (General Unsecured Claims), Class 5 (Subordinated Claims) and Class 6 (Equity Interests) as impaired, and Article III of the Plan specifies the treatment of Claims and Equity Interests in such Classes, thereby complying with § 1123(a)(3) of the Bankruptcy Code. Accordingly, the Plan satisfies § 1123(a)(3) of the Bankruptcy Code.

16. <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment on account of such Claim or Equity Interest, thereby satisfying § 1123(a)(4) of the Bankruptcy Code. Accordingly, the Plan satisfies § 1123(a)(4) of the Bankruptcy Code.

17. <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provides adequate and proper means for the implementation of the Plan as required by §1123(a)(5) of the Bankruptcy Code. Such means include, but are not limited to: (i) procedural substantive consolidation for distribution purposes; (ii) funding of the Plan through the Available Cash on the Effective Date; (iii) revesting of Equity Interests or issuance of new equity in the Reorganized Debtors and

continued corporate existence of the Reorganized Debtors after the Effective Date; (iv) provisions regarding Distributions under the Plan; (v) procedures for objecting to Claims; and (vi) the treatment of unexpired, prepetition executory contracts and leases. Accordingly, the Plan satisfies § 1123(a)(5) of the Bankruptcy Code.

18. <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. The Plan provides for, (1) in Article 3.10.2, among other things, that on the Effective Date 100% of the Equity Interests shall revest in the respective Reorganized Debtor. Accordingly, the Plan satisfies § 1123(a)(6) of the Bankruptcy Code.

19. <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. The Plan provides in Article 12.28 that, as of the Effective Date, the directors, officers, partners, members and managers, as the case may be, of each of the Debtors immediately prior to the Effective Date shall be deemed to be the directors, officers, partners, members and managers, as the case may be, of each of the Reorganized Debtors without any further action by any party. Accordingly, the selection of directors, officers, partners, members, and managers are consistent with the interests of creditors, equity security holders, and public policy. As such, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

20. <u>Permissive Provisions in the Plan (11 U.S.C. § 1123(b))</u>. The Plan also contains a number of provisions that I understand to be permissive, rather than mandatory, under the requirements of the Bankruptcy Code.

21. <u>Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1))</u>. As contemplated by section 1123(b)(1) of the Bankruptcy Code, Classes 2, 3, 4, 5 and 6 are impaired by the Plan, and Class 1 is unimpaired. Accordingly, the Plan satisfies section 1123(b)(1) of the Bankruptcy Code.

22. <u>Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>. In accordance with section 1123(b)(2) of the Bankruptcy Code, Article 4.3 of the Plan provides that all executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, as amended by the First Amended Schedule of Assumed Executory Contracts and Unexpired Leases [ECF No. 423] shall be deemed assumed by the Reorganized Debtors as of the Confirmation Date. Article 4.1 of the Plan further provides that all other executory contracts and unexpired leases shall be deemed rejected as of the Confirmation Date. Article 4.3.1 of the Plan provides for the assumption, as of the Confirmation Date, of agreements that are executory and unexpired leases. Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

23. <u>Debtors' Releases (11 U.S.C.§ 1123(b)(3)(A). The parties are in discussions with the United States Trustee's office regarding potential modifications to the following provisions in the Plan, which will be brought before the Court prior to or at the Confirmation Hearing</u>. As set forth in Article 9.8.1 of the Plan, the Debtors' Release provides that: **as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors, the Reorganized Debtors, their Estates, and each of their current and former Affiliates and Representatives shall be deemed to have provided a full, complete, unconditional and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtors and their current and former Affiliates and Representatives, the Estates and the Creditors' Committee and its members but solely in their capacity as members of the Creditors' Committee and not in their individual capacities), from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued,**

**whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, the Debtors' in- or out-of court restructuring efforts, any intercompany transactions, transactions pursuant and/or related to the Prepetition Line of Credit, the Prepetition Equipment Loan, the DIP Loan (and any payments or transfers in connection therewith), any preference or avoidance claims pursuant to §§ 544, 547, 548, or 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or consummation of the Exit Facility, the settlements contemplated by the Plan, or any contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Exit Facility, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan (if any), or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, including, without limitation, those that any of the Debtors would have been legally entitled to assert or that any holder of a**

**Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or the Estates, including those in any way related to the Chapter 11 Cases or the Plan; provided, however, that the foregoing release shall not prohibit the Debtors, the Reorganized Debtors or the Estates from asserting any and all defenses and counterclaims in respect of any Disputed Claim asserted by any Released Parties; provided further that nothing contained in the foregoing provision or elsewhere in the Plan or Confirmation Order shall be construed as a release of any claims against any Released Party resulting from an act or omission determined by a final order of a court of competent jurisdiction to have constituted willful misconduct or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions.** Based upon my participation in these bankruptcy cases, I believe that the Debtors' Release is an integral part of the Plan and was required in order to induce the Debtors and various parties to support the Plan. Furthermore, based upon my knowledge, I do not believe that the Debtors are forfeiting any valuable claims or causes of action against the Released Parties. Moreover, the Debtors' Release is subject to significant carve-outs.

24.    Preservation of Claims (11 U.S.C. § 1123(b)(3)(B). It is in the best interests of the Debtors and their creditors and holders of Equity Interests that the Debtors preserve the Causes of Action as set forth in Article 12.20 of the Plan.

25.    Sale of All or Substantially All Assets (11 U.S.C. § 1123(b)(4)). Section 1123(b)(4) applies to cases where the debtor's plan provides for the sale of all or substantially all of the debtor's assets. The Plan does not provide for such sale, and, therefore, this is inapplicable to the Plan.

26.     <u>Modification of Creditor Rights (11 U.S.C. § 1123(b)(5))</u>. As set forth in Article III of the Plan, the Plan modifies the rights of holders of Claims and Equity Interests in Classes 2, 3, 4 and 5.  The Plan also leaves unaffected the rights of holders of Claims in Class 1.  Therefore, I believe that the Plan complies with section 1123(b)(5).

27.     <u>Retention of Jurisdiction, Preservation of Causes of Action, Exculpation (11 U.S.C. § 1123 (b)(6))</u>.

   a.    <u>Retention of Jurisdiction</u> Article 10.1 of the Plan provides that, among other things, the Court will retain jurisdiction as to, among other things 23 enumerated matters, including, (i) matters involving the Plan, the claims allowance and distribution process, (ii) to hear any issues involving disputes over Claims, and (iii) enforce the provisions of the Plan.  I understand from the Debtors' counsel that the matters for which the Court retains jurisdiction are appropriate because the Court would have otherwise had jurisdiction over all of these matters during the pendency of the Debtors' bankruptcy cases, and that a bankruptcy court may retain jurisdiction over the debtor or the property of the estate following confirmation.  Therefore, I believe that the continuing jurisdiction of the Court for matters described in the Plan is consistent with applicable law and therefore permissible under section 1123(b)(6) of the Bankruptcy Code.

   b.    <u>Preservation of Causes of Action (11 U.S.C. § 1123(b)(3)(B))</u>. Article 12.29 of the Plan appropriately provides for the preservation by the Debtors and/or Reorganized Debtors of Causes of Action.  I believe that the provisions regarding Causes of Action in the Plan are appropriate and are in the best interests of Debtors, their Estates, Creditors, and other parties in interest.

    c. <u>Exculpation. The parties are in discussions with the United States Trustee's office regarding potential modifications to the following provisions in the Plan, which will be brought before the Court prior to or at the Confirmation Hearing.</u> I understand that the exculpation provision in Article 11.2 of the Plan limits liability arising out of postpetition acts and omissions of the Plan Proponents, SHL, BBX Capital, Inc., the Creditors' Committee and their officers, directors, members, managers, managing members and Professionals (acting in such capacity). The Plan's exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case.

28.    <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

## Compliance with Section 1129 of the Bankruptcy Code

29.    <u>Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. On the basis of my understanding and discussions that I have had with the Debtors' legal advisors, I believe that the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, as well as the Disclosure Statement Order, regarding disclosure and Plan solicitation thereby satisfying Bankruptcy Code § 1129(a)(2). The Plan Proponents have complied with all provisions of the Bankruptcy Rules, the Local

Bankruptcy Rules and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices, and in soliciting and tabulating votes on the Plan.

30. Additionally, it is my understanding, as is shown in the *Certificate of Proponents of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees*, filled concurrently with this Affidavit (the "**Ballot Report**"), that the Plan Proponents have properly solicited and tabulated votes with respect to the Plan. Accordingly, I believe that the Plan Proponents have complied with the requirements of section 1129(a)(2) of the Bankruptcy Code.

31. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. I believe that the Plan Proponents have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code. The Plan Proponents' good faith is evident from the record of these Chapter 11 Cases, including the record of the hearing to conditionally approve the Disclosure Statement, the entry by this Court of the Disclosure Statement Order, and other proceedings held in these Chapter 11 Cases. The Plan is based upon extensive, arms-length and good faith negotiations between and among the Debtors, the Creditors' Committee, and other Creditors and parties-in-interest, and represent the culmination of months of intensive negotiations and discussions among all parties in interest. Moreover, the Plan was proposed with the legitimate purpose of maximizing the value of the Debtors' estates and effectuating a successful reorganization of the Debtors. The Plan accomplishes equitable distribution of the Debtors' assets by providing the means through which the Debtors may effectuate distributions to the Creditors. The impaired classes of Claims entitled to vote to accept or reject the Plan (Class 2, 3 and 4) have voted overwhelmingly to accept

the Plan and practically all of the Debtors' significant creditors support the Plan. Further, the indemnification, exculpation, release, and injunction provisions of the Plan have been negotiated in good faith and at arms-length with, among other persons, representatives of the Debtors, parties in interest, and their respective advisors, are consistent with §§ 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary to the Debtors' successful reorganization in chapter 11. Accordingly, I believe that, inasmuch as the Plan promotes the objectives and purposes of the Bankruptcy Code, while also providing for a recovery to creditors, the Plan and the related documents have complied with the requirement of section 1129(a)(3) of the Bankruptcy Code that the Plan be proposed in good faith.

32. <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>. Pursuant to § 331 of the Bankruptcy Code, all payments made or to be made by the Debtors for services or for costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying § 1129(a)(4) of the Bankruptcy Code. Each Professional that will receive such payments has made substantial contributions to ensure success of the Plan. Therefore, I believe that the payments to any Professional are reasonable, represent a reasonable exercise of sound business judgment, and are in the best interests of Debtors, their Estates, Creditors, and parties in interest.

33. <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Plan Proponents have complied with § 1129(a)(5) of the Bankruptcy Code. As set forth in Article 12.28 of the Plan as of the Effective Date, the directors, officers, partners, members and managers, as the case may be, of each of the Debtors immediately prior to the Effective Date shall be deemed to be the directors, officers, partners, members and managers, as the case may be, of each of the Reorganized

Debtors without any further action by any party. Based upon the foregoing, I believe that the provisions of the Plan are consistent with the interests of Creditors, the holders of Equity Interests, and public policy, and therefore, the Plan meets the requirements of section 1129(a)(5) of the Bankruptcy Code.

34. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  I understand that the Debtors are not changing any rates that require approval by a governmental agency.

35. <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>.  On the basis of my understanding, as well as discussions that I have had with the Debtors' legal advisors, I believe that the Plan complies with section 1129(a)(7) of the Bankruptcy Code. In order to satisfy the "best interests" test under this section, each holder within an Impaired Class must either (a) vote to accept the Plan or (b) receive no less than such holder would have received in a liquidation. I took part in the preparation of, and have reviewed, the Liquidation Analysis (attached as Exhibit "2" to the Disclosure Statement). I believe that the assumptions underlying the Liquidation Analysis are reasonable and that the Liquidation Analysis provides a reasonable estimate of the liquidation value of the Debtors' assets and the distribution that holders of Claims and Equity Interests would receive in a chapter 7 liquidation of the Debtors. Based upon that analysis, I believe that each holder of an impaired Claim, and each holder of an Equity Interest, would receive a distribution or retain property under the Plan, on account of its respective Claim or Equity Interest, of a value as of the Effective Date of the Plan that is not less than the amount that such holder of a Claim or Equity Interest would receive or retain were the Debtors liquidated under chapter 7 of the Bankruptcy Code. Accordingly, I believe that (a) the Plan is in the best interests of the holders of Claims and Equity Interests and reorganization of the Debtors under the Plan rather than a liquidation in chapter 7 will allow the overall realization of greater value for Creditors.

36. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Class 1 (Other Priority Claims) is unimpaired under the Plan and is, therefore, conclusively deemed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code. Class 2 (Secured Claim of SHL Holdings, Inc.), Class 3 (Secured Construction/Mechanics Lien Claims), and Class 4 (General Unsecured Claims), the impaired Classes of Claims eligible to vote, have affirmatively voted almost universally to accept the Plan. As such, § 1129(a)(8) is satisfied with respect to these Classes of Claims. Class 5 (Subordinated Claims) and Class 6 (Equity Interests) are deemed to reject the Plan pursuant to § 1126(g) of the Bankruptcy Code, because the holders of Subordinated Claims in Class 5 and Equity Interests in Class 6 will not receive or retain any Distributions under the Plan; provided, however, that on the Effective Date the Equity Interests shall revest in the current holders of the Equity Interests in their current proportionate shares.

37. The Ballot Report reflects the compilation of the votes to accept or reject the Plan by Classes of Claims entitled to vote on the Plan. As has been demonstrated in the Ballot Report, Creditors in Classes 2, 3 and 4 have voted overwhelmingly to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.

38. On the basis of my understanding, as well as discussions that I have had with the Debtors' legal advisors, I therefore believe that the Plan complies with section 1129(a)(8) of the Bankruptcy Code.

39. <u>Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. On the basis of my understanding, as well as discussions that I have had with the Debtors' legal advisors, I believe that the treatment of Administrative Claims and Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of § 1129(a)(9)(A), (B), (C) and (D) of the Bankruptcy Code because holders of Allowed Administrative Claims, fees to the

U.S. Trustee, and Allowed Priority Tax Claims, to the extent they are Allowed Claims, will either be paid in full on the Effective Date or paid in a manner as otherwise agreed upon by the Reorganized Debtors and the holders of such Claims or by Order of the Court.

40. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. As has been set forth in the Ballot Report, Class 3 (Secured Construction/Mechanics Lien Claims), and Class 4 (General Unsecured Claims), voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of § 1129(a)(10) of the Bankruptcy Code. Specifically, as set forth in the Ballot Report, approximately 100% (in dollar amount of claims) and 100% (in number of ballots) of the Creditors casting Class 3 Ballots in Class 3 voted to accept the Plan, and approximately 99.10% (in dollar amount of claims) and 98.92% (in number of ballots) of the Creditors casting Class 4 Ballots in Class 4 voted to accept the Plan. Therefore, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

41. <u>Feasibility (11 U.S.C. § 1129 (a)(11))</u>. On the basis of my understanding, as well as discussions I have had with the Debtors' legal advisors, I am aware that section 1129(a)(11) of the Bankruptcy Code permits a plan to be confirmed if it is not likely to be followed by a further financial liquidation or reorganization, unless such liquidation or reorganization is contemplated by the plan. I believe that the Plan satisfies the requirements of section 1129(a)(11). I have reviewed the monthly operating reports filed by the Debtors and provided certain information that was incorporated into the Ballot Report. I believe the Debtors will have sufficient cash on hand, to pay the amounts required to be paid on the Effective Date, including the fees due to the U.S. Trustee as they become due and make the required disbursements pursuant to Article III of the Plan.

42.     Based upon the foregoing, I believe that the Plan Proponents have established that confirmation of the Plan is not likely to be followed by the need for further reorganization or liquidation of the Debtors, and therefore, the Plan meets the standards set forth in section 1129(a)(11) of the Bankruptcy Code.

43.     <u>Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))</u>.  It is my understanding that Debtors have paid all chapter 11 statutory and operating fees required to be paid during these chapter 11 cases. Article 2.5 of the Plan provides that the Reorganized Debtors shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the Effective Date, for pre-confirmation periods. The Reorganized Debtors shall further pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Debtors or Reorganized Debtors, as applicable, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code. After the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business. Each Debtor or Reorganized Debtor, as applicable, shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's or Reorganized Debtors', as applicable, case being closed pursuant to the terms of this Plan, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

44.     <u>Inapplicability of Sections 1129(a)(13)-(16)</u>.  I have been advised by counsel that sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code are inapplicable to the Debtors.

45.     <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>.  Based upon my understanding, as well as discussions with the Debtors' legal advisors, I understand that a plan may be confirmed notwithstanding the rejection or deemed rejection by a class of claims or equity interests so long as the plan does not discriminate unfairly and is fair and equitable. As stated above, I understand that the Classes of Claims entitled to vote to accept or reject the Plan (Classes, 2, 3 and 4) have voted almost universally to accept the Plan.

46.     From my discussions with the Debtors' legal advisors, I understand that there are only two impaired Classes that are deemed to have rejected the Plan (Class 5 (Subordinated Claims) and Class 6 (Equity Interests)). Accordingly, I understand that the Plan Proponents normally would invoke section 1129(b) only with respect to Classes 5 and 6. Importantly, the Persons and Entities holding claims and interests in these two classes agreed to this treatment because all of the Claims in Class 5 (Subordinated Claims) and interests in Class 6 (Equity Interests) are claims and interests of insiders.

47.     <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  I believe that the Plan has not been filed for the purpose of avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

## Conclusion

48.     Based upon the facts and opinions set forth herein and the law as I understand it, I believe that the Plan Proponents have formulated, negotiated, and proposed a Plan that treats all Classes of Claims and Equity Interests fairly, equitably, and reasonably, and satisfies all of the

Confirmation requirements contained in the Bankruptcy Code, and that the Disclosure Statement contained adequate information to permit creditors to make an informed choice as to whether to accept or reject the Plan. I further believe that due and adequate notice of the Confirmation Hearing, the deadline for Creditors entitled to vote to determine whether to vote to accept or reject the Plan, and the deadline for objecting to Confirmation of the Plan was properly given. I believe the Plan Proponents have sufficient funds to carry out the provisions of the Plan, and that the Plan is feasible.

[Remainder of page intentionally left blank. Next page is signature page.]

Therefore, I respectfully request that the Bankruptcy Court enter an order confirming the Plan, and granting the Plan Proponents such other and further relief as is just and proper.

Dated: June 8, 2021

DEBTORS AND DEBTORS IN POSSESSION

IT'SUGAR FL 1 LLC
IT'SUGAR, LLC
IT'SUGAR ATLANTIC CITY LLC
IT'SUGAR FLGC LLC

By: Troy Taylor, Chief Restructuring Officer

STATE OF FLORIDA              )
                              ) ss:
COUNTY OF MIAMI-DADE          )

The foregoing instrument was acknowledged before me on the 8th day of June, 2021, by Troy Taylor, who is personally known to me or who has produced _____ as identification, and who did/did not take an oath.

_____
Notary Public, State of Florida
My commission expires:

MARLEEN J. HERNANDEZ
Notary Public - State of Florida
Commission # GG 241473
My Comm. Expires Nov 20, 2022
Bonded through National Notary Assn.